**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHERIDAN AND MURRAY, LLC and THOMAS W. SHERIDAN, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERTS AND ROBERTS, and RANDELL C. ROBERTS, <br><br> Defendants. | Civil Action No. 19-467 (RBS) |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL
JURISDICTION
OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF TEXAS**

I.      SUMMARY OF ARGUMENT ....................................................................................1

II.     RELEVANT FACTUAL BACKGROUND................................................................2

III.    DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN PENNSYLVANIA ..............4

        A.      The U.S. Supreme Court recently narrowed personal jurisdiction doctrine. ..........5

        B.      Plaintiffs failed to assert a proper basis for the exercise of personal jurisdiction over Defendants in this action. ..........................................................6

                1.      Plaintiffs' and other third parties' unilateral actions do not create personal jurisdiction over Defendants in this action...................................6

                2.      The contractual relationship between Plaintiffs and Defendants does not subject Defendants to personal jurisdiction in this action. ...................9

                3.      The nature of an attorney referral relationship further demonstrates that Defendants did not purposefully avail themselves of the privilege of doing business in Pennsylvania ...........................................................11

i

C.    The exercise of personal jurisdiction over Defendants would not comport
      with notions of substantial justice and fair play.........................................12

D.    Randell C. Roberts is shielded from personal jurisdiction in Pennsylvania...........15

E.    Pennsylvania lacks general jurisdiction over Defendants......................................15

IV.    THIS ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF TEXAS ...............16

A.    This action could have been brought in the U.S. District Court for the Eastern
      District of Texas........................................................................................17

B.    Transfer of this action to the U.S. District Court for the Eastern District of
      Texas is in the interest of justice...........................................................19

      1.    On balance, transfer to the U.S. District Court for the Eastern District
            of Texas would serve the private interests in this case ............................20

      2.    Transfer of this action to the U.S. District Court for the Eastern
            District of Texas would be in the public interest. .....................................22

V.    CONCLUSION...........................................................................................24

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SHERIDAN AND MURRAY, LLC and
THOMAS W. SHERIDAN,

                Plaintiffs,

v.

ROBERTS AND ROBERTS, and
RANDELL C. ROBERTS,

                Defendants.

Civil Action No. 19-467 (RBS)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS AMENDEDFOR LACK OF PERSONAL JURISDICTION
OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF TEXAS**

The law firm of Roberts & Roberts[1] and Randell C. Roberts (collectively, "Defendants"), by their undersigned counsel, submit this Memorandum of Law in support of their Amended Motion to Dismiss for Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2), or, in the alternative, in support of their Motion to Transfer Venue to the Eastern District of Texas, pursuant to 28 U.S.C. § 1404(a).

## I.    SUMMARY OF ARGUMENT

The jurisdictional issues in this action boil down to a central question: where an attorney in Pennsylvania directly solicits a Texas attorney for the referral of his Texas clients, and the attorneys subsequently enter into a referral agreement, does that agreement constitute a "substantial

---

[1] This law firm's name is misstated in the Amended Complaint.  The firm's proper name is "The Roberts Law Firm, A Professional Corporation d/b/a Roberts & Roberts, A Professional Corporation."

1

connection" with Pennsylvania, such that Pennsylvania courts can exercise personal jurisdiction over the Texas attorney?  In light of the U.S. Supreme Court's recent shift toward a "defendant-focused" personal jurisdiction analysis, well-established precedent, and the particular facts of this case, the answer is plainly 'no.'  Here, Defendants respectfully request that the Court dismiss this action or, in the alternative, transfer this action to a more appropriate venue—the U.S. District Court for the Eastern District of Texas—where all the relevant contracts and agreements were formed.

## II.    RELEVANT FACTUAL BACKGROUND

Randell C. Roberts (hereinafter, "Roberts") is a Texas attorney.  His law firm, Roberts & Roberts, has its principal office in Tyler, Texas.    Thomas W. Sheridan ("Sheridan") is a Pennsylvania attorney with Sheridan & Murray, which has offices in Pennsylvania and New Jersey.

In October 2013, Roberts met Sheridan at a legal seminar in California.  Sheridan gave a presentation at the seminar and invited questions from the audience.  This led to a brief conversation between Roberts and Sheridan about a Texas client of Roberts's.  This client had been seriously injured in an oilfield accident in Pennsylvania.  Roberts left the seminar with no further plans to contact Sheridan and Roberts did not initiate any further contact with Sheridan.

Approximately six weeks after the seminar, Sheridan directly contacted Roberts to solicit referral of the Texas client.[2]  Roberts and Sheridan ultimately agreed that the client would be referred to Sheridan and that Roberts & Roberts would be paid 40% of the gross attorney's fee recovered by Sheridan & Murray in the representation of the injured client and his wife.  Sheridan confirmed this agreement by letter *and* by an accompanying email.[3]

Pursuant to the Texas Rules of Professional Conduct, Roberts's clients—the Burgesses—

---

[2] *See* Exhibit B.  All exhibits referenced in this Memorandum are attached to the Amended Declaration of Randell C. Roberts submitted in further support of this Motion.

[3] *See* Exhibits D & E.

each contemporaneously signed a "Consent to Refer."  These agreements confirmed the clients' understanding and agreement that Roberts & Roberts was entitled to 40% of the total attorney's fee earned in their case.[4]

On February 7, 2018, Sheridan called Roberts and presented a pessimistic outlook for the case.  In that call, Sheridan asked Roberts if he would reduce his 40% fee so that the Burgesses would continue to have an economically viable lawsuit to pursue.  Sheridan specifically asked Roberts if he would agree to cap Roberts & Roberts's fee at 40% of the attorney's fee recovered against only one of the potential defendants, Clark Electrical Contractors, Inc.   Under that premise, and with the desire to do everything possible to help his clients, Roberts agreed to this request. That day, Sheridan emailed Roberts a revised referral fee agreement, and Roberts acknowledged the revised agreement.[5]

Eight months later, in October 2018, the Burgess's cases settled for $44 million.[6]  While Roberts was pleased with the result for his clients, he expressed concern to Sheridan about the fairness of their recently revised referral fee agreement.  When Sheridan stood by the referral fee agreement as recently revised by Sheridan's email of February 7, 2018, Roberts reviewed that email again.  At that time, it was discovered that Sheridan's email of February 7, 2018, contained an email thread between Sheridan and his law partner that raised further concerns.

---

[4] *See* Exhibit G.

[5] *See* Exhibit H at Roberts_000030–Roberts_000031.  In their Amended Complaint, Plaintiffs allege that the parties had "mistakenly" agreed a 40% referral fee and that the parties had orally agreed to a different arrangement.  Simply put, Plaintiffs are making a false representation to this Court about this issue. Defendants encourage the Court to read Sheridan's letter of January 9, 2019, which Sheridan drafted during informal discussions about this matter.  The letter implicitly acknowledges that the February agreement reflected a change to the parties' initial agreement.  *See* Exhibit M.

[6] Importantly, based on the information they are aware of at this time, Defendants are not challenging the amount of the settlement, the quality of the settlement, or the facts of the underlying accident resulting in the settlement.

Specifically, in the email of February 7, 2018, in which Sheridan revised the referral fee agreement, Sheridan appears to have inadvertently included an internal discussion between Sheridan and his partner.   In that discussion, Sheridan asked for assistance in revising the referral fee agreement with Roberts and stated that he wanted to "nail this down ASAP."[7]  This language was not consistent with the gloomy prospects for the lawsuit Sheridan described to Roberts that very day.  In light of this, Roberts requested that Sheridan provide information showing that on February 7, 2018, it was actually necessary to change the division of the attorney's fee in order for the clients to continue to have an economically viable lawsuit.[8]

Roberts continued to pursue informal resolution of his concerns with Sheridan.  While attempting informal resolution of these concerns, Sheridan expeditiously moved to file this declaratory judgment action in Pennsylvania federal court.

### III.   DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN PENNSYLVANIA

Defendants' contacts with the Commonwealth of Pennsylvania are insufficient to establish personal jurisdiction over Defendants in this action.   Because Defendants challenge the basis on which Plaintiffs' assert personal jurisdiction, "the burden falls upon [Plaintiffs] to come forward with sufficient facts to establish that jurisdiction is proper."  *See Mellon Bank PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992) (citation omitted).   Specifically, Plaintiffs bear the "burden to prove, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction."  *See Carteret Savings Bank, FA v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992) (citations omitted).   Plaintiffs must show "with reasonable particularity sufficient contacts between the defendant and the forum state to support jurisdiction."  *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citation omitted).

---

[7] *See* Exhibit H at Roberts_000031–Roberts_000034.

[8] *See* Exhibit L.

4

Federal courts follow a "two-step analysis to determine if personal jurisdiction is proper: (1) if jurisdiction is proper under the forum's long-arm statute; and (2) the exercise of personal jurisdiction over the defendant comports with due process under the U.S. Constitution." *Barrett v. Catacombs Press*, 44 F. Supp. 2d 717, 723 (E.D. Pa. 1999). Because Pennsylvania's long-arm statute extends personal jurisdiction "to the full extent allowed under the Constitution of the United States," this two-step inquiry "collapses into one coextensive with the due process clause of the United States Constitution." 42 PA. C.S.A. § 5322(b); *Barrett*, 44 F. Supp. 2d at 723 (citation omitted).

### A.    The U.S. Supreme Court recently narrowed personal jurisdiction doctrine.

Recent U.S. Supreme Court decisions have curtailed states' authority to exercise personal jurisdiction over nonresidents under the due process clause. As commentators have observed, the Supreme Court's recent decisions have "significantly changed the shape of personal jurisdiction doctrine" and, specifically, "narrowed personal jurisdiction doctrine." *See* Cassandra Burke Robertson & Charles W. "Rocky" Rhodes, *The Business of Personal Jurisdiction*, 67 CASE W. RES. L. REV. 775, 783 (2017). In these decisions, the Supreme Court emphasized that, while a court must consider a "variety of interests" in determining whether personal jurisdiction is present, the "primary concern is the burden on the *defendant*." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)) (emphasis added and internal quotation marks omitted). In assessing this burden, a court must consider the "practical problems resulting from litigating in the forum," but its considerations should "also encompass[] the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." *Bristol-Myers Squibb Co.*, 137 S. Ct. 1773, 1780 (2017).

According to the U.S. Supreme Court, the "primary focus of [the] personal jurisdiction

inquiry is the *defendant's* relationship to the forum State." *Id.* at 1779 (emphasis added and citation omitted). That is, the defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)) (emphasis in original). The Court emphasized that this "'minimum contacts' inquiry principally protects the liberty of the nonresident defendant, not the interests of the plaintiff. *Id.* at 290. In order "[f]or a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a *substantial connection* with the Forum state." *Id.* at 284 (emphasis added).

    **B.**    **Plaintiffs failed to assert a proper basis for the exercise of personal jurisdiction over Defendants in this action.**

In their Amended Complaint, Plaintiffs state that Defendants "personally availed themselves of this Court's jurisdiction by . . . soliciting Sheridan and Murray's services for a lawsuit that was litigated in Philadelphia and that regarded conduct that occurred in Pennsylvania."[9] Under the "defendant-focused" analysis now required by the U.S. Supreme Court, Plaintiffs' allegations are insufficient for this Court to exercise personal jurisdiction over Defendants.

    **1.**    **Plaintiffs' and other third parties' unilateral actions do not create personal jurisdiction over Defendants in this action.**

In this action, Plaintiffs assert personal jurisdiction, in part, because Pennsylvania was the location of the negligent conduct in the underlying personal injury lawsuit. However, to confer personal jurisdiction, Defendant's relationship with the forum "must arise out of contacts that the 'defendant *himself*' creates with the forum state." *Id.* at 284 (quoting *Burger King Corp.*, 471 U.S. at 475) (emphasis in original). It is improper to assert personal jurisdiction by "demonstrating contacts between the plaintiff (or third parties) and the forum State." *Id.* (citing *Helicopteros*

---

[9] As described in the attached Amended Declaration of Randell C. Roberts, it was Plaintiffs—not Defendants—that solicited the referral relationship that is the subject of this action. *See* Roberts Amended Decl. at ¶ 40-41.

*Nacionales de Colombia, S. A. v. Hall*, 466 U. S. 408, 417 (1984)).  Plaintiffs therefore cannot point to a lawsuit *Plaintiffs* filed in Pennsylvania because of a *third party's* negligent conduct in Pennsylvania to subject Defendants to personal jurisdiction in Pennsylvania.   Simply put, "it is the *defendant*, not the plaintiff or third parties, who must create contacts with the forum State."  *Id.* at 291 (emphasis added).

Similarly, Plaintiffs' actions in filing and litigating the underlying personal injury lawsuit in Pennsylvania does not subject Defendants to personal jurisdiction in Pennsylvania.  The "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction."  *See Helicopteros Nacionales de Colombia, S. A.*, 466 U.S. at 417.  Regarding the underlying personal injury lawsuit, the litigation activities that took place in Pennsylvania— including the decision to file suit in Pennsylvania—were performed by Plaintiffs at Plaintiffs' *sole* discretion.  Further, Plaintiffs solicited from Defendants the opportunity to perform these activities in Pennsylvania.[10]  It is disingenuous for Plaintiffs to now contend that their own litigation activities should subject Defendants to jurisdiction in Pennsylvania.  *See Walden*, 571 U.S. at 291.

To the extent that Defendants contemplated that the referral agreement would result in Plaintiffs conducting litigation in Pennsylvania, this is insufficient to subject Defendants to personal jurisdiction in this forum.  Simply put, "the fact that a contract envisions one party discharging his obligations in the forum state cannot, standing alone, justify the exercise of jurisdiction over another party to the contract."  *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015).  Stated differently, the referral agreement at issue did not contemplate that *Defendants*' conduct would form a substantial connection with Pennsylvania.  *See S.R. Rosati, Inc. v. Unishippers Glob.*

---

[10]  *See* Exhibit B.  In fact, under the terms of the referral agreement, once the referral was effectuated, the Defendants owed no duties of any kind to Plaintiffs in Pennsylvania or anywhere else.

*Logistics, LLC*, No. CV-16-4059, 2016 WL 6471453, at *2 (E.D. Pa. Oct. 31, 2016) (stating that jurisdiction is proper where, for example, a defendant "enter[s] into a contract that 'envisions continuous and wide-reaching contacts' in the forum state" (quoting *Walden*, 571 U.S. at 285)); *Walden*, 571 U.S. 277 (stating that a "'minimum contacts' analysis looks to the defendant's contacts with the forum State *itself*, not the defendant's contacts with persons who reside there"). In sum, the referral agreement did not contemplate *Defendants* themselves taking any specific actions that would create a substantial connection with Pennsylvania.

In any event, the facts and circumstances of the underlying personal injury litigation are irrelevant in determining whether personal jurisdiction exists in this declaratory judgment action. Under the U.S. Supreme Court's narrowed personal jurisdiction doctrine, a "defendant's *suit-related* conduct must create a substantial connection with the forum State." *See Walden v. Fiore*, 571 U.S. 277, 284 (emphasis added). Further, personal jurisdiction requires "a connection between the forum and *the specific claims at issue*." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (emphasis added). To that end, the relevant jurisdictional facts are Defendants' contacts with Pennsylvania as they relate to the *instant declaratory judgment action*, not the underlying personal injury claims. Stated another way, Plaintiffs are conflating the jurisdictional analysis in the underlying personal injury lawsuit with the jurisdictional analysis in the instant declaratory judgment action.

As a final matter, Plaintiffs' unilateral decision to place the attorney's fee owed to Defendants in an escrow account in Pennsylvania cannot create personal jurisdiction over Defendants, as Plaintiffs allege.[11]   *See Helicopteros Nacionales de Colombia, S. A.*, 466 U.S. at 417. This is essentially a contract action involving the rights and liabilities of the parties, and the source of funds that Plaintiffs use to eventually pay Defendants what Plaintiffs owe Defendants is immaterial in determining jurisdiction. Simply put, the dispute issue in this action is over the

---

[11] *See* Roberts Amended Decl. at ¶ 74.

existence of personal jurisdiction, not *in rem* jurisdiction.

> **2.   The contractual relationship between Plaintiffs and Defendants does not subject Defendants to personal jurisdiction in this action.**

The contractual relationship between Plaintiffs and Defendants does not, in and of itself, create personal jurisdiction over Defendants in Pennsylvania.  *See Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) (stating that "a contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum.'" (quoting *Burger King*, 471 U.S. at 478)); *Mellon Bank (East) PSFS, Nat'l Ass'n v. DiVeronica Bros., Inc.*, 983 F.2d 551, 557 (3d Cir. 1993) ("Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant, particularly where, as here, the out-of-state defendant executed the 'contract' only at the behest of the resident." (citation omitted)).  However, the Court can consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing," to determine whether Defendants have sufficient minimum contacts with Pennsylvania.  *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 261 (3d Cir. 2008) (quoting *Burger King Corp.*, 471 U.S. at 479); *see also Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 152 (3d Cir. 1996).

Here, the circumstances surrounding the formation of the relevant agreements in this action are insufficient to create personal jurisdiction over Defendants in Pennsylvania.  Significantly—and despite Plaintiffs' suggestion otherwise—it was Plaintiffs who directly solicited the referral of the underlying personal injury matter from Defendants.[12]  *See Vetrotex Certainteed Corp.*, 75 F.3d at 152 (finding a lack of personal jurisdiction where, in part, a defendant did not "solicit[] the contract or initiate[] the business relationship leading up to the contract"); *Z-Man Painting, LLC v.*

---

[12] *See* Exhibit B.

*Generation Builders, Inc., Homestead at Mansfield, Inc.*, No. 04-CV-4489, 2006 WL 47378, at *4 (E.D. Pa. Jan. 6, 2006) (Surrick, J.) (finding it significant that it was the plaintiff that solicited business from the defendant); *cf. Jaffe v. Julien*, 754 F. Supp. 49, 53 (E.D. Pa. 1991) (stating that "the unsolicited referral of business to a non-Pennsylvania lawyer from a Pennsylvania lawyer does not provide sufficient contacts to make the former amenable to suit in Pennsylvania" (citation omitted)).   In many ways, Defendants were "passive buyers" in this transaction.   *See Vetrotex Certainteed Corp.*, 75 F.3d at 152 (finding a lack of personal jurisdiction where the defendant's contacts with Pennsylvania were primarily communications in furtherance of a contract).

In fact, *each* transaction at the center of this dispute was a transaction initiated by Plaintiffs in Pennsylvania toward Defendants in Texas.[13]   As a consequence, each of the key agreements or contracts at the center of this dispute was formed in *Texas*, not Pennsylvania.[14]   In sum, the agreement to refer the underlying personal injury matter did *not* create a substantial connection between Defendants and this forum.

---

[13]   *See* Roberts Amended Decl. at ¶¶ 40, 43, 59, 61.   To the extent Plaintiffs argue that communications between the parties established sufficient minimum contacts, the Third Circuit has held that "informational communications in furtherance of a contract between a resident and a nonresident does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over the nonresident defendant."   *See Vetrotex Certainteed Corp.*, 75 F.3d at 152.

[14] *See* Roberts Amended Decl. at ¶¶ 31, 42, 43, 47-49.   A contract is formed in the place where the last act of contract formation occurs.   *See McCrea v. Automatic Heat, Inc.*, 55 A.2d 564, 565 (Pa. Super. Ct. 1947); *Tex. Emp'rs' Ins. Ass'n v. Moore*, 56 S.W.2d 652, 655 (Tex. Civ. App.—Waco 1932, writ ref'd).   The Amended Complaint alleges that the parties' referral agreement was completed by letter from Plaintiffs in Pennsylvania to Defendants in Texas.   *See* Amended Complaint at ¶¶ 22.   However, in actuality, the parties' referral agreement was not completed until the clients subsequently agreed to retain Sheridan & Murray as their attorneys—otherwise there could have been no client referral.   Therefore, the agreement was completed when the clients signed the Consents to Refer and the contracts with Sheridan & Murray.   *See* Roberts Amended Decl. at ¶¶ 47-49.   Accordingly, the referral agreement at issue in this action was formed in Texas.

### 3. The nature of an attorney referral relationship further demonstrates that Defendants did not purposefully avail themselves of the privilege of doing business in Pennsylvania.

Importantly, the very nature of an attorney referral agreement negates the idea that Defendants purposefully availed themselves of the privilege of doing business in Pennsylvania. Notably, Roberts has personally handled litigation throughout the United States and, in this matter, had a choice to personally handle the underlying personal injury matter in Pennsylvania. However, by referring this matter to Plaintiffs, Roberts elected *not* to undertake the responsibility of becoming familiar with Pennsylvania laws and performing the requirements for properly providing legal services in Pennsylvania. Stated differently, the fact that Roberts elected to refer the underlying matter to Plaintiffs is evidence that Roberts chose *not* to purposely avail himself of the privilege of doing business in Pennsylvania. *See Childers v. Schwartz*, 262 S.W.3d 698, 700 (Mo. Ct. App. 2008) (holding that the defendant did not purposefully avail himself in a situation where the plaintiffs had solicited the out-of-state defendant's real estate services and had paid a referral fee to the defendant).

Additionally, the referral of a client, such as occurred here, leaves the referring attorney with little to no control over the day-to-day actions of the attorney who solicited and received the referral. The attorney referral relationship in this situation is similar to the relationship between a franchisor and franchisee. For a foreign franchisor to be subject to a state's exercise of personal jurisdiction, there must be a showing that the franchisor "has the right to control the manner in which its franchisees perform their day-to-day activities," rather than more general "common-quality control programs." *S.R. Rosati, Inc.*, 2016 WL 6471453, at *2 (citation omitted). In the customary referral relationship, and in this case, Roberts retained only a high-level oversight responsibility for the matter but lacked the day-to-day control over the decision making and actions of

Sheridan, who received the referral.[15]

In sum, a mere referral agreement generally does not constitute the sort of "minimum contacts" that confer personal jurisdiction over non-resident individuals and corporations.

**C.      The exercise of personal jurisdiction over Defendants would not comport with notions of substantial justice and fair play.**

To the extent the Court determines that Pennsylvania may exercise personal jurisdiction over Defendants, the exercise of that jurisdiction would not comport with "'traditional notions of fair play and substantial justice.'"  *See D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).   Stated differently, the presence of other factors renders the exercise of personal jurisdiction over Defendants unreasonable in this action.  *See Burger King Corp.*, 471 U.S. at 477. This is particularly true in light of the considerations set forth by the U.S. Supreme Court, which include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies."  *See id.* at 476–77 (quoting *World-Wide Volkswagen Corp.*, 444 U.S. at 292) (internal quotation marks omitted).

As discussed above, the U.S. Supreme Court has emphasized, in determining whether personal jurisdiction is present, that the "primary concern is the burden on the *defendant*."  *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (quoting *World–Wide Volkswagen Corp.*, 444 U.S. at 292) (emphasis added and internal quotation marks omitted).   And here, there would be a significant burden on Defendants if the Court were to exercise personal jurisdiction over them in this action. Two critical witnesses—the clients in the underlying personal injury lawsuit—would likely be

---

[15] *See* Roberts Amended Decl. at ¶¶ 54-58.

unable to attend trial in this Court.   Specifically, as a result of his accident, Mr. Burgess was rendered a quadriplegic and is under constant medical supervision at a hospital in Tyler, Texas. His wife, the other client in the underlying matter, also provides care for Mr. Burgess on a daily basis at the hospital and would likely be unable to attend trial in this Court. The Burgesses, however, are critical witnesses because they signed and contemporaneously discussed with Roberts and his investigator the key agreements at the center of this dispute.   This includes the Consents to Refer that provide for Roberts & Roberts to be paid forty percent (40%) of the total attorney's fee recovered by Sheridan & Murray.   The Burgesses are key material witnesses who can speak to the terms of the intended referral agreement between the attorneys and the Burgess's consent to it. Therefore, because the Burgesses would be unable to attend a trial in this Court, Defendants would be significantly burdened by the Court's exercise of personal jurisdiction over them.

Moreover, Texas and the interstate judicial system have a significant interest in this dispute being resolved by a Texas court.   This dispute is over the amount of the attorney's fee that must be paid to a Texas attorney for legal representation of his Texas clients.   These Texas clients were only referred to a Pennsylvania attorney after that Pennsylvania attorney directly solicited the referral of these clients from the Texas attorney.   Furthermore, Plaintiffs are asking for relief that would impact a series of interrelated agreements or contracts that govern the amount of the attorney's fee owed to the Texas attorney, including (1) Defendants' two employment contracts with the clients, (2) each client's "Consent to Refer" the underlying case to Plaintiffs, and (3) Plaintiffs' two employment contracts, all six of which were accepted, signed, and formed in Texas.   As it currently stands, the Texas clients have a valid and binding agreement with Roberts & Roberts under which they must pay Roberts & Roberts 40% of the total attorney's fee in their case.   *See Johnston v. California Real Estate Inv. Tr.*, 912 F.2d 788, 789 (5th Cir. 1990); *Mandell & Wright v. Thomas*, 441 S.W.2d 841, 847 (Tex. 1969).  It is unclear how Plaintiffs' limited request for relief would impact

13

these six interrelated agreements or contracts, and how much in attorney fees might actually be paid out altogether by the Burgesses. Therefore, it would be more appropriate for a Texas court to determine how much in attorney fees should be paid out under the Texas contracts and who should pay it. To that end, it would be inappropriate to subject Defendants to personal jurisdiction in Pennsylvania for a partial resolution of the attorney fees owed to Defendants.

Furthermore, the Court's exercise of personal jurisdiction over Defendants would have a chilling effect on attorney referrals. Many attorneys refer clients to attorneys in other states to avoid invoking both the privileges and obligations of practicing law in the other state's court system, or because it is in the client's best interests. If the Court were to find that it should exercise personal jurisdiction in this action, some attorneys across the United States may be less willing to refer their clients to a Pennsylvania attorney, given that the referral could subject the referring attorney to being haled into court in Pennsylvania.

As a final matter, despite Plaintiffs' allegations, personal jurisdiction cannot exist based on Defendants' requests from Texas for information from Pennsylvania agencies and witnesses for use in the Texas litigation that Defendants were pursuing for their Texas clients.[16] Not only were these *de minimis* contacts, but these contacts were related to a Texas personal injury claim, *not* the instant declaratory judgment action. *See Walden v. Fiore*, 571 U.S. 277, 284 (stating that "the defendant's *suit-related conduct* must create a substantial connection with the forum State" (emphasis added)); *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1781 (requiring "a connection between the forum and *the specific claims at issue*" (emphasis added)). Even assuming the contacts were related to the instant action, a finding of jurisdiction would subject anyone who requests information from another state to jurisdiction in that state, which does not comport with the U.S. Supreme Court's recently narrowed personal jurisdiction doctrine. In short, Defendants' investigation pertaining to Texas

---

[16] *See* Roberts Amended Decl. at ¶ 33.

litigation for Texas clients does not create a "substantial connection" with Pennsylvania and therefore cannot create personal jurisdiction over Defendants in this action.  In sum, the exercise of personal jurisdiction over Defendants in this action would not comport with "traditional notions of fair play and substantial justice."

### D.   Randell C. Roberts is shielded from personal jurisdiction in Pennsylvania.

Though he is named individually in this action, the Commonwealth of Pennsylvania also lacks personal jurisdiction over Roberts as an individual.  As "a general rule, individuals performing acts in a state in their corporate capacity are not subject to the personal jurisdiction of the courts of that state for those acts."  *See D & S Screen Fund II v. Ferrari*, 174 F. Supp. 2d 343, 347 (E.D. Pa. 2001) (citation omitted).  As described in the attached Amended Declaration, Roberts's contacts with this forum were made only in his corporate capacity.  Therefore, there is no legitimate basis upon which he can personally be subject to jurisdiction in Pennsylvania and Roberts must accordingly be dismissed from this action.  *See id.*

### E.   Pennsylvania lacks general jurisdiction over Defendants.

Though Plaintiffs do not allege in their Amended Complaint that this Court may exercise *general* jurisdiction over Defendants, it is notable that the Commonwealth of Pennsylvania also lacks such jurisdiction over Defendants.  As to Roberts personally, Plaintiffs must show that Roberts "(1) lives here, (2) was served here, or (3) consented to suit here."  *Farber v. Tennant Truck Lines, Inc.*, 84 F. Supp. 3d 421, 434 (E.D. Pa. 2015); *accord Decker v. Dyson*, 165 Fed. App'x 951, 953 (3d Cir. 2006).  Roberts does not live in Pennsylvania, was not served in Pennsylvania, and has not consented to suit in Pennsylvania.  Accordingly, there is no basis for this Court's exercise of general jurisdiction over him.[17]

---

[17]   In any event, courts have observed that it is unclear whether states may exercise general jurisdiction over nonresident individuals.  *See Farber*, 84 F. Supp. 3d at 433–34 ("Domicile aside,

Pennsylvania also lacks general jurisdiction over Roberts & Roberts.   Under the U.S. Supreme Court's recently narrowed personal jurisdiction doctrine, general jurisdiction only exists if the law firm's "affiliations with [Pennsylvania] are so continuous and systematic as to render it essentially at home in [Pennsylvania]."   *See Daimler AG v. Bauman*, 571 U.S. 117, 138–39 (2014) (internal quotation marks and brackets omitted).   In "all but the most exceptional case[s], a corporation is only at home in a forum state when it is (1) incorporated in that state or (2) has a principal place of business in that state."   *Esposito v. Las Vegas Sands Corp.*, No. CV-17-2936, 2018 WL 1010627, at *3 (E.D. Pa. Feb. 21, 2018) (Surrick, J.) (quoting *Daimler AG*, 571 U.S. at 138 n.19) (internal quotation marks omitted).   And it is "incredibly difficult to establish general jurisdiction [over a corporation] in a forum *other* than the place of incorporation or principal place of business."   *See Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 223 (3d Cir. 2016) (emphasis and brackets in original) (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014)). Roberts & Roberts is a Texas corporation with a principal place of business in Texas, and this is not an exceptional case that contemplates disregarding the general rule.   In short, Roberts & Roberts is anything but "at home" in Pennsylvania and it not subject to general jurisdiction in Pennsylvania.

## IV.   THIS ACTION SHOULD BE TRANSFERRED TO THE EASTERN DISTRICT OF TEXAS

Regardless of whether Pennsylvania has personal jurisdiction over Defendants, this action should be transferred to the U.S. District Court for the Eastern District of Texas.   If the Court finds it lacks jurisdiction over this action, 28 U.S.C. § 1631 states:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, *if it is in the interest of justice*, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed.

---

however, it remains largely unclear whether a state may exercise general jurisdiction over any nonresident defendant." (citations omitted)); *see also Burnham v. Superior Court of Cal.*, 495 U.S. 604, 610 n.1 (1990) (plurality opinion) (observing that "[i]t may be that [general jurisdiction] applies only to corporations").

28 U.S.C. § 1631 (emphasis added).  Even if the Court determines that personal jurisdiction exists

over Defendants in this action, 28 U.S.C. § 1404 also provides:

> *For the convenience of parties and witnesses, in the interest of justice*, a district
> court may transfer any civil action to any other district . . .where it might have been
> brought or to any district . . . to which all parties have consented.

28 U.S.C. § 1404(a) (emphasis added); *see also McKinney v. Pinter*, No. CV-18-4185, 2019 WL

952247, at *4 (E.D. Pa. Feb. 26, 2019) (Surrick, J.) ("Under § 1404(a), district courts are vested

with broad discretion to determine, on an individualized, case-by-case basis, whether convenience

and fairness considerations weigh in favor of transfer." (quoting *Jumara v. State Farm Ins. Co*., 55

F.3d 873, 883 (3d Cir. 1995)).

For transfer to be appropriate, Sections 1404 and 1631 both essentially require: (1) that this

action could been brought in the U.S. District Court for the Eastern District of Texas on the day it

was filed; and (2) that the transfer is in the interest of justice. *See* 28 U.S.C. § 1404(a); 28 U.S.C.

§ 1631. Transfer to the Eastern District of Texas satisfies both requirements.

## A.  This action could have been brought in the U.S. District Court for the Eastern District of Texas.

For transfer to be appropriate, Sections 1404 and 1631 essentially require that this action

could have been brought in the Eastern District of Texas.  *See* 28 U.S.C. § 1404(a); 28 U.S.C. §

1631.   This requires a determination as to whether the Eastern District of Texas is appropriate both

jurisdictionally and as a venue.  *See McKinney*, 2019 WL 952247, at *5.

The Eastern District of Texas may, at the least, exercise personal jurisdiction over Sheridan &

Murray.[18]  Because the Texas long-arm statute has been interpreted to extend to the limits of due

---

[18] As with Roberts, it is unclear whether Sheridan may be subject to the personal jurisdiction of a
Texas court, given that he may have been acting in his corporate capacity for Sheridan & Murray.
Sheridan did, however, personally perform legal services in this matter in Texas. *See, e.g.*, Roberts
Amended Decl. at ¶ 63.  Furthermore, Defendants note that it appears unlikely that Texas would

17

process, a Texas court may assert jurisdiction over Plaintiffs so long as the exercise of jurisdiction is constitutionally permissible.   *See Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir. 1985). Plaintiffs clearly have made "minimum contacts" with Texas—and specifically the Eastern District of Texas—from which they have formed a substantial connection with the State.   The attached Amended Declaration sets forth Plaintiffs' contacts with Texas in more detail, but includes reference to, in part, the following:

- Sheridan directly solicited Roberts, a Texas resident, for the referral of Texas clients to his law firm.

- Sheridan undertook representation of Texas clients in a personal injury lawsuit.

- Sheridan traveled to Texas to meet with the Texas clients on at least one occasion, sent experts from Pennsylvania to meet with the clients in Texas, and based upon information and belief, he or members of his law firm also participated in depositions in Texas in the lawsuit filed on behalf of the Texas clients.

- The dispute in this action relates to Sheridan's request that a Texas attorney waive most of his attorney's fee to which the Texas attorney was entitled under Texas contracts.

In sum, if anyone chose to avail themselves of the opportunity to do business in a foreign jurisdiction, it was Plaintiffs, who chose to represent Texas clients, whose referral Plaintiffs solicited from a Texas lawyer.   In other words, Plaintiffs could reasonably expect to be haled into court in Texas.  *See Walden*, 571 U.S. at 286.

Furthermore, the Eastern District of Texas would constitute a proper venue for this action in two respects.   First, both Defendants reside in the Eastern District of Texas, making venue proper under 28 § U.S.C. 1391(b)(1).   Second, a substantial part of the events giving rise to this claim occurred in Texas, including the formation of six contracts or agreements, as discussed earlier in this Memorandum.[19]   In short, venue is clearly proper in the Eastern District of Texas.

---

possess general jurisdiction over Plaintiffs, but Defendants elect not to waive this argument at this time.

[19] For a discussion of these contractual arrangements, see *supra* pgs. 13-14.

**B.**     **Transfer of this action to the U.S. District Court for the Eastern District of Texas is in the interest of justice.**

Transfer of this action to the Eastern District of Texas would also be in the interest of justice under Sections 1404(a) and 1631.  *See* 28 U.S.C. § 1404(a); 28 U.S.C. § 1631.  To the extent the Court determines that is possesses jurisdiction over one or both Defendants, Section 1404(a) references three factors to weigh when considering transfer to another venue: convenience of parties, convenience of witnesses, and interest of justice.  *See* 28 U.S.C. § 1404(a).  The Third Circuit has noted, however, that "courts have not limited their consideration to the[se] three enumerated factors" and that "commentators have called on the courts to 'consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'"  *Jumara*, 55 F.3d at 879 (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION AND RELATED MATTERS § 3847 (2d ed. 1986)).  To that end, the Third Circuit has suggested additional public and private interests that courts may consider:

> The *private interests* have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

> The *public interests* have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 883 (noting that, under Section 1404(a), district courts are "vest[ed] with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."); *see also Kisano Trade & Invest Ltd. v. Lemster*, 737

F.3d 869, 872 (3d Cir. 2013) (noting that a district court's decision to transfer under Section 1404(a) "deserves substantial deference").

> 1. **On balance, transfer to the U.S. District Court for the Eastern District of Texas would serve the private interests in this case.**

When weighed together, the private interests in this action would be better served by transfer to the U.S. District Court for the Eastern District of Texas. This is particularly true because the most important of these interests—convenience of the witnesses—weighs heavily in favor of transfer. *See Headon v. Colorado Boys Ranch*, No. 204-CV-04847-LDD, 2005 WL 1126962, at *7 (E.D. Pa. May 5, 2005) (finding that "the convenience of witnesses, perhaps the most important factor, weigh[ed] heavily in favor of transfer"). As one commentator observed:

> Probably the most important factor . . . is the convenience of witnesses. If the forum chosen by plaintiff will be most convenient for the witnesses, this is a powerful argument against transfer, while if some other forum will better serve the convenience of witnesses, transfer is likely to be granted.

See 15 Wright, Miller, & Cooper, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3851, at 415-416 (2d ed. 1986).

Two critical witnesses in this action are the Burgesses—the plaintiffs in the underlying personal injury lawsuit. As discussed earlier in this Memorandum, the Burgesses signed and contemporaneously discussed with Roberts and his investigator the key terms of the agreements in dispute, including Defendants' employment contracts, Plaintiffs' employment contracts, the intended division of the attorney's fee, and their referral under their respective referral arrangements (a/k/a/ "Consents to Refer"). Unfortunately, Mr. Burgess was rendered a quadriplegic and cannot easily travel from the hospital, which is located a few blocks from the federal courthouse for the Tyler Division of the Eastern District of Texas. Furthermore, Mrs. Burgess provides daily care to Mr. Burgess, which would likely make travel logistically difficult for her. In short, Mr. and Mrs. Burgess are critical witnesses, and Defendants' choice of venue poses a

20

considerable inconvenience and logistical complications for these witnesses.

Moreover, Mr. and Mrs. Burgess are not subject to the subpoena power of this Court and cannot be compelled to attend trial, given that they are located further than 100 miles from the Eastern District of Pennsylvania. *See* FED. R. CIV. P. 45(c)(1); *Dinterman v. Nationwide Mut. Ins. Co.*, 26 F. Supp. 2d 747, 750 (E.D. Pa. 1998) (finding that because the court's subpoena power did not reach important witnesses, another district was a "far more convenient and appropriate forum in which to litigate th[e] matter"). Given the importance of their testimony in this matter, this fact weighs heavily in favor of transfer to the Eastern District of Texas, where Mr. and Mrs. Burgess currently reside.

Another central private interest in this case is that this action arose in the Eastern District of Texas. It revolves around six written agreements or contracts that were accepted, signed, and formed in Texas. The rights and obligations of the *clients* as well as all the attorneys under these contracts should be collectively determined under Texas law—which was the expectation of everyone who signed these contracts. Moreover, this dispute essentially involves how much a Texas attorney should be paid by someone for providing legal services in Texas to Texas clients. Plaintiffs directly solicited these Texas clients from a Texas attorney in the Eastern District of Texas. All of the disputed transactions in this action were initiated by Plaintiffs *toward* Defendants and Defendants' clients in Texas, including the February 7, 2018 phone call and email that changed the referral fee agreement between the parties. In light of all of the above, if this claim arose anywhere, it arose in Texas.

The remaining private interest factors also weigh in favor of transfer to the Eastern District of Texas:

- **Plaintiffs' and Defendants' forum preference.** Generally, a plaintiff's choice of forum is entitled to deference. However, there is less deference in a case such as this, where relatively few, if any, of the operative facts took place in the plaintiff's forum

21

choice. *See Headon*, 2005 WL 1126962, at *4. As explained above, this claim plainly arose in Texas.

- **The convenience of the parties.** When considering the convenience of the *parties*, this factor would weight against transfer if it would "merely switch the inconvenience from defendant to plaintiff." *Dinterman*, 26 F. Supp. 2d at 750. However, the relative inconvenience of Plaintiffs is slightly less than that of Defendants because Sheridan personally traveled on at least one occasion to the Eastern District of Texas and sent expert witnesses or other agents on at least one occasion to Texas in the underlying personal injury litigation. *See Lomanno v. Black*, 285 F. Supp. 2d 637, 645 (E.D. Pa. 2003) ("Since [plaintiff] spent periods of time working in Virginia, he cannot as effectively argue that pursuing the . . . claim in Virginia is hugely inconvenient." (citation omitted)). Notably, Defendants never traveled to Pennsylvania or sent anyone to Pennsylvania to prosecute or assist with the underlying litigation.

- **The location of books and records.** As to the location of books and records, "the technological advances of recent years have significantly reduced the weight of this factor in the balance of convenience analysis." *Lomanno*, 285 F. Supp. 2d at 647 (citation and internal quotation marks omitted). Further, "[t]he Third Circuit has stated that this factor should be limited to the extent that the files could not be produced in the alternative forum." *Id.* at 647. In any event, the signed agreements at the core of this dispute are located in Defendants' principal office in the Eastern District of Texas.

In sum, the private interest factors set forth by the Third Circuit clearly weigh in favor of transfer of this action to the Eastern District of Texas.

### 2. Transfer of this action to the U.S. District Court for the Eastern District of Texas would be in the public interest.

Similarly, the public interest factors also weigh heavily in favor of transfer to the Eastern District of Texas:

- **The enforceability of the judgment.** Plaintiffs' Amended Complaint narrowly focuses on an alleged oral agreement between just the Plaintiffs and Defendant. As noted above, however, this action involves and impacts six interrelated written agreements, each of which was formed in Texas. It is unclear how Plaintiffs' requested relief will impact these other agreements. For example, Defendants have written contracts with the Burgesses, which were modified by the Consents to Refer, and which state that the Burgesses will pay Defendants 40% of the recovery obtained by Plaintiffs.[20] These agreements were all formed in Texas and are governed by Texas law, under which the clients have a financial obligation directly to Defendants. *See Johnston*, 912 F.2d at 789; *Mandell & Wright*, 441 S.W.2d at 847. Given that it is unclear how Plaintiffs' requested

---

[20] *See* Exhibits A & G.

relief will impact all of the interrelated agreements, it will be simpler for the Eastern District of Texas to resolve this dispute in a comprehensive manner.

- **The relative administrative difficulty in the two forums resulting from court congestion.** Regarding the relative congestion of the two forums, the Eastern District of Texas is experiencing a decreasing caseload. Due to the U.S. Supreme Court's reshaping of personal jurisdiction doctrine, fewer patent cases are being filed in the Eastern District of Texas. Federal judicial caseload statistics show that in 2018, new case filings in the District were down 33.2%.[21] Notably, a new district judge was recently confirmed and seated in the Eastern District's Tyler Division, and as of the filing of this Memorandum, there are nominations for three more federal district judges for the Eastern District of Texas pending in the U.S. Senate.

- **The local interest in deciding local controversies at home.** There is clearly a local interest in deciding this case in the Eastern District of Texas. As noted above, this action is essentially a dispute over how much a Texas attorney should be paid by someone for his legal services provided in Texas to Texas clients. These clients and Defendants have a direct interest in resolving this dispute and the clients' financial obligations to Defendants under their contracts. Furthermore, Texas courts have an interest in deciding disputes over agreements formed in Texas. This is particularly true where Texas laws place specific requirements on such agreements. *See, e.g.*, TEX. GOV'T CODE § 82.065(a) ("A contingent fee contract for legal services must be in writing and signed by the attorney and client.").

- **The public policies of the forums.** As noted above, this action raises the question as to why a state other than Texas should rule on the collective construction of the agreements at the center of this dispute—all of which were formed in Texas—and directly impact Texas clients and their Texas attorneys.

- **The familiarity of the trial judge with the applicable state law in diversity cases.** If this case is transferred to the Eastern District of Texas, Pennsylvania's conflict of laws jurisprudence will govern the dispute. This inquiry combines an analysis of contacts establishing significant relationships with a qualitative appraisal of the relevant States' policies with respect to the controversy. *See Hammersmith*, 480 F.3d at 231. Under this analysis, there is a strong argument that Texas law will govern the construction of the numerous agreements at the center of this dispute. As noted above, there are also specific Texas laws that will govern these agreements.

- **Practical considerations that could make the trial easy, expeditious, or inexpensive.** As noted above, the interrelated nature of the multiple agreements involved in this dispute would make resolution of this dispute significantly simpler in Texas. Moreover, retaining venue in Pennsylvania may result in two actions arising out of the same set of operative

---

[21] *Federal Judicial Caseload Statistics 2018*, Table C: "U.S. District Courts—Civil Cases Commenced, Terminated, and Pending During the 12-Month Period Ending March 31, 2017 and 2018," UNITED STATES COURTS.

facts proceeding *in two different judicial districts*.  Roberts is not subject to personal jurisdiction in Pennsylvania pursuant to the corporate shield doctrine.[22]  Assuming that Roberts can and should be individually named in this type of action, Plaintiffs would need to file a separate action against him in the Eastern District of Texas.  Because jurisdiction would only be proper as to *both* Defendants in the Eastern District of Texas, transfer to that District would conserve judicial resources.  *See Creative Waste Mgmt., Inc. v. Capitol Envt'l Servs., Inc.*, No. 04-1060, 2004 WL 2384991, at *10 (E.D. Pa. Oct. 22, 2004) (observing that a decision not to transfer would mean that, "to obtain complete relief, two actions arising out of the same set of operative facts would proceed in two different judicial districts," which would "lead[] to the wastefulness of time, energy, and money that § 1404(a) was designed to prevent").

In sum, regardless of whether the Court determines that personal jurisdiction exists over one or both Defendants, this action should be transferred to the U.S. District Court for the Eastern District of Texas, and such a transfer is in the interest of justice.

## V.   CONCLUSION

There is no personal jurisdiction over Defendants in Pennsylvania and accordingly, the Court should dismiss this action unless it finds it in the interest of justice to transfer the case to the U.S. District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1631.  To the extent the Court determines that it has personal jurisdiction over one or both Defendants, the Court should transfer this action to the U.S. District Court for the Eastern District of Texas pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted:
**HAINES & ASSOCIATES**

_____*/s/ Clifford E. Haines*_____
CLIFFORD E. HAINES
DANIELLE M. WEISS
The Widener Building, 5th Floor
1339 Chestnut Street
Philadelphia, PA 19107
(215) 246-2200 (Telephone)
(215) 246-2211 (Facsimile)

*Attorneys for Defendants*

Dated: May 8, 2019

---
[22] *Supra* at Section III(D).

24

IN TH UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHERIDAN AND MURRAY, LLC and
THOMAS W. SHERIDAN,

                         Plaintiffs,                    Civil Action No. 19-467 (RBS)

        v.

ROBERTS AND ROBERTS, and
RANDELL C. ROBERTS,

                         Defendants.

**CERTIFICATE OF SERVICE**

        I, Clifford E. Haines, Esquire, hereby certify that I have caused this document to be

filed electronically on this 8th day of May, 2019.  It is available for reviewing and downloading

from the ECF System.

                                        _____/s/ Clifford E. Haines_____
                                        CLIFFORD E. HAINES
                                        The Widener Building, 5th Floor
                                        1339 Chestnut Street
                                        Philadelphia, PA 19107
                                        (215) 246-2200 (Telephone)
                                        (215) 246-2211 (Facsimile)