**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

SHERIDAN AND MURRAY, LLC and :
THOMAS W. SHERIDAN,             :     Civ. A. No. 19-467 (RBS)
                                 :
        Plaintiffs,         :
                                   :
    v.                            :
                                 :
ROBERTS AND ROBERTS, and      :
RANDELL C. ROBERTS,          :
                                 :
        Defendants.      :

<u>**AMENDED DECLARATION OF RANDELL C. ROBERTS
IN SUPPORT OF
DEFENDANTS' AMENDED MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION OR, IN THE ALTERNATIVE,
MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF TEXAS**</u>

I, Randell C. Roberts, hereby submit this Declaration, pursuant to 28 U.S.C. §1746, and in

support of Defendants' Motion to Dismiss for Lack of Personal Jurisdiction Or, In the Alternative,

Motion to Transfer Venue to the Eastern District of Texas, and declare as follows:

     1.      I am one of the defendants in this civil action.

     2.      I am also a citizen of Texas and I reside in Tyler, Texas, which is within the area

where the United States District Court for the Eastern District of Texas sits.

     3.      I have been an attorney licensed to practice law in Texas since 1979.  I am also

certified in Personal Injury Trial Law by the Texas Board of Legal Specialization.  I am also

admitted to practice law before the United States District Court for the Eastern District of Texas,

the United States Fifth Circuit Court of Appeals, and the United States Supreme Court.

     4.      I have practiced personal injury law for nearly 40 years.  During my professional

career, I have been recognized in *Time*, *Newsweek*, *Ladies Home Journal*, and *The Texas*

*Lawyer* as well as on CNN and NBC's "Dateline" for my role in uncovering the documents that led to the recall of the Firestone Radial ATX and Wilderness lines of tires. My case against Firestone was featured in McGraw-Hill's college textbook on corporate crime entitled *Criminology and the Criminal Justice System*. Because of my role in other noteworthy personal injury cases, I have more recently been invited to appear on "Fox & Friends," ABC's "Good Morning America," CNN's "American Morning," MSNBC, Fox Business News, "Geraldo at Large," and CNBC.  I have also been consulted on legal issues by *The Wall Street Journal*, *USA Today*, *Business Week*, *Bloomberg News*, and *The Associated Press*.

5.      I have also been a frequent lecturer at advanced personal injury seminars. I have spoken at the "Stalwarts' Hall of Fame" at the annual convention of the American Association for Justice as well as at their annual "Weekend With the Stars" program.  I have written numerous papers and spoken on such topics as products liability and investigating major personal injury claims. I was one of only 16 trial attorneys in the nation to have earned the "Advanced Studies in Trial Advocacy" award from the National College of Advocacy.

6.      I have been admitted *pro hac vice* to serve as lead counsel for plaintiffs in personal injury cases in state and federal courts in other states, but never in Pennsylvania.

7.      I am also the founding shareholder and Managing Attorney of The Roberts Law Firm, A Professional Corporation d/b/a Roberts & Roberts, A Professional Corporation.

8.      Roberts & Roberts, A Professional Corporation is a Texas professional corporation that was incorporated under Texas law in 1982.

9.      The principal place of business of Roberts & Roberts is located at 118 West Fourth Street, Tyler, Texas 75701. This location is within the area where the United States District Court for the Eastern District of Texas sits.

10.      Roberts & Roberts has two satellite offices located in Dallas and Longview, Texas. These satellite offices are within approximately 100 miles of our principal office in Tyler. Roberts & Roberts has no other offices in Texas or elsewhere.

11.      I make this Declaration on behalf of myself and on behalf of Roberts & Roberts ("my law firm").

12.      Neither I nor any attorney employed by my law firm is licensed to practice law in Pennsylvania.

13.      Neither I nor any attorney employed by my law firm has ever appeared before a Pennsylvania court in a *pro hac vice* role or otherwise.

14.      Neither I nor any attorney employed by my law firm has ever participated in any legal proceedings in Pennsylvania, including depositions.

15.      Neither I nor any attorney employed by my law firm has ever performed any legal services in Pennsylvania.

16.      Neither I nor any attorney employed by my law firm has ever represented a Pennsylvania resident.

17.      My law firm has never been incorporated in Pennsylvania, registered to do business in Pennsylvania, or licensed to practice law in Pennsylvania.

3

18.     Neither I nor my law firm have ever owned, leased, or used land or real property in Pennsylvania.

19.     Neither I nor my law firm have ever submitted a tax return to or paid any property or income taxes to the Commonwealth of Pennsylvania or any city or county located in the Commonwealth of Pennsylvania.

20.     My law firm has never submitted any administrative reports to any agency or department of the Commonwealth of Pennsylvania.

21.     Neither I nor my law firm have any agents, employees, or representatives located in Pennsylvania, including any agent for service of process in Pennsylvania.

22.     Neither I nor my law firm have ever had any bank accounts in Pennsylvania.

23.     Neither I nor my law firm have ever had a telephone listing or address in Pennsylvania.

24.     Neither I nor my law firm have ever advertised or solicited business of any type in Pennsylvania.

25.     Neither I nor my law firm have ever conducted business of any type in Pennsylvania.

26.     Neither I nor my law firm regularly purchase products or supplies within Pennsylvania for use in our business.

27.     James and Kay Burgess are citizens and residents of Texas.  Their permanent residence is in Mabank, Texas, which is in the county adjoining the county in which my law firm's

principal office is located.  Their permanent residence is also within the area where the United States District Court for the Eastern District of Texas sits.

28.     James Burgess was severely injured while working for Patterson-UTI Drilling Company LLC on December 14, 2012.  Patterson-UTI Drilling Company LLC is a Texas Limited Liability Company.  Patterson-UTI Drilling Company LLC has offices within the area where the United States District Court for the Eastern District of Texas sits.

29.     James Burgess was injured on a drilling rig in Pennsylvania when a light fixture fell on his head.  He was injured while working with a drilling crew employed by Patterson-UTI Drilling Company LLC.  The rig manager and a number of the drilling crew, who were witnesses to this occurrence, reside in Texas.

30.     As a result of this accident, James Burgess was rendered a quadriplegic.  He remains hospitalized in a facility in Tyler, Texas.  This facility, which is where James Burgess stays and Kay Burgess spends her days, is within the area where the United States District Court for the Eastern District of Texas sits.

31.     In early spring of 2013, James and Kay Burgess each retained my as well as my law firm's services to represent them in their personal injury claims resulting from this accident. My law firm's contracts with each of them (Exhibit A) were accepted and fully executed in Texas. Neither of these contracts have ever been terminated or disavowed by any party to those contracts. My law firm's employment contracts with James and Kay Burgess were drafted in accordance with the Texas Disciplinary Rules of Professional Conduct, the Texas Government Code, and Texas law.  I expected these employment contracts to be governed by Texas law.

32.     James Burgess's employer, Patterson-UTI Drilling Company LLC, refused to cooperate with my law firm's investigation into this accident.  In the spring of 2013, I filed a lawsuit against the employer in Van Zandt County, Texas, to compel the discovery of information about how and why this accident occurred.  This was the only lawsuit that either I or my law firm ever filed on behalf of James and Kay Burgess and it was styled *No. CV04893; James Burgess v. Patterson-UTI Drilling Company LLC; County Court at Law; Van Zandt County, Texas*.  During 2013, my law firm or I obtained a court order compelling Patterson-UTI Drilling Company LLC to produce relevant documents, deposed its corporate representative, interviewed witnesses, and reviewed relevant documents.  These legal proceedings all occurred within the area where the United States District Court for the Eastern District of Texas sits.

33.     James Burgess's employer, Patterson-UTI Drilling Company LLC, is a Texas limited liability company.  In connection with the lawsuit I filed against this employer in Texas, I employed multiple investigators, one of whom was in Pennsylvania, to interview witnesses.  I also wrote to various federal and state agencies, including Pennsylvania agencies, requesting relevant records.  This investigation was in furtherance of the claims my law firm was investigating in the lawsuit we had filed against the employer in Texas.  Neither I nor my law firm ever hired anyone to travel from Texas to Pennsylvania to conduct any aspect of our investigation.

34.     When I filed the lawsuit against the employer in Texas, the medical prognosis for James Burgess was poor.  Had James Burgess not survived his catastrophic injury, his heirs would have been able to proceed with a claim for punitive damages against the employer.  By October of 2013, however, the medical prognosis for James Burgess had improved and I dismissed the lawsuit against the employer.  I dismissed this lawsuit because James Burgess was covered by workers'

compensation insurance at the time of this accident, and Texas law prohibits him or his heirs from seeking monetary damages from his employer in such circumstances.

35.     My investigation indicated that at least Clark Electrical Contractors, Inc., which installed the light fixture on the drilling rig, might have some liability for James and Kay Burgess's damages.   Clark Electrical Contractors, Inc. appeared to only have $2,000,000.00 in liability insurance coverage, however, and the workers' compensation lien on any settlement would exceed $2,000,000.00.   The workers' compensation carrier also advised me that it would not consider reducing its lien so that James and Kay Burgess could share in any settlement obtained from a third party, including Clark Electrical Contractors, Inc.

36.     In October of 2013, I attended an American Association for Justice seminar in Napa, California, entitled "2013 Refocus Seminar with Rodney Jew:  It's All About the Optics." In an apparent effort to market his law practice to attorneys around the country attending that seminar, Thomas W. Sheridan of Sheridan and Murray, LLC gave a presentation at that seminar. It was at this seminar in Napa, California, that I first met Mr. Sheridan who is a plaintiff in this civil action filed against me.  I never met Mr. Sheridan in person again after that seminar.

37.     After his presentation, Mr. Sheridan invited questions from the audience.  I was one of the attendees who did ask Mr. Sheridan as well as the other speakers about aspects of their presentations.  Since Mr. Sheridan was from Pennsylvania, I asked him during our conversation if he was aware of any way under Pennsylvania law I could get the workers' compensation insurance carrier to allow James Burgess to receive a portion of a settlement that would be smaller than the workers' compensation lien.  Mr. Sheridan asked me a number of questions about James Burgess's accident that were beyond the scope of my question to him.  Mr. Sheridan then informed me that

there might be causes of action for James Burgess against third parties under Pennsylvania law that might not be available to James Burgess under Texas law.  Mr. Sheridan also informed me that Pennsylvania law might provide more leverage for getting a lien reduction from the workers' compensation insurance carrier than Texas law.

38.     My conversation with Mr. Sheridan lasted less than ten minutes.  At the conclusion of our conversation, he made a note of my name and invited me to contact him if I needed any help with James Burgess's case.

39.     When I left the seminar in Napa, California, I had no further plans to contact Mr. Sheridan.

40.     I had no further contact with Mr. Sheridan until approximately six weeks later on November 15, 2013.  On November 15, 2013. I received an unsolicited email (Exhibit B) at my office in Tyler, Texas, from Mr. Sheridan.  His email invited me to call him to discuss James Burgess's case with him further or to email him any further information that I might like for him to review to identify other avenues of recovery for James Burgess.

41.     In December of 2013, I accepted Mr. Sheridan's invitation to provide him with more information about James Burgess's accident.  These file materials were forwarded to Mr. Sheridan at his request and more than one year before the expiration of the statute of limitations on December 14, 2014.  After reviewing the information he had requested from me, Mr. Sheridan sent me an email on February 7, 2014 (Exhibit C) stating that he would like to investigate the case further.

42.     On September 10, 2014, Mr. Sheridan and I spoke by telephone.  I was in my office in Tyler, Texas.  In that conference, Mr. Sheridan offered to divide between our firms the attorney's

8

fee earned in the representation of James and Kay Burgess, if these clients and I agreed to his undertaking their representation. Mr. Sheridan specifically offered in that conversation to pay my law firm 40% of the gross attorney fees earned in the representation of James and Kay Burgess. It was my understanding that Mr. Sheridan was offering to pay a 40% referral fee because my law firm had performed more than the customary amount of work necessary to earn the customary one-third (1/3) referral fee. I accepted Mr. Sheridan's offer in that telephone conference in my office on September 10, 2014. We concluded that telephone conference with the understanding that I would refer James and Kay Burgess's claims to his law firm for further prosecution with their consent.

43.     The next day, September 11, 2014, Mr. Sheridan sent an email (Exhibit D) to me at my office in Tyler, Texas stating: "I have attached a letter to you acknowledging your referral of these matters to me and my firm and our commitment to pay you a 40% referral fee." Attached to that email was a letter (Exhibit E) from Mr. Sheridan, which was addressed to me at my office in Tyler, Texas, and also dated September 11, 2014, which stated: "This letter will also confirm that our firm will pay you a referral fee in the amount of forty percent (40%) of the gross attorney's fee recovered by Sheridan & Murray for its representation of both Mr. & Mrs. Burgess."

44.     Contrary to the express representations of Plaintiffs Sheridan and Murray, LLC and Thomas W. Sheridan to the Court,[1] there was no oral agreement made on September 10, 2014, that my law firm would only be paid "a referral fee in the amount of forty percent (40%) of any fee that Sheridan and Murray realized from any recoveries made against Clark Electric." Moreover, there was no agreement that this "referral fee specifically excluded any fees Sheridan and Murray

---

[1] *See* Paragraph No. 14 of Plaintiffs' Complaint for Declaratory Relief [Docket No. 1].

realized from recoveries made against defendants other than Clark Electric."  Furthermore, Mr. Sheridan's referral confirmation letter of September 11, 2014, did not "mistakenly and incorrectly"[2] state that my law firm was entitled to forty percent (40%) of all the gross attorney's fee recovered by Sheridan and Murray.  Instead, Mr. Sheridan's email forwarding his letter of September 11, 2014, and that letter affirmed his commitment to pay a 40% referral fee (Exhibits D & E).

45.     Contrary to the express representations of Plaintiffs Sheridan and Murray, LLC and Thomas W. Sheridan to the Court that Mr. Sheridan's letter of September 11, 2014, was never signed by Mr. Sheridan,[3] it was electronically signed by Mr. Sheridan (Exhibit E).  More importantly, this letter was attached to an email Mr. Sheridan sent to me on September 11, 2014, (Exhibit D) in which Mr. Sheridan personally wrote:  "I have attached a letter to you acknowledging the referral of these matters to me and my firm and our commitment to pay you a 40% referral fee."

46.     Also attached to Mr. Sheridan's email of September 11, 2014, were employment contracts (Exhibit F), which Mr. Sheridan instructed me to have James and Kay Burgess execute in Texas and return to Mr. Sheridan.  These contracts were drafted by Mr. Sheridan's law firm, Sheridan and Murray LLC, and they each identified James and Kay Burgess as having an address of "160 VZ CR 2724, Mabank, Texas 75147."  This address is within the area where the United States District Court for the Eastern District of Texas sits.

47.     In accordance with Mr. Sheridan's instructions, I explained Mr. Sheridan's contracts to James and Kay Burgess.  These contracts, which did not require a signature from Mr.

---

[2] *See* Paragraph No. 15 of Plaintiffs' Complaint for Declaratory Relief [Docket No. 1].
[3] *See* Paragraph No. 16 of Plaintiffs' Complaint for Declaratory Relief [Docket No. 1].

Sheridan, were accepted and fully executed by James and Kay Burgess (Exhibit F) in the Eastern District of Texas.

48.     Before James and Kay Burgess accepted and fully executed Mr. Sheridan's employment contracts, I explained to them the terms of the referral agreement between me and Mr. Sheridan, including the division of the attorney's fee.  An investigator, Blane Carrifee, was present when I explained the terms of the referral agreement to James and Kay Burgess.  These witnesses to the terms of the original referral agreement, James Burgess, Kay Burgess, and Blane Carrifee, all reside within the Eastern District of Texas.

49.     After I explained the terms of the referral agreement to James and Kay Burgess, they each executed a Consent to Refer (Exhibit G).   These documents confirmed their understanding of the referral agreement, their consent to the referral agreement, and their agreement that my law firm would receive 40% of the total attorney's fee and that Sheridan & Murray would receive 60% of the total attorney's fee.   Like my law firm's original two employment contracts with James and Kay Burgess and Mr. Sheridan's two employment contracts with James and Kay Burgess, these two Consents to Refer were accepted and fully executed in the Eastern District of Texas.  These Consents to Refer have never been terminated or disavowed by any party to them.

50.     James and Kay Burgess's Consents to Refer, each of which affirmed my law firm's right to 40% of the total attorney's fee, were sent to Mr. Sheridan along with his executed employment contracts in September of 2014.  Until the Plaintiffs' Complaint for Declaratory Relief was filed against me in 2019, Mr. Sheridan never suggested that these Consents to Refer did not accurately reflect our original referral agreement after he received them.

51.     The Consents to Refer that I provided to Mr. Sheridan for each client, and which provided for my law firm to receive 40% of the total attorney's fee, is a document which I am required under the Texas Disciplinary Rules of Professional Conduct to have my clients execute before referring them to another attorney.  I expected these Consents to Refer to be governed by the Texas Disciplinary Rules of Professional Conduct and Texas law.

52.     The referral agreement that Mr. Sheridan and I entered into on September 10, 2014, did not include a choice of law or forum selection provision and Mr. Sheridan did not raise either of those issues with me during our negotiations.  I expected the six written contracts or agreements (Exhibits A, F, and G), which addressed the attorney's fee and their division between the law firms and the clients, would be governed by Texas law and that any legal dispute over their interpretation or enforceability would be decided in a Texas forum.

53.     In referring James and Kay Burgess to Mr. Sheridan, I made the choice not to appear *pro hac vice* and file their lawsuit in a federal or state court in Pennsylvania.  I made that decision because I was heavily involved at that time in some toxic tort litigation in the Eastern District of Texas and I did not want to undertake the responsibility of familiarizing myself with Pennsylvania law or performing all of the other requirements for properly providing legal services in Pennsylvania.

54.     When I referred James and Kay Burgess to Mr. Sheridan, I anticipated that Mr. Sheridan would probably file their lawsuit against a number of potential defendants including Clark Electrical Contractors, Inc.  I did not, however, know the identity of most of these defendants or the legal theories of liability under Pennsylvania law that Mr. Sheridan might allege against them.

55.     Mr. Sheridan eventually filed a lawsuit on behalf of James and Kay Burgess.  Mr. Sheridan did not consult with me as to where the lawsuit would be filed[4] or who would be named as defendants in the lawsuit.  Only recently have I learned that Mr. Sheridan actually filed two lawsuits on behalf of James and Kay Burgess,[5] although I do not understand why the second lawsuit was filed.   Other than identifying Clark Electrical Contractors, Inc. as a potential defendant, I did not offer any advice or attempt to exercise any control over who should be named as a defendant in the lawsuit or where the lawsuit should be filed.

56.  Neither I, my law firm, nor any attorney employed by my law firm was ever listed as counsel for James and Kay Burgess in either lawsuit that Mr. Sheridan and his law firm filed on behalf of James and Kay Burgess in Pennsylvania.

57.     Neither I nor any attorney employed by my law firm ever appeared before any court or participated in any legal proceedings in either lawsuit that Mr. Sheridan and his law firm filed on behalf of James and Kay Burgess.

58.     Neither I nor any member of my law firm ever traveled to or performed any legal services in Pennsylvania in furtherance of either lawsuit that Mr. Sheridan and his law firm filed on behalf of James and Kay Burgess.

59.     On the afternoon of February 7, 2018, Mr. Sheridan called me at my office in Tyler, Texas.  I had just returned to my office that afternoon, after being out of town on business for two days.  I was catching up on work when we spoke that afternoon.  Mr. Sheridan gave me a brief and

---

[4] Most of the companies that were named in the lawsuit appear to be incorporated outside of Pennsylvania.
[5] *See No. 1412-01813; James Burgess, et al. v. Clark Electrical Contractors, Inc., et al.*, Court of Common Pleas, Philadelphia County, PA; and *No. 1412-01798; James Burgess, et al. v. Patterson-UTI, et al.*, Court of Common Pleas, Philadelphia County, PA.

pessimistic status report on the lawsuit he had filed.  He then told me the lawsuit would require a great deal of more time and expense if it was to go forward.  He told me that the attorneys that he was working with had requested that he call me to ask if I would reduce my 40% referral fee so that James and Kay Burgess would continue to have an economically viable lawsuit for them to pursue.  He asked me if I would agree to cap my law firm's fee at 40% of the attorney's fee recovered against Clark Electrical Contractors, Inc.  I agreed to Mr. Sheridan's request, and I told him that I would be happy to do anything else that I could to help James and Kay Burgess get a settlement in their case.  This telephone conference on February 7, 2018, lasted less than ten minutes.

60.     There was no discussion in that telephone conference on February 7, 2018, about the accuracy of the referral agreement described in Mr. Sheridan's letter to me of September 11, 2014, (Exhibit D) and in his email of that same day (Exhibit E).  If Mr. Sheridan had suggested in that telephone conference that his letter and email of September 11, 2014 did not accurately reflect our referral agreement, I would have strongly objected and contradicted him.  If Mr. Sheridan had suggested in that telephone conference that I had originally agreed that my law firm would only receive 40% of the attorney fees recovered from only one of many defendants, I would have strongly objected and contradicted him.  More importantly, I would not have agreed to change our referral agreement based on any suggestion that there was a misunderstanding as to our original referral agreement.  I only agreed to change our referral agreement because Mr. Sheridan represented to me that a change was necessary for James and Kay Burgess to continue to have an economically viable lawsuit.  I would not have agreed to change our referral agreement because Mr. Sheridan now thought that this change would be a more appropriate division between our law firms of the attorney's fee.

61.     Several hours after my telephone conference with Mr. Sheridan on February 7, 2018, I received a lengthy email from Mr. Sheridan (Exhibit H) that essentially asked me to confirm that my law firm's referral fee would now be capped at 40% of the attorney's fee recovered from Clark Electrical Contractors, Inc. for a maximum referral fee of $320,000.00. I was working late that night, but I took time to briefly read Mr. Sheridan's email. I did not agree with all of the statements made by Mr. Sheridan in that email or understand why they were included. Nonetheless, the email correctly stated that I had agreed to a maximum referral fee of $320,000.00, so I confirmed the email for Mr. Sheridan at 8:40 p.m. that night and wished him "good luck" in helping James and Kay Burgess.

62.     Approximately eight months later, in October of 2018, Mr. Sheridan and his law firm reportedly settled James and Kay Burgess's claims for $44,000,000.00.[6]

63.     I have since learned that Mr. Sheridan personally came to Texas and engaged in a course of conduct in Texas that kept me as uninformed as possible about the lawsuit he had filed for James and Kay Burgess. For example, Mr. Sheridan came to Tyler, Texas, and met with James and Kay Burgess at the hospital a few blocks from my office without ever informing me. Mr. Sheridan also had some of his retained expert witnesses in Pennsylvania travel to Tyler, Texas, to meet with James and Kay Burgess at that hospital without ever informing me. Based upon information and belief, he or members of his law firm also participated in depositions in Texas in

---

[6] *See* Paragraph No. 22 of Plaintiffs' Complaint for Declaratory Relief confirming that a global settlement was reached in October of 2018 and the attached page from the Sheridan & Murray website announcing that "[a] $44,000,000 settlement was successfully negotiated with five (5) companies on behalf of our clients, James and Kay Sharon Burgess" (Exhibit I). Since the original Declaration of Randell C. Roberts was filed on April 15, 2019, Plaintiffs have amended their Complaint to change their account of when the global settlement was reached. They now contend that they "reached a global settlement in November of 2018" in an apparent effort to explain why they did not disclose the settlement to me when I inquired about it on November 14, 2018 (Exhibit J). *See* Paragraph No. 29 of Plaintiffs' First Amended Complaint for Declaratory Relief.

the lawsuit filed on behalf of James and Kay Burgess. I only learned of Mr. Sheridan's activities
in Texas after the lawsuit was settled.

64.    Contrary to the implied representations of Sheridan and Murray, LLC and Thomas
W. Sheridan to the Court,[7] Mr. Sheridan did not call and inform me of the settlement. As reflected
in the attached emails (Exhibit J), Mr. Sheridan sent me an email on November 14, 2018, which
asked what my costs were in the Burgess case so he could "protect them." I emailed him back that
day and asked, "Have you settled?" Mr. Sheridan responded by email stating "Not yet."
Moreover, Mr. Sheridan did not call and inform me of the settlement after he had reported it in the
media on November 27, 2018 (Exhibit K). I learned about the settlement on December 18, 2018,
when Mr. Sheridan called me to ask me some questions about a second personal injury client that
I had recently referred to him.[8]   At the conclusion of that telephone conference about another
client, I asked Mr. Sheridan how the lawsuit that he had filed on behalf of James and Kay Burgess
was going and if he had made any progress in getting it settled. He told me that he had gotten the
case settled and that he was now working on the workers' compensation insurance lien, but he did
not volunteer the amount of the settlement. I then asked him if James and Kay Burgess were going
to come out alright in the settlement, and he assured me that they would be well taken care of by
the settlement. He once again declined to volunteer the amount of the settlement to me. I then
pointedly asked Mr. Sheridan for the amount of the settlement, to which he responded "$44 million
dollars." After I had Mr. Sheridan repeat the amount of the settlement, our conversation ended in
less than a minute. There were no discussions during that telephone conference about how much

---

[7] *See* Paragraph No. 23 of Plaintiffs' Complaint for Declaratory Relief [Docket No. 1].
[8] This second personal injury client is a Texas resident who had a potential products liability claim against a
manufacturer based in Pennsylvania. I referred this client to Mr. Sheridan in November of 2018. This client is the
only other client I have ever referred or will ever refer to Mr. Sheridan or his law firm.

Mr. Sheridan's law firm would pay my law firm, although I was well aware of the change in the referral agreement that Mr. Sheridan had asked my law firm to make on February 7, 2018, to help James and Kay Burgess continue to have an economically viable lawsuit.

65.     Sheridan and Murray, LLC has since posted the following announcement on their website: "A $44,000,00 settlement was successfully negotiated with five (5) companies on behalf of our clients, James and Kay Sharon Burgess."  (Exhibit I).

66.     Contrary to the express representations of Sheridan and Murray, LLC and Thomas W. Sheridan to the Court,[9] I did not wait until days after learning of the global settlement to express my concerns about whether my law firm was being treated fairly in this situation.  As soon as I arrived at my office the next morning, December 19, 2018, I called Mr. Sheridan and told him that I did not think that my law firm was being treated fairly in the contemplated division of the attorney's fee earned in the Burgess case.  I specifically told him that I was concerned about the circumstances promptly him to call me on February 7, 2018, and his request that my law firm forego most of its attorney's fee to help James and Kay Burgess continue to have an economically viable lawsuit for him to pursue.[10]  Mr. Sheridan told me in that telephone conference on December 19, 2018, that he would think about what I had said and that we "would revisit the issue."

67.     After I concluded my telephone conference with Mr. Sheridan on December 19, 2018, I convened a meeting in my office with the members of my law firm who had started working on James and Kay Burgess's case in the spring of 2013.  I informed them of the settlement and the change in the referral fee agreement, which I had confirmed by email to Mr. Sheridan on February 7, 2018, (Exhibit H at Roberts_000030 – Roberts_000031).  I then forwarded that email to those

---

[9] *See* Paragraph Nos. 24 and 34 of Plaintiffs' Complaint for Declaratory Relief [Docket No. 1].
[10] *See* Exhibit L at Roberts_000043.

members of my firm.  Later that day a member of my staff brought to my attention that this email contained a thread of emails exchanged between Mr. Sheridan and his partner, Neil Murray (Exhibit H at Roberts_000031 – Roberts_000034).  It did not appear that this thread of emails exchanged between Mr. Sheridan and Mr. Murray were intended to be shared with me.  In that thread, Mr. Sheridan asked Mr. Murray to review the email that he was drafting to send to me to confirm the change in our referral agreement.  Mr. Sheridan wrote in his email to Mr. Murray: "I want to nail this down ASAP."  (*See* Exhibit H at Roberts_000033).  The urgency with which Mr. Sheridan wanted to confirm the change in our referral agreement, was not consistent with the gloomy prospects for the lawsuit that he was still willing to undertake after we changed our referral agreement.

68.     After waiting two weeks to hear back from Mr. Sheridan, I sent him a letter on January 4, 2019 (Exhibit L).  In that letter I reminded Mr. Sheridan of his telephone call on February 7, 2018, in which he "requested that my law firm forego most of its attorney's fee to help James and Kay [Burgess] continue to have an economically viable lawsuit" for him to pursue.  In addition, I specifically asked Mr. Sheridan:

> "What did you know when you called on February 7, 2018, and requested that my firm forego most of its attorney's fee so that you would still have an economically viable lawsuit to pursue for James and Kay Burgess?  More specifically, did you fully and fairly disclose all important information about their case to me before

requesting that I change our original agreement that my firm would

be paid 40% of the gross attorney's fee?"[11]

69.     Mr. Sheridan responded by letter dated January 9, 2019 (Exhibit M).  At no point

in Mr. Sheridan's three-page letter did he actually deny that we had changed our agreement on

February 7, 2018, at his request and based upon his representations to me.  Instead, he assured me

in his letter me that his dealings with me "were totally above-board and in no way an attempt to

mislead you."  He wrote in justification of changing our agreement that he "was about to embark

upon an undertaking which required the commitment of all the financial and human resources of

my firm."  He then described in his letter the challenges that he was facing on February 7, 2018,

when "we unequivocally agreed to a referral fee limited to $320,000.00 on the claim against Clark

Electric."  He even attached a letter from the underlying Burgess case that described the large

amount of work and expense that he was purportedly undertaking to justify our changing our

referral agreement on February 7, 2018.[12]  In addition, Mr. Sheridan reminded me in his letter that

I was "delighted to agree" to a $320,000.00 referral fee in our telephone conference on February

7, 2018.  As I anticipated, Mr. Sheridan also contended in that letter that, when our email exchange

occurred on February 7, 2018 (Exhibit H), we unequivocally agreed to change our referral fee

agreement to limit my firm's fee to $320,000,00.[13]  Mr. Sheridan never suggested in that letter that

his email of September 11, 2014 (Exhibit D), his accompanying letter of September 11, 2014

(Exhibit E), or the Consents to Refer executed by James and Kay Burgess (Exhibit G), all of which

---

[11] Exhibit L at Roberts_000044.
[12] Exhibit M at Roberts_000059 – Roberts_000063.
[13] Exhibit M at Roberts_000057 ("On February 7, 2018, when our email exchange occurred and we unequivocally agreed to a referral fee limited to $320,000.00 on the claim against Clark Electric, . . . .").

reflected that my law firm was to be paid 40% of the gross or total attorney's fee, were mistakenly drafted and incorrectly reflected our original agreement.

70.     My letter of January 4, 2019 also stated:

> "It is my sincere desire to resolve my concerns in a prompt, professional, and amicable manner.  If we cannot resolve my concerns between ourselves, it is my understanding that your Rules of Professional Conduct admonish you to conscientiously consider submitting this matter to the arbitration or mediation procedures established by our bar associations and I am amenable to that process."[14]

Nonetheless, Mr. Sheridan's counsel served me with his Complaint for Declaratory Relief on February 1, 2019.

71.     When I reviewed the Complaint for Declaratory Relief, I immediately noticed that Mr. Sheridan had changed his account of what had occurred on February 7, 2018.  Mr. Sheridan was no longer contending that we agreed in our communications on February 7, 2018, to change our original referral fee agreement made on September 10, 2014.  Mr. Sheridan is now contending that the referral agreement made on September 10, 2014, always limited my referral fee to only 40% of the attorney's fee recovered from only one defendant,[15] and that he had only called me four years later on February 7, 2018, to confirm that understanding.[16]  More specifically, Mr. Sheridan is now contending in his Complaint for Declaratory Relief that he simply called me on

---

[14] Exhibit L at Roberts_000045.
[15] *See* Paragraph Nos. 14 and 15 of Plaintiffs' Complaint for Declaratory Relief [Docket No. 1].
[16] *See* Paragraph Nos. 16-20 of Plaintiffs' Complaint for Declaratory Relief [Docket No. 1].

February 7, 2018, to confirm that I understood that he "mistakenly and incorrectly"[17] drafted his letter of September 11, 2014, to state that my law firm would be paid "forty percent (40%) of the gross attorney's fee." Mr. Sheridan is no longer contending that in his telephone call to me on February 7, 2018, that he had been "totally above-board" with me, that he had in no way attempted to "mislead" me, that he was justified in changing our agreement because he "was about to embark upon an undertaking which required the commitment of all the financial and human resources" of his firm, or that he needed to change our agreement because he was facing enormous challenges in going forward with the lawsuit. I can only assume that Mr. Sheridan changed his account of what occurred on February 7, 2018, to shift this Court's focus away from what he knew on February 7, 2018, and to what was said in our telephone conference on September 10, 2014.

72.    In reviewing Mr. Sheridan's Complaint for Declaratory Relief, I also noticed that Mr. Sheridan omitted an email that was intertwined with the other emails and letter that he attached to his Complaint for Declaratory Relief. The Complaint alleges that his letter of September 11, 2014, which stated that my law firm would be paid forty percent (40%) of the gross attorney's fee, was "mistakenly and incorrectly" drafted and that he never signed that letter.[18] Mr. Sheridan's Complaint omitted Mr. Sheridan's email (Exhibit D), which accompanied his letter of September 11, 2014, and which stated: "I have attached a letter to you acknowledging your referral of these matters to me and my firm and our commitment to pay a 40% referral fee." This email confirms that Mr. Sheridan was aware of the contents of that letter, which states that he was agreeing to pay a 40% referral fee, and that he was paying that referral fee on more than one matter.

---

[17] *See* Paragraph No. 15 of Plaintiffs' Complaint for Declaratory Relief [Docket No. 1].
[18] *See* Paragraph Nos. 15 and 16 of Plaintiffs' Complaint for Declaratory Relief [Docket No. 1].

73.     Mr. Sheridan's contemporaneous letter of September 11, 2014 (Exhibit E), his accompanying contemporaneous email of September 11, 2014 (Exhibit D), and the Consents to Refer (Exhibit G), which were also contemporaneously executed by James and Kay Burgess, correctly reflect that on September 10, 2014, Mr. Sheridan agreed that my law firm would be paid "forty percent (40%) of the gross attorney's fee recovered by Sheridan and Murray for its representation of both Mr. and Mrs. Burgess."     These three documents, which were all contemporaneously drafted in 2014 and long before the settlement in 2018, were not "mistakenly and incorrectly" drafted.

74.     When I wrote to Mr. Sheridan on January 4, 2019 (Exhibit L) to express my concerns, I asked Mr. Sheridan to comply with Rule 1.15 of the Pennsylvania Rules of Professional Conduct by placing 40% of the gross attorney fees in escrow until the appropriate division of the attorney fees between our law firms was resolved.   I do not know whether Mr. Sheridan has complied with my request, and if so, to what extent.   We did not agree that these attorney fees would be placed in an escrow account located in Pennsylvania, and to the extent he deposited these funds into an escrow account in Pennsylvania, he did so unilaterally.

75.     In summary, Mr. Sheridan and I agreed on September 10, 2014, that my law firm would be paid 40% of the gross attorney's fee recovered by Sheridan and Murray through its representation of James and Kay Burgess.   This original referral agreement was reduced to writing in his email of September 11, 2014 (Exhibit D), his letter of September 11, 2014 (Exhibit E), and each of the two Consents to Refer executed by James and Kay Burgess on September 16, 2014 (Exhibit G).   Based upon Mr. Sheridan's representations to me in his telephone call on February 7, 2018, I agreed to change our original referral agreement of September 10, 2014, to help James and Kay Burgess continue to have an economically viable lawsuit.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 1,  2019.

RANDELL C. ROBERTS

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

SHERIDAN AND MURRAY, LLC and
THOMAS W. SHERIDAN,

                    Plaintiffs,

          v.

ROBERTS AND ROBERTS, and
RANDELL C. ROBERTS,

                    Defendants.

Civil Action No. 19-467 (RBS)

### DEFENDANTS' EXHIBIT LIST
### IN SUPPORT OF DEFENDANTS'
### AMENDED MOTION TO DISMISS FOR LACK OF PERSONAL
### JURISDICTION OR, IN THE ALTERNATIVE,
### <u>MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF TEXAS</u>

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| A | Contracts for Legal Services entered into by James and Kay Burgess and Roberts & Roberts in Texas on January 31 and March 19, 2013 respectively. |
| B | Sheridan's follow-up email to Roberts on November 15, 2013, after they had met at the seminar in Napa, California, and which invited Roberts to "call to discuss the case." |
| C | Sheridan's email to Roberts on February 7, 2014 stating that Sheridan would like to investigate the case further. |
| D | Sheridan's email to Roberts on September 11, 2014, which followed up on his telephone conference with Roberts the preceding day, and which attached Sheridan's letter of September 11, 2014 and his law firm's contracts for James and Kay Burgess to sign in Texas, and which also confirmed the 40% referral fee as described in Sheridan's accompanying letter. |

| E | Sheridan's letter of September 11, 2014, which confirmed that his law firm would pay Roberts "a referral fee in the amount of forty percent (40%) of the gross attorney's fee recovered by Sheridan and Murray for its representation of both Mr. & Mrs. Burgess." |
|---|---|
| F | Sheridan and Murray, LLC's Standard Engagement Agreements and Powers of Attorney executed by James Burgess and Kay Burgess in Texas on September 16, 2014. |
| G | Consents to Refer executed by James and Kay Burgess in Texas on September 16, 2014, which confirmed their understanding and agreement that Roberts & Roberts would be paid 40% of the total attorney's fee. |
| H | Sheridan's email to Roberts on February 7, 2018, which was sent after Sheridan's call to Roberts earlier that afternoon, and which included an email thread between Sheridan and his partner in which Sheridan stated that he wanted to "nail this down ASAP" with Roberts. |
| I | Sheridan and Murray, LLC's announcement on its website: "A $44,000,00 settlement was successfully negotiated with five (5) companies on behalf of our clients, James and Kay Sharon Burgess." |
| J | Sheridan's email to Roberts on November 14, 2018, in which Sheridan advised Roberts that they had "not yet settled" the Burgess case. |
| K | Media report on Law.com dated November 27, 2018 reporting that Sheridan had obtained a $44,000,000 settlement for James and Kay Burgess. |
| L | Roberts' letter of January 4, 2019 (with accompanying attachments) to Sheridan |
| M | Sheridan's letter of January 9, 2019 (with accompanying attachments), which responded to Roberts' letter of January 4, 2019 |

# EXHIBIT A

## CONTRACT FOR LEGAL SERVICES

I hereby employ **ROBERTS & ROBERTS** ("the law firm") to represent me in a claim for damages arising out of an occurrence on or about ___12-14-2012___ as provided in this contract.

1.  **Attorney's Fee:** I hereby assign, convey, and transfer to the law firm a percentage of the total recovery on this claim (or its present value), before any offset, to pay for the law firm's time devoted to prosecuting this claim. This percentage shall be 33.33% if the recovery is obtained before a lawsuit is filed, 40% if the recovery is obtained after a lawsuit is filed, and 45% if the recovery is obtained after a notice of appeal is filed. *If there is no recovery, however, it is agreed that I will not be obligated to pay the law firm for its time devoted to prosecuting this claim.*

2.  **Legal Expenses:** I authorize the law firm to incur all reasonable expenses necessary for the prosecution of this claim and to pay these expenses out of my portion of the recovery on this claim, after payment of the attorney's fee. It is understood that these expenses include the cost of court filing fees, subpoenas, depositions, computer research, demonstrative evidence, exhibits, records, reports, transportation, lodging, and the service of other professionals including expert witnesses, consultants, engineers, investigators, property adjusters, medical record reviewers, researchers, court reporters, videographers, photographers, mediators, record retrieval and lien resolution services as well as office expenses directly related to the prosecution of the claim including the cost of long distance telephone calls, document reproduction and delivery. To the extent that other persons have claims as a result of this occurrence, I also authorize the law firm to pay out of my portion of the recovery my proportionate share of the common expenses. Moreover, I authorize the law firm to borrow the funds to pay all authorized legal expenses and advances as they are incurred and to treat the interest on such loans as a legal expense. *If there is no recovery, however, it is agreed that I will not be obligated to pay these expenses.*

3.  **Property Adjusting Service:** With respect to any property damage claim which is resolved without filing a lawsuit, it is agreed that the law firm will only charge a property adjusting fee of $250.00 instead of a percentage of the total recovery on this claim. This property adjusting fee will be treated as a legal expense and paid out of my portion of the recovery on the bodily injury claim. If a lawsuit is filed, however, it is agreed that the law firm will be paid a percentage of the total recovery on the property damage claim (instead of the property adjusting fee) and reimbursed for its legal expenses as provided for in this contract.

4.  **Health Care Expenses:** I understand that all related health care expenses, if any, will be paid out of my portion of the recovery after payment of the legal expenses and attorney's fee. In this regard, I authorize the law firm to assure the health care providers that their related charges will be paid out of my recovery and I authorize such payments to be made out of my recovery.

5.  **Subrogation:** I understand that if I am obligated to reimburse out of the recovery on this claim any health insurance plan, disability insurance plan, or government program (including Medicaid and Medicare) for benefits paid as a result of this occurrence, it will be reimbursed out of my portion of the recovery after payment of the legal expenses and the attorney's fee.

**ROBERTS_000001**

6.   **Association of Counsel and Division of Attorney Fees:**

(a) I was referred to the law firm by _____
("the associating attorney") to prosecute my claim. I understand that the law firm and the associating attorney will be assuming joint responsibility for the prosecution of my claim. If a recovery is made on my behalf, the total attorney's fees will be divided between them, based on their assumption of joint responsibility, as follows: 66.66% will be paid to the law firm and 33.33% will be paid to the associating attorney. My signature at the bottom of this contract indicates my understanding and consent to this association and division of the attorney fees. *It is agreed, however, that this will not increase the total attorney fees to be paid out of any recovery on this claim.*

(b) I agree that the law firm may associate additional attorneys to assist in prosecuting this claim. *It is agreed, however, that the association of additional attorneys will not increase the total attorney fees to be paid out of any recovery on this claim.*

7.   **Multiple Representation:** I request that the law firm represent all clients signing this or a similar contract with the law firm as a result of this occurrence. I understand the possible problems involved in the law firm representing multiple clients who may have differing interests (such as how any settlement money should be allocated among the clients). I realize that the law firm must act impartially as to all of us and that it cannot serve as an advocate for one of us against any of the others. I am willing to make independent decisions without the law firm's advice to resolve issues that arise among us. This includes deciding how money is to be allocated among us without any advice from the law firm. Knowing the possible conflict of interest, I consent to this multiple representation and I request that the law firm represent all of us.

8.   **Special Power of Attorney:** It is agreed that my claim will not be settled without my consent. I do, however, authorize the law firm to endorse my name to all settlement as well as benefit checks and to deposit them in a trust account to expedite disbursement of these funds in a timely manner. Moreover, I authorize the law firm to endorse my name to all authorizations required for the release of information related to my claim.

9.   **Termination:** It is agreed that this contract terminates upon the effectuation of a complete settlement of this claim, the entry of a final judgment by a trial court denying any recovery on this claim, or by mutual agreement. This contract may also be unilaterally terminated by me for good cause. Similarly, it may also be unilaterally terminated by the law firm if it becomes uneconomical for the law firm to prosecute this claim, if I fail to always provide the law firm with my current contact information, or for other good cause.

10.   **Date:** This contract for legal services is entered into on ___*01 - 31 - 2013*___ .

NAME: *James Richard Burgen*
By *Kay Burgen*

NAME: _____

**ACCEPTED:**
**ROBERTS & ROBERTS**

BY: _____

## CONTRACT FOR LEGAL SERVICES

*James Richard Burgess*

I hereby employ **ROBERTS & ROBERTS** ("the law firm") to represent me in a claim for damages arising out of an occurrence on or about ____*12-14-2012*____ as provided in this contract.

1. **Attorney's Fee:** I hereby assign, convey, and transfer to the law firm a percentage of the total recovery on this claim (or its present value), before any offset, to pay for the law firm's time devoted to prosecuting this claim. This percentage shall be 33.33% if the recovery is obtained before a lawsuit is filed, 40% if the recovery is obtained after a lawsuit is filed, and 45% if the recovery is obtained after a notice of appeal is filed. *If there is no recovery, however, it is agreed that I will not be obligated to pay the law firm for its time devoted to prosecuting this claim.*

2. **Legal Expenses:** I authorize the law firm to incur all reasonable expenses necessary for the prosecution of this claim and to pay these expenses out of my portion of the recovery on this claim, after payment of the attorney's fee. It is understood that these expenses include the cost of court filing fees, subpoenas, depositions, computer research, demonstrative evidence, exhibits, records, reports, transportation, lodging, and the service of other professionals including expert witnesses, consultants, engineers, investigators, property adjusters, medical record reviewers, researchers, court reporters, videographers, photographers, mediators, record retrieval and lien resolution services as well as office expenses directly related to the prosecution of the claim including the cost of long distance telephone calls, document reproduction and delivery. To the extent that other persons have claims as a result of this occurrence, I also authorize the law firm to pay out of my portion of the recovery my proportionate share of the common expenses. Moreover, I authorize the law firm to borrow the funds to pay all authorized legal expenses and advances as they are incurred and to treat the interest on such loans as a legal expense. *If there is no recovery, however, it is agreed that I will not be obligated to pay these expenses.*

3. **Property Adjusting Service:** With respect to any property damage claim which is resolved without filing a lawsuit, it is agreed that the law firm will only charge a property adjusting fee of $250.00 instead of a percentage of the total recovery on this claim. This property adjusting fee will be treated as a legal expense and paid out of my portion of the recovery on the bodily injury claim. If a lawsuit is filed, however, it is agreed that the law firm will be paid a percentage of the total recovery on the property damage claim (instead of the property adjusting fee) and reimbursed for its legal expenses as provided for in this contract.

4. **Health Care Expenses:** I understand that all related health care expenses, if any, will be paid out of my portion of the recovery after payment of the legal expenses and attorney's fee. In this regard, I authorize the law firm to assure the health care providers that their related charges will be paid out of my recovery and I authorize such payments to be made out of my recovery.

5. **Subrogation:** I understand that if I am obligated to reimburse out of the recovery on this claim any health insurance plan, disability insurance plan, or government program (including Medicaid and Medicare) for benefits paid as a result of this occurrence, it will be reimbursed out of my portion of the recovery after payment of the legal expenses and the attorney's fee.

6.   **Association of Counsel and Division of Attorney Fees:**

     (a) I was referred to the law firm by _____ ("the associating attorney") to prosecute my claim. I understand that the law firm and the associating attorney will be assuming joint responsibility for the prosecution of my claim. If a recovery is made on my behalf, the total attorney's fees will be divided between them, based on their assumption of joint responsibility, as follows: 66.66% will be paid to the law firm and 33.33% will be paid to the associating attorney. My signature at the bottom of this contract indicates my understanding and consent to this association and division of the attorney fees. *It is agreed, however, that this will not increase the total attorney fees to be paid out of any recovery on this claim.*

     (b) I agree that the law firm may associate additional attorneys to assist in prosecuting this claim. *It is agreed, however, that the association of additional attorneys will not increase the total attorney fees to be paid out of any recovery on this claim.*

7.   **Multiple Representation:** I request that the law firm represent all clients signing this or a similar contract with the law firm as a result of this occurrence. I understand the possible problems involved in the law firm representing multiple clients who may have differing interests (such as how any settlement money should be allocated among the clients). I realize that the law firm must act impartially as to all of us and that it cannot serve as an advocate for one of us against any of the others. I am willing to make independent decisions without the law firm's advice to resolve issues that arise among us. This includes deciding how money is to be allocated among us without any advice from the law firm. Knowing the possible conflict of interest, I consent to this multiple representation and I request that the law firm represent all of us.

8.   **Special Power of Attorney:** It is agreed that my claim will not be settled without my consent. I do, however, authorize the law firm to endorse my name to all settlement as well as benefit checks and to deposit them in a trust account to expedite disbursement of these funds in a timely manner. Moreover, I authorize the law firm to endorse my name to all authorizations required for the release of information related to my claim.

9.   **Termination:** It is agreed that this contract terminates upon the effectuation of a complete settlement of this claim, the entry of a final judgment by a trial court denying any recovery on this claim, or by mutual agreement. This contract may also be unilaterally terminated by me for good cause. Similarly, it may also be unilaterally terminated by the law firm if it becomes uneconomical for the law firm to prosecute this claim, if I fail to always provide the law firm with my current contact information, or for other good cause.

10.  **Date:** This contract for legal services is entered into on _____ 03 - 19 - 13 _____.

NAME: Ⓧ *Kay Burgin*

NAME: _____

ACCEPTED:
**ROBERTS & ROBERTS**

BY: _____

# EXHIBIT B

**From:** Sheridan, Thomas W. <tsheridan@sheridanandmurray.com>
**Sent:** Friday, November 15, 2013 1:18 PM
**To:** Randell (Randy) C. Roberts <randy@robertslawfirm.com>
**Subject:** Hello

Randy,

I hope all is well.

I enjoyed meeting you at the AHA seminar with Rodney in Napa.

I wanted to follow up with you regarding the Pennsylvania accident case that we discussed. I apologize for my delay in reaching out to you, but I just finished a trial here in Philadelphia.

Please give me a call to discuss the case or feel free to email me the information if you would like me to review.

Sincerely, Tom



**Thomas W. Sheridan**
*Trial Attorney*

tsheridan@sheridanandmurray.com
http://www.sheridanandmurray.com

**Sheridan & Murray, LLC**
1600 Market Street, 25th Floor
Philadelphia, PA 19103

tel: (215) 977-9500
fax: (215) 977-9800

# EXHIBIT C

**From:** Sheridan, Thomas W. <tsheridan@sheridanandmurray.com>
**Sent:** Friday, February 7, 2014 12:48 PM
**To:** Randell (Randy) C. Roberts <randy@robertslawfirm.com>
**Subject:** RE: James Burgess

Randy,
sorry for my delay in responding. I have been tied up all week in mediation in a false claims act qui tam case.
I would like to talk to you about this case some more and investigate it further.
Do you have time to talk when you return from visiting Rodney?
Please feel free to call me on my cell phone over the weekend if you wish to discuss anything regarding preparation for your work session with Rodney 215-704-7730
thanks,
Tom



**Thomas W. Sheridan**
*Trial Attorney*

tsheridan@sheridanandmurray.com
http://www.sheridanandmurray.com

**Sheridan & Murray, LLC**
1600 Market Street, 25th Floor
Philadelphia, PA 19103

tel: (215) 977-9500
fax: (215) 977-9800

**From:** Randell (Randy) C. Roberts [mailto:randy@robertslawfirm.com]
**Sent:** Tuesday, February 04, 2014 7:03 PM
**To:** Sheridan, Thomas W.
**Subject:** RE: James Burgess

Hi Jim,
    I know you are busy. Just let me know when you have concluded that there is nothing you can do at the current time to help Mr. Burgess. Thanks --- Randy

....Btw, I am heading out to consult with Rodney next week.

**Randell (Randy) C. Roberts**
Attorney at Law
118 W. Fourth St. Tyler, TX 75701
Ph: (903) 597-6655 | Fax: (903) 597-1600
Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization



**From:** Randell (Randy) C. Roberts
**Sent:** Friday, December 20, 2013 12:07 PM
**To:** 'Sheridan, Thomas W.'
**Subject:** RE: James Burgess

As promised, attached is the etrans of the depo of the employer's safety investigator. Have a Merry Christmas. --- Randy

**Randell (Randy) C. Roberts**
Attorney at Law
118 W. Fourth St. Tyler, TX 75701
Ph: (903) 597-6655 | Fax: (903) 597-1600
Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization



**From:** Randell (Randy) C. Roberts
**Sent:** Tuesday, December 10, 2013 10:37 AM
**To:** 'Sheridan, Thomas W.'
**Subject:** James Burgess

Tom,
    Attached are the reports from my investigator in Texas. I am still waiting on the transcript of the employer's investigator's deposition. --- Randy

**Randell (Randy) C. Roberts**
Attorney at Law
118 W. Fourth St. Tyler, TX 75701
Ph: (903) 597-6655 | Fax: (903) 597-1600
Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization



**From:** Molly R. Brady
**Sent:** Tuesday, December 10, 2013 10:34 AM

**To:** Randell (Randy) C. Roberts
**Subject:** James Burgess

CONFIDENTIALITY NOTICE: The messages contained in this email, including any and all accompanying attachments, are for the sole use of the intended recipient(s), are confidential, and may be privileged. If you have received this email in error, you are hereby notified that any use, dissemination, distribution, or reproduction of this transmission is prohibited. If you are not the intended recipient, please destroy all copies of the original transmission and contact the sender by calling 903-597-6655 immediately.

**ROBERTS_000008**

# EXHIBIT D

**Attachments:**     BURGESS -- S&M FEE AGREEMENT (JAMES).docx; BURGESS -- S&M FEE AGREEMENT (KAY SHARON).docx; BURGESS -- S&M REFERRAL LETTER (9.11.14).docx

**From:** Sheridan, Thomas W. <tsheridan@sheridanandmurray.com>
**Sent:** Thursday, September 11, 2014 5:24 PM
**To:** Randell (Randy) C. Roberts <randy@robertslawfirm.com>
**Subject:** FW: Burgess

Randy,

As a follow-up to our discussion yesterday, attached please find my firm's standard fee agreement for Mr. and Mrs. Burgess. Please let me know if you have any questions or concerns regarding any language in the proposed fee agreements. Also, I have attached a letter to you acknowledging your referral of these matters to me and my firm and our commitment to pay you a 40% referral fee.

If the fee agreements are satisfactory to you, I would appreciate it if you would have the clients execute them and return them to me so that we can expeditiously undertake their representation.

Again, I would like to thank you for your consideration of me in my firm to handle these important matters.

Please call me or email me with any questions or concerns.

Sincerely, Tom

---

## Sheridan & Murray LLC

**Thomas W. Sheridan**
*Trial Attorney*

tsheridan@sheridanandmurray.com
http://www.sheridanandmurray.com

**Sheridan & Murray, LLC**
**Mailing Address:**  424 South Bethlehem Pike, Third Floor
Fort Washington, PA 19034

**Philadelphia Office:**  1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

tel: (215) 977-9500
fax: (215) 977-9800

---

1

ROBERTS_000009



Sheridan
& Murray LLC
Protecting People

Thomas W. Sheridan
Direct Email: tsheridan@sheridanandmurray.com

Admitted to PA & NJ Bars

September 11, 2014

Randell C. Roberts, Esquire
Roberts & Roberts
118 West Fourth Street
Tyler, TX 75701

RE:   Referral:  James Richard Burgess
      Referral:  Kay Sharon Burgess, Wife
      160 VZ CR 2724
      Mabank, TX 75147

Dear Randy:

I am writing to acknowledge acceptance of your referral to our firm of Mr. and Mrs. Burgess.  This letter will also confirm that our firm will pay you a referral fee in the amount of forty percent (40%) of the gross attorney's fee recovered by Sheridan & Murray for its representation of both Mr. and Mrs. Burgess.

I sincerely appreciate the confidence you have demonstrated in me and my firm by referring us these matters.  Please feel free to contact me at any time for an update.  I would also appreciate it if you would send me the contents of your file and confirm the amount of costs expended by your firm to date on this matter.

Should you have any questions or wish to discuss this further, please do not hesitate to contact me.

Sincerely,

*Thomas W. Sheridan*

THOMAS W. SHERIDAN

TWS/kds

PH: 215.977.9500
FX: 215.977.9800

SheridanAndMurray.com

Mailing address | 424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia office | 1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

**ROBERTS_000010**

**SHERIDAN & MURRAY, LLC**
424 South Bethlehem Pike, Third Floor, Fort Washington, Pennsylvania 19034
(215) 977-9500 * Fax (215) 977-9800 * Toll Free (877) 699-7800

# STANDARD ENGAGEMENT AGREEMENT
## and
## POWER OF ATTORNEY

This is an attorney-client engagement agreement (the "**Agreement**") by and between **SHERIDAN & MURRAY, LLC** (the "**Attorneys**") and **JAMES RICHARD BURGESS** (the "**Client**").

## 1.  Scope and Purpose of Engagement

1.1.  Purpose of Engagement: The Client hereby retains the Attorneys to negotiate a settlement or to institute in the Client's name any legal proceedings or actions that in the Attorneys' judgment are necessary in connection with injuries and damages sustained by the Client on December 14, 2012 (the "**Claim**"), against any person, firm, corporation, or entity who may be responsible for the Claim.

1.2.  Limited Scope of Representation: This Agreement applies to all proceedings relating to the Claim up to and including verdict or decision at trial or arbitration.  If, in the discretion of the Attorneys, post-trial proceedings, including appeals, are warranted, they will not be covered by this Agreement and a new fee agreement will be required by the Attorneys.  It is expressly agreed and understood that the Attorneys will NOT be obligated to file any appeal from arbitration or trial relating to the Claim unless and until the Attorneys, at their sole discretion, determine that such an appeal is appropriate.  This Agreement does not obligate the Attorneys to represent the Client in resolving any "**Claims for Reimbursement**," as that term is defined in Paragraph 2.7 below.

1.3.  No Estate Administration: If an estate is/was raised by, or at the request of, the Attorneys, it will be/was done for the sole purpose of pursuing the Claim.  Under this Agreement, the Attorneys are pursuing damages for the Claim and they are not providing legal advice or service with regard to anything else involving the estate.  The Attorneys are not experts in estate administration and the Client should seek competent estate counsel to assist with the filings required by the county Surrogate, the preparation of estate tax returns, and the many other estate administration tasks.

1.4.  No Tax Advice: The Attorneys are not tax lawyers and they are not qualified to render advice regarding the tax implications of any cash award, settlement, or judgment.  It is recommended that the Client retain either a tax attorney or a certified public accountant following any monetary recovery.

## 2.  Terms of Engagement

2.1.  Duty to Not Discuss the Claim: The Client will not settle, adjust, or discuss the Claim (or any proceedings arising from it) with other people without the Attorneys' knowledge and consent.

2.2.  Duty to Cooperate: The Client will fully cooperate with the Attorneys in the prosecution of the Claim.  This includes, but is not limited to, being available for legal proceedings and

ROBERTS_000011

consultations with the Attorneys, and keeping the Attorneys informed as to the Client's mailing address, phone number, and current medical status.

2.3. <u>Warranty of Honesty</u>: The Client warrants that the information supplied during the course of this engagement is/will be true and accurate and has not been/will not be obtained through fraud or illegal activities.

2.4. <u>Power of Attorney</u>: The Client hereby gives the Attorneys a power of attorney to execute all documents connected with the Claim, including pleadings, contracts, commercial papers, settlement agreements, compromises and releases, verifications, dismissals, orders, settlement checks, and all other documents that the Client could properly execute in connection with a lawsuit.

2.5. <u>Potential Methods of Resolving the Claim</u>: The Attorneys may investigate or pursue numerous methods to resolve the Claim including settlement discussions, arbitration, mediation, and trial.

2.6. <u>Structured Settlement</u>: As one possible settlement option, the Attorneys may explore the possibility of a structured settlement through the use of deferred periodic payments.  If the Claim is settled through such structure, the Attorneys' fee and costs may be paid directly to the Attorneys from the insurance company, either in one lump sum payment at settlement, or, at the sole option of the Attorneys and/or insurance company, deferred into future payments.   However, in any event, the Attorneys' fee will be calculated in the percentage as set forth in Paragraph 3.2 based upon the cost of the structured settlement or present value of it in accordance with applicable law.

2.7. <u>Medical Bills, Liens, Subrogation, and Rights of Reimbursement</u>: The Client is responsible for all medical bills, liens, rights of subrogation, and rights of reimbursement (collectively "**Claims for Reimbursement**") asserted against the Client by any creditor that is not a party to the Claim.

2.8. <u>Unpredictable Results</u>: Legal matters are unpredictable and full of risk and hazard.  Because results in legal matters can never be guaranteed, neither this Agreement nor any conversation between the Attorneys and the Client constitutes a representation, warranty, or guarantee of results.

2.9. <u>Termination of Engagement by Attorneys</u>: The Attorneys may terminate work on the Claim at any stage upon prior notice to the Client, even after suit is filed.  The Attorneys may terminate work after a trial or an arbitration hearing and are not obligated to pursue this matter on appeal of any adverse verdict or decision from a trial or arbitration hearing.

2.10. <u>Time Period Necessary for Resolving the Claim</u>: Legal matters are procedurally complicated and they normally take, at a minimum, several years to resolve.

2.11. <u>File Retention</u>: The Attorneys retain their files for five (5) years after the matter is concluded and no notice will be given of its destruction.  Naturally, other arrangements with respect to the Client's file can be made upon request.

3. **Payment of Legal Fees and Costs**

3.1. <u>Contingency Agreement</u>: If no recovery is obtained on the Claim, the Attorneys will make no charge for their time, costs, or services.

3.2. <u>Attorneys' Fee</u>: The Client will pay the Attorneys a fee for services rendered from the total amount recovered, before payment of expenses as set forth in Paragraph 3.4, from any source on account of the Claim on the following basis:

40% of the gross sum realized from any source.

All medical expenses shall be paid from the balance remaining after payment of the "**<u>Law Firm's</u>**" fees.  I understand that my attorneys are not personally responsible to pay my medical bills.

3.3. <u>Additional Fee for Resolving Claims for Reimbursement</u>: If the Attorneys, in their sole discretion, decide to represent the Client in resolving any Claims for Reimbursement, the Attorneys will be entitled to an additional fee in the amount of thirty-three and one-third percent (33⅓%) of any reduction in the amount of the Claim(s) for Reimbursement.  The legal services provided for in this Paragraph 3.3 are additional to the legal services being provided in connection with the Claim.

3.4. <u>Reimbursement of Costs</u>: The Client will reimburse all costs incurred by the Attorneys in pursuit of the Claim out of the settlement or verdict amount, after deduction of attorneys' fees.  Costs include, but are not limited to, photocopies, fax charges, postage, notaries, long-distance telephone charges, mileage for attorneys and staff, investigation charges, photographs, court costs, Lexis research charges, medical records costs, police reports, deposition costs, expert fees, witness fees, stenographer costs, and video depositions fees.

3.5. <u>Reimbursement of Costs and Expenses After Retaining New Counsel</u>: If the Attorneys' representation of the Client terminates for any reason and the Client retains new counsel, the Attorneys will be entitled to full reimbursement of costs, disbursements, and expenses within thirty (30) days of when new counsel is retained.  The Attorneys will be entitled to a file retaining lien until either the Client or new counsel fully reimburses them for all costs, disbursements, and expenses.  Either the Client or new counsel will pay all costs of making a duplicate file to be transferred to new counsel.

3.6. <u>Payment of Attorneys' Fees and Costs After Termination of Engagement</u>: If the Attorneys' representation of the Client terminates for any reason, and the Client then recovers money in connection with the Claim, the Client will reimburse the Attorneys for all costs in accordance with Paragraph 3.4 and will pay the Attorneys their full fee pursuant to the schedule set forth in Paragraph 3.2.  The Attorneys will be entitled to an attorneys' charging lien against any proceeds resulting from the Claim.

3.7. <u>Referral Fees</u>: If the Client was referred to the Attorneys by another lawyer, the Attorneys may divide their fee with the referring lawyer.  This will not change the amount of money the Client receives from any settlement, award, or verdict reached on the Claim.  The Client hereby agrees to any appropriate fee sharing.

## 4.  Review and Receipt of Engagement Agreement

4.1. <u>Review of Agreement</u>: I have carefully read and I understand this Engagement Agreement and Power of Attorney, I have had a full and complete opportunity to ask the Attorneys, or any other lawyer of my choice, any questions about this Agreement, and I am proceeding in retaining the Attorneys fully aware of all obligations.

**ROBERTS_000013**

4.2.   <u>Receipt of Duplicate Copy</u>: I acknowledge receipt of a duplicate copy of this Agreement at the time of signing.

NAME: _____        ___**JAMES RICHARD BURGESS**___
                     (SIGNATURE)                                        (PRINT)

ADDRESS: ___160 VZ CR 2724, Mabank, Texas 75147_____

TELEPHONE NUMBER: _____        DATED: _____

Engagement Agreement Page 4 of 4

**ROBERTS_000014**

**SHERIDAN & MURRAY, LLC**
424 South Bethlehem Pike, Third Floor, Fort Washington, Pennsylvania 19034
(215) 977-9500 * Fax (215) 977-9800 * Toll Free (877) 699-7800

# STANDARD ENGAGEMENT AGREEMENT
# and
# POWER OF ATTORNEY

This is an attorney-client engagement agreement (the "<u>**Agreement**</u>") by and between **SHERIDAN & MURRAY, LLC** (the "<u>**Attorneys**</u>") and **KAY SHARON BURGESS** (the "<u>**Client**</u>").

## 1. Scope and Purpose of Engagement

    1.1. <u>Purpose of Engagement</u>: The Client hereby retains the Attorneys to negotiate a settlement or to institute in the Client's name any legal proceedings or actions that in the Attorneys' judgment are necessary in connection with damages for any and all claims arising as a result of injuries sustained by her Husband, **JAMES RICHARD BURGESS**, on December 14, 2012 (the "<u>**Claim**</u>"), against any person, firm, corporation, or entity who may be responsible for the Claim.

    1.2. <u>Limited Scope of Representation</u>: This Agreement applies to all proceedings relating to the Claim up to and including verdict or decision at trial or arbitration.  If, in the discretion of the Attorneys, post-trial proceedings, including appeals, are warranted, they will not be covered by this Agreement and a new fee agreement will be required by the Attorneys.  It is expressly agreed and understood that the Attorneys will NOT be obligated to file any appeal from arbitration or trial relating to the Claim unless and until the Attorneys, at their sole discretion, determine that such an appeal is appropriate.  This Agreement does not obligate the Attorneys to represent the Client in resolving any "<u>**Claims for Reimbursement**</u>," as that term is defined in Paragraph 2.7 below.

    1.3. <u>No Estate Administration</u>: If an estate is/was raised by, or at the request of, the Attorneys, it will be/was done for the sole purpose of pursuing the Claim.  Under this Agreement, the Attorneys are pursuing damages for the Claim and they are not providing legal advice or service with regard to anything else involving the estate.  The Attorneys are not experts in estate administration and the Client should seek competent estate counsel to assist with the filings required by the county Surrogate, the preparation of estate tax returns, and the many other estate administration tasks.

    1.4. <u>No Tax Advice</u>: The Attorneys are not tax lawyers and they are not qualified to render advice regarding the tax implications of any cash award, settlement, or judgment.  It is recommended that the Client retain either a tax attorney or a certified public accountant following any monetary recovery.

## 2. Terms of Engagement

    2.1. <u>Duty to Not Discuss the Claim</u>: The Client will not settle, adjust, or discuss the Claim (or any proceedings arising from it) with other people without the Attorneys' knowledge and consent.

    2.2. <u>Duty to Cooperate</u>: The Client will fully cooperate with the Attorneys in the prosecution of the Claim.  This includes, but is not limited to, being available for legal proceedings and

ROBERTS_000015

consultations with the Attorneys, and keeping the Attorneys informed as to the Client's mailing address, phone number, and current medical status.

2.3.  Warranty of Honesty: The Client warrants that the information supplied during the course of this engagement is/will be true and accurate and has not been/will not be obtained through fraud or illegal activities.

2.4.  Power of Attorney: The Client hereby gives the Attorneys a power of attorney to execute all documents connected with the Claim, including pleadings, contracts, commercial papers, settlement agreements, compromises and releases, verifications, dismissals, orders, settlement checks, and all other documents that the Client could properly execute in connection with a lawsuit.

2.5.  Potential Methods of Resolving the Claim: The Attorneys may investigate or pursue numerous methods to resolve the Claim including settlement discussions, arbitration, mediation, and trial.

2.6.  Structured Settlement: As one possible settlement option, the Attorneys may explore the possibility of a structured settlement through the use of deferred periodic payments.  If the Claim is settled through such structure, the Attorneys' fee and costs may be paid directly to the Attorneys from the insurance company, either in one lump sum payment at settlement, or, at the sole option of the Attorneys and/or insurance company, deferred into future payments.  However, in any event, the Attorneys' fee will be calculated in the percentage as set forth in Paragraph 3.2 based upon the cost of the structured settlement or present value of it in accordance with applicable law.

2.7.  Medical Bills, Liens, Subrogation, and Rights of Reimbursement: The Client is responsible for all medical bills, liens, rights of subrogation, and rights of reimbursement (collectively "**Claims for Reimbursement**") asserted against the Client by any creditor that is not a party to the Claim.

2.8.  Unpredictable Results: Legal matters are unpredictable and full of risk and hazard. Because results in legal matters can never be guaranteed, neither this Agreement nor any conversation between the Attorneys and the Client constitutes a representation, warranty, or guarantee of results.

2.9.  Termination of Engagement by Attorneys: The Attorneys may terminate work on the Claim at any stage upon prior notice to the Client, even after suit is filed.  The Attorneys may terminate work after a trial or an arbitration hearing and are not obligated to pursue this matter on appeal of any adverse verdict or decision from a trial or arbitration hearing.

2.10. Time Period Necessary for Resolving the Claim: Legal matters are procedurally complicated and they normally take, at a minimum, several years to resolve.

2.11. File Retention: The Attorneys retain their files for five (5) years after the matter is concluded and no notice will be given of its destruction.  Naturally, other arrangements with respect to the Client's file can be made upon request.

3.  **Payment of Legal Fees and Costs**

3.1.  Contingency Agreement: If no recovery is obtained on the Claim, the Attorneys will make no charge for their time, costs, or services.

**ROBERTS_000016**

3.2.  <u>Attorneys' Fee</u>: The Client will pay the Attorneys a fee for services rendered from the total amount recovered, before payment of expenses as set forth in Paragraph 3.4, from any source on account of the Claim on the following basis:

40% of the gross sum realized from any source.

All medical expenses shall be paid from the balance remaining after payment of the "**<u>Law Firm's</u>**" fees.  I understand that my attorneys are not personally responsible to pay my medical bills.

3.3.  <u>Additional Fee for Resolving Claims for Reimbursement</u>: If the Attorneys, in their sole discretion, decide to represent the Client in resolving any Claims for Reimbursement, the Attorneys will be entitled to an additional fee in the amount of thirty-three and one-third percent (33⅓%) of any reduction in the amount of the Claim(s) for Reimbursement.  The legal services provided for in this Paragraph 3.3 are additional to the legal services being provided in connection with the Claim.

3.4.  <u>Reimbursement of Costs</u>: The Client will reimburse all costs incurred by the Attorneys in pursuit of the Claim out of the settlement or verdict amount, after deduction of attorneys' fees.  Costs include, but are not limited to, photocopies, fax charges, postage, notaries, long-distance telephone charges, mileage for attorneys and staff, investigation charges, photographs, court costs, Lexis research charges, medical records costs, police reports, deposition costs, expert fees, witness fees, stenographer costs, and video depositions fees.

3.5.  <u>Reimbursement of Costs and Expenses After Retaining New Counsel</u>: If the Attorneys' representation of the Client terminates for any reason and the Client retains new counsel, the Attorneys will be entitled to full reimbursement of costs, disbursements, and expenses within thirty (30) days of when new counsel is retained.  The Attorneys will be entitled to a file retaining lien until either the Client or new counsel fully reimburses them for all costs, disbursements, and expenses.  Either the Client or new counsel will pay all costs of making a duplicate file to be transferred to new counsel.

3.6.  <u>Payment of Attorneys' Fees and Costs After Termination of Engagement</u>: If the Attorneys' representation of the Client terminates for any reason, and the Client then recovers money in connection with the Claim, the Client will reimburse the Attorneys for all costs in accordance with Paragraph 3.4 and will pay the Attorneys their full fee pursuant to the schedule set forth in Paragraph 3.2.  The Attorneys will be entitled to an attorneys' charging lien against any proceeds resulting from the Claim.

3.7.  <u>Referral Fees</u>: If the Client was referred to the Attorneys by another lawyer, the Attorneys may divide their fee with the referring lawyer.  This will not change the amount of money the Client receives from any settlement, award, or verdict reached on the Claim.  The Client hereby agrees to any appropriate fee sharing.

## 4.  Review and Receipt of Engagement Agreement

4.1.  <u>Review of Agreement</u>: I have carefully read and I understand this Engagement Agreement and Power of Attorney, I have had a full and complete opportunity to ask the

Attorneys, or any other lawyer of my choice, any questions about this Agreement, and I am proceeding in retaining the Attorneys fully aware of all obligations.

4.2.  <u>Receipt of Duplicate Copy</u>: I acknowledge receipt of a duplicate copy of this Agreement at the time of signing.

NAME: _____          **KAY SHARON BURGESS**_____
                    (SIGNATURE)                                       (PRINT)

ADDRESS: ___160 VZ CR 2724, Mabank, Texas 75147_____

TELEPHONE NUMBER: _____          DATED: _____

**ROBERTS_000018**

# EXHIBIT E



Thomas W. Sheridan
Direct Email: tsheridan@sheridanandmurray.com

Admitted to PA & NJ Bars

September 11, 2014

Randell C. Roberts, Esquire
Roberts & Roberts
118 West Fourth Street
Tyler, TX 75701

RE:     Referral:  James Richard Burgess
        Referral:  Kay Sharon Burgess, Wife
        160 VZ CR 2724
        Mabank, TX 75147

Dear Randy:

I am writing to acknowledge acceptance of your referral to our firm of Mr. and Mrs. Burgess.  This letter will also confirm that our firm will pay you a referral fee in the amount of forty percent (40%) of the gross attorney's fee recovered by Sheridan & Murray for its representation of both Mr. and Mrs. Burgess.

I sincerely appreciate the confidence you have demonstrated in me and my firm by referring us these matters.  Please feel free to contact me at any time for an update.  I would also appreciate it if you would send me the contents of your file and confirm the amount of costs expended by your firm to date on this matter.

Should you have any questions or wish to discuss this further, please do not hesitate to contact me.

Sincerely,

*Thomas W. Sheridan*

THOMAS W. SHERIDAN

TWS/kds

PH: 215.977.9500
FX: 215.977.9800

SheridanAndMurray.com

Mailing address | 424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia office | 1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

**ROBERTS_000019**

# EXHIBIT F

**SHERIDAN & MURRAY, LLC**
424 South Bethlehem Pike, Third Floor, Fort Washington, Pennsylvania 19034
(215) 977-9500 * Fax (215) 977-9800 * Toll Free (877) 699-7800

# STANDARD ENGAGEMENT AGREEMENT
## and
## POWER OF ATTORNEY

This is an attorney-client engagement agreement (the "**Agreement**") by and between **SHERIDAN & MURRAY, LLC** (the "**Attorneys**") and **JAMES RICHARD BURGESS** (the "**Client**").

## 1.   Scope and Purpose of Engagement

1.1.   <u>Purpose of Engagement</u>: The Client hereby retains the Attorneys to negotiate a settlement or to institute in the Client's name any legal proceedings or actions that in the Attorneys' judgment are necessary in connection with injuries and damages sustained by the Client on December 14, 2012 (the "**Claim**"), against any person, firm, corporation, or entity who may be responsible for the Claim.

1.2.   <u>Limited Scope of Representation</u>: This Agreement applies to all proceedings relating to the Claim up to and including verdict or decision at trial or arbitration.  If, in the discretion of the Attorneys, post-trial proceedings, including appeals, are warranted, they will not be covered by this Agreement and a new fee agreement will be required by the Attorneys.  It is expressly agreed and understood that the Attorneys will NOT be obligated to file any appeal from arbitration or trial relating to the Claim unless and until the Attorneys, at their sole discretion, determine that such an appeal is appropriate.  This Agreement does not obligate the Attorneys to represent the Client in resolving any "**Claims for Reimbursement**," as that term is defined in Paragraph 2.7 below.

1.3.   <u>No Estate Administration</u>: If an estate is/was raised by, or at the request of, the Attorneys, it will be/was done for the sole purpose of pursuing the Claim.  Under this Agreement, the Attorneys are pursuing damages for the Claim and they are not providing legal advice or service with regard to anything else involving the estate.  The Attorneys are not experts in estate administration and the Client should seek competent estate counsel to assist with the filings required by the county Surrogate, the preparation of estate tax returns, and the many other estate administration tasks.

1.4.   <u>No Tax Advice</u>: The Attorneys are not tax lawyers and they are not qualified to render advice regarding the tax implications of any cash award, settlement, or judgment.  It is recommended that the Client retain either a tax attorney or a certified public accountant following any monetary recovery.

## 2.   Terms of Engagement

2.1.   <u>Duty to Not Discuss the Claim</u>: The Client will not settle, adjust, or discuss the Claim (or any proceedings arising from it) with other people without the Attorneys' knowledge and consent.

2.2.   <u>Duty to Cooperate</u>: The Client will fully cooperate with the Attorneys in the prosecution of the Claim.  This includes, but is not limited to, being available for legal proceedings and

**ROBERTS_000020**

consultations with the Attorneys, and keeping the Attorneys informed as to the Client's mailing address, phone number, and current medical status.

2.3.   Warranty of Honesty: The Client warrants that the information supplied during the course of this engagement is/will be true and accurate and has not been/will not be obtained through fraud or illegal activities.

2.4.   Power of Attorney: The Client hereby gives the Attorneys a power of attorney to execute all documents connected with the Claim, including pleadings, contracts, commercial papers, settlement agreements, compromises and releases, verifications, dismissals, orders, settlement checks, and all other documents that the Client could properly execute in connection with a lawsuit.

2.5.   Potential Methods of Resolving the Claim: The Attorneys may investigate or pursue numerous methods to resolve the Claim including settlement discussions, arbitration, mediation, and trial.

2.6.   Structured Settlement: As one possible settlement option, the Attorneys may explore the possibility of a structured settlement through the use of deferred periodic payments.  If the Claim is settled through such structure, the Attorneys' fee and costs may be paid directly to the Attorneys from the insurance company, either in one lump sum payment at settlement, or, at the sole option of the Attorneys and/or insurance company, deferred into future payments.  However, in any event, the Attorneys' fee will be calculated in the percentage as set forth in Paragraph 3.2 based upon the cost of the structured settlement or present value of it in accordance with applicable law.

2.7.   Medical Bills, Liens, Subrogation, and Rights of Reimbursement: The Client is responsible for all medical bills, liens, rights of subrogation, and rights of reimbursement (collectively "**Claims for Reimbursement**") asserted against the Client by any creditor that is not a party to the Claim.

2.8.   Unpredictable Results: Legal matters are unpredictable and full of risk and hazard.  Because results in legal matters can never be guaranteed, neither this Agreement nor any conversation between the Attorneys and the Client constitutes a representation, warranty, or guarantee of results.

2.9.   Termination of Engagement by Attorneys: The Attorneys may terminate work on the Claim at any stage upon prior notice to the Client, even after suit is filed.  The Attorneys may terminate work after a trial or an arbitration hearing and are not obligated to pursue this matter on appeal of any adverse verdict or decision from a trial or arbitration hearing.

2.10.  Time Period Necessary for Resolving the Claim: Legal matters are procedurally complicated and they normally take, at a minimum, several years to resolve.

2.11.  File Retention: The Attorneys retain their files for five (5) years after the matter is concluded and no notice will be given of its destruction.  Naturally, other arrangements with respect to the Client's file can be made upon request.

## 3.  Payment of Legal Fees and Costs

3.1.   Contingency Agreement: If no recovery is obtained on the Claim, the Attorneys will make no charge for their time, costs, or services.

ROBERTS_000021

3.2.  <u>Attorneys' Fee</u>: The Client will pay the Attorneys a fee for services rendered from the total amount recovered, before payment of expenses as set forth in Paragraph 3.4, from any source on account of the Claim on the following basis:

40% of the gross sum realized from any source.

All medical expenses shall be paid from the balance remaining after payment of the "**<u>Law Firm's</u>**" fees.  I understand that my attorneys are not personally responsible to pay my medical bills.

3.3.  <u>Additional Fee for Resolving Claims for Reimbursement</u>: If the Attorneys, in their sole discretion, decide to represent the Client in resolving any Claims for Reimbursement, the Attorneys will be entitled to an additional fee in the amount of thirty-three and one-third percent (33⅓%) of any reduction in the amount of the Claim(s) for Reimbursement.  The legal services provided for in this Paragraph 3.3 are additional to the legal services being provided in connection with the Claim.

3.4.  <u>Reimbursement of Costs</u>: The Client will reimburse all costs incurred by the Attorneys in pursuit of the Claim out of the settlement or verdict amount, after deduction of attorneys' fees.  Costs include, but are not limited to, photocopies, fax charges, postage, notaries, long-distance telephone charges, mileage for attorneys and staff, investigation charges, photographs, court costs, Lexis research charges, medical records costs, police reports, deposition costs, expert fees, witness fees, stenographer costs, and video depositions fees.

3.5.  <u>Reimbursement of Costs and Expenses After Retaining New Counsel</u>: If the Attorneys' representation of the Client terminates for any reason and the Client retains new counsel, the Attorneys will be entitled to full reimbursement of costs, disbursements, and expenses within thirty (30) days of when new counsel is retained.  The Attorneys will be entitled to a file retaining lien until either the Client or new counsel fully reimburses them for all costs, disbursements, and expenses.  Either the Client or new counsel will pay all costs of making a duplicate file to be transferred to new counsel.

3.6.  <u>Payment of Attorneys' Fees and Costs After Termination of Engagement</u>: If the Attorneys' representation of the Client terminates for any reason, and the Client then recovers money in connection with the Claim, the Client will reimburse the Attorneys for all costs in accordance with Paragraph 3.4 and will pay the Attorneys their full fee pursuant to the schedule set forth in Paragraph 3.2.  The Attorneys will be entitled to an attorneys' charging lien against any proceeds resulting from the Claim.

3.7.  <u>Referral Fees</u>: If the Client was referred to the Attorneys by another lawyer, the Attorneys may divide their fee with the referring lawyer.  This will not change the amount of money the Client receives from any settlement, award, or verdict reached on the Claim.  The Client hereby agrees to any appropriate fee sharing.

## 4.  Review and Receipt of Engagement Agreement

4.1.  <u>Review of Agreement</u>: I have carefully read and I understand this Engagement Agreement and Power of Attorney, I have had a full and complete opportunity to ask the

**ROBERTS_000022**

Attorneys, or any other lawyer of my choice, any questions about this Agreement, and I am proceeding in retaining the Attorneys fully aware of all obligations.

4.2.  Receipt of Duplicate Copy: I acknowledge receipt of a duplicate copy of this Agreement at the time of signing.

*By Ray Bergen under power of Attorney*

NAME: *James Richard Bergen*              **JAMES RICHARD BURGESS**
        (SIGNATURE)                              (PRINT)

ADDRESS:   160 VZ CR 2724, Mabank, Texas 75147

TELEPHONE NUMBER: *903 - 887 - 8591*   DATED: *09 - 16 - 2014*

Engagement Agreement Page 4 of 4

**ROBERTS_000023**

**SHERIDAN & MURRAY, LLC**
424 South Bethlehem Pike, Third Floor, Fort Washington, Pennsylvania 19034
(215) 977-9500 * Fax (215) 977-9800 * Toll Free (877) 699-7800

## STANDARD ENGAGEMENT AGREEMENT
### and
### POWER OF ATTORNEY

This is an attorney-client engagement agreement (the "**Agreement**") by and between **SHERIDAN & MURRAY, LLC** (the "**Attorneys**") and **KAY SHARON BURGESS** (the "**Client**").

## 1. Scope and Purpose of Engagement

1.1. <u>Purpose of Engagement</u>: The Client hereby retains the Attorneys to negotiate a settlement or to institute in the Client's name any legal proceedings or actions that in the Attorneys' judgment are necessary in connection with damages for any and all claims arising as a result of injuries sustained by her Husband, **JAMES RICHARD BURGESS**, on December 14, 2012 (the "**Claim**"), against any person, firm, corporation, or entity who may be responsible for the Claim.

1.2. <u>Limited Scope of Representation</u>: This Agreement applies to all proceedings relating to the Claim up to and including verdict or decision at trial or arbitration. If, in the discretion of the Attorneys, post-trial proceedings, including appeals, are warranted, they will not be covered by this Agreement and a new fee agreement will be required by the Attorneys. It is expressly agreed and understood that the Attorneys will NOT be obligated to file any appeal from arbitration or trial relating to the Claim unless and until the Attorneys, at their sole discretion, determine that such an appeal is appropriate. This Agreement does not obligate the Attorneys to represent the Client in resolving any "**Claims for Reimbursement**," as that term is defined in Paragraph 2.7 below.

1.3. <u>No Estate Administration</u>: If an estate is/was raised by, or at the request of, the Attorneys, it will be/was done for the sole purpose of pursuing the Claim. Under this Agreement, the Attorneys are pursuing damages for the Claim and they are not providing legal advice or service with regard to anything else involving the estate. The Attorneys are not experts in estate administration and the Client should seek competent estate counsel to assist with the filings required by the county Surrogate, the preparation of estate tax returns, and the many other estate administration tasks.

1.4. <u>No Tax Advice</u>: The Attorneys are not tax lawyers and they are not qualified to render advice regarding the tax implications of any cash award, settlement, or judgment. It is recommended that the Client retain either a tax attorney or a certified public accountant following any monetary recovery.

## 2. Terms of Engagement

2.1. <u>Duty to Not Discuss the Claim</u>: The Client will not settle, adjust, or discuss the Claim (or any proceedings arising from it) with other people without the Attorneys' knowledge and consent.

2.2. <u>Duty to Cooperate</u>: The Client will fully cooperate with the Attorneys in the prosecution of the Claim. This includes, but is not limited to, being available for legal proceedings and

ROBERTS_000024

consultations with the Attorneys, and keeping the Attorneys informed as to the Client's mailing address, phone number, and current medical status.

2.3. <u>Warranty of Honesty</u>: The Client warrants that the information supplied during the course of this engagement is/will be true and accurate and has not been/will not be obtained through fraud or illegal activities.

2.4. <u>Power of Attorney</u>: The Client hereby gives the Attorneys a power of attorney to execute all documents connected with the Claim, including pleadings, contracts, commercial papers, settlement agreements, compromises and releases, verifications, dismissals, orders, settlement checks, and all other documents that the Client could properly execute in connection with a lawsuit.

2.5. <u>Potential Methods of Resolving the Claim</u>: The Attorneys may investigate or pursue numerous methods to resolve the Claim including settlement discussions, arbitration, mediation, and trial.

2.6. <u>Structured Settlement</u>: As one possible settlement option, the Attorneys may explore the possibility of a structured settlement through the use of deferred periodic payments. If the Claim is settled through such structure, the Attorneys' fee and costs may be paid directly to the Attorneys from the insurance company, either in one lump sum payment at settlement, or, at the sole option of the Attorneys and/or insurance company, deferred into future payments. However, in any event, the Attorneys' fee will be calculated in the percentage as set forth in Paragraph 3.2 based upon the cost of the structured settlement or present value of it in accordance with applicable law.

2.7. <u>Medical Bills, Liens, Subrogation, and Rights of Reimbursement</u>: The Client is responsible for all medical bills, liens, rights of subrogation, and rights of reimbursement (collectively "**<u>Claims for Reimbursement</u>**") asserted against the Client by any creditor that is not a party to the Claim.

2.8. <u>Unpredictable Results</u>: Legal matters are unpredictable and full of risk and hazard. Because results in legal matters can never be guaranteed, neither this Agreement nor any conversation between the Attorneys and the Client constitutes a representation, warranty, or guarantee of results.

2.9. <u>Termination of Engagement by Attorneys</u>: The Attorneys may terminate work on the Claim at any stage upon prior notice to the Client, even after suit is filed. The Attorneys may terminate work after a trial or an arbitration hearing and are not obligated to pursue this matter on appeal of any adverse verdict or decision from a trial or arbitration hearing.

2.10. <u>Time Period Necessary for Resolving the Claim</u>: Legal matters are procedurally complicated and they normally take, at a minimum, several years to resolve.

2.11. <u>File Retention</u>: The Attorneys retain their files for five (5) years after the matter is concluded and no notice will be given of its destruction. Naturally, other arrangements with respect to the Client's file can be made upon request.

## 3. Payment of Legal Fees and Costs

3.1. <u>Contingency Agreement</u>: If no recovery is obtained on the Claim, the Attorneys will make no charge for their time, costs, or services.

**ROBERTS_000025**

3.2. <u>Attorneys' Fee</u>: The Client will pay the Attorneys a fee for services rendered from the total amount recovered, before payment of expenses as set forth in Paragraph 3.4, from any source on account of the Claim on the following basis:

40% of the gross sum realized from any source.

All medical expenses shall be paid from the balance remaining after payment of the "**<u>Law Firm's</u>**" fees.  I understand that my attorneys are not personally responsible to pay my medical bills.

3.3. <u>Additional Fee for Resolving Claims for Reimbursement</u>: If the Attorneys, in their sole discretion, decide to represent the Client in resolving any Claims for Reimbursement, the Attorneys will be entitled to an additional fee in the amount of thirty-three and one-third percent (33⅓%) of any reduction in the amount of the Claim(s) for Reimbursement.  The legal services provided for in this Paragraph 3.3 are additional to the legal services being provided in connection with the Claim.

3.4. <u>Reimbursement of Costs</u>: The Client will reimburse all costs incurred by the Attorneys in pursuit of the Claim out of the settlement or verdict amount, after deduction of attorneys' fees.  Costs include, but are not limited to, photocopies, fax charges, postage, notaries, long-distance telephone charges, mileage for attorneys and staff, investigation charges, photographs, court costs, Lexis research charges, medical records costs, police reports, deposition costs, expert fees, witness fees, stenographer costs, and video depositions fees.

3.5. <u>Reimbursement of Costs and Expenses After Retaining New Counsel</u>: If the Attorneys' representation of the Client terminates for any reason and the Client retains new counsel, the Attorneys will be entitled to full reimbursement of costs, disbursements, and expenses within thirty (30) days of when new counsel is retained.  The Attorneys will be entitled to a file retaining lien until either the Client or new counsel fully reimburses them for all costs, disbursements, and expenses.  Either the Client or new counsel will pay all costs of making a duplicate file to be transferred to new counsel.

3.6. <u>Payment of Attorneys' Fees and Costs After Termination of Engagement</u>: If the Attorneys' representation of the Client terminates for any reason, and the Client then recovers money in connection with the Claim, the Client will reimburse the Attorneys for all costs in accordance with Paragraph 3.4 and will pay the Attorneys their full fee pursuant to the schedule set forth in Paragraph 3.2.  The Attorneys will be entitled to an attorneys' charging lien against any proceeds resulting from the Claim.

3.7. <u>Referral Fees</u>: If the Client was referred to the Attorneys by another lawyer, the Attorneys may divide their fee with the referring lawyer.  This will not change the amount of money the Client receives from any settlement, award, or verdict reached on the Claim.  The Client hereby agrees to any appropriate fee sharing.

## 4. Review and Receipt of Engagement Agreement

4.1. <u>Review of Agreement</u>: I have carefully read and I understand this Engagement Agreement and Power of Attorney, I have had a full and complete opportunity to ask the

**ROBERTS_000026**

Attorneys, or any other lawyer of my choice, any questions about this Agreement, and I am proceeding in retaining the Attorneys fully aware of all obligations.

4.2.  Receipt of Duplicate Copy: I acknowledge receipt of a duplicate copy of this Agreement at the time of signing.

NAME: _Kay Sharon Burgen_      **KAY SHARON BURGESS**
           (SIGNATURE)                                      (PRINT)

ADDRESS:   160 VZ CR 2724, Mabank, Texas 75147

TELEPHONE NUMBER: _903-887-8591_     DATED: _09-16-2014_

**ROBERTS_000027**

# EXHIBIT G

<u>CONSENT TO REFER</u>

I have executed a Contract for Legal Services retaining Roberts & Roberts in my personal injury claim.  Roberts & Roberts has recommended that I be referred to Sheridan & Murray for possible prosecution of this claim.  I consent to this referral. It is further agreed and understood that:

(a)     this referral will not increase the total attorney fees owed by me;

(b)     Roberts & Roberts will have joint responsibility for my representation with Sheridan & Murray;

(c)     if a recovery is made on my behalf, of the total attorney's fee provided for under the aforementioned Contract for Legal Services, (40%) will be paid to Roberts & Roberts and (60%) will be paid to Sheridan & Murray; and

(d)     if Sheridan & Murray declines to prosecute my claim, my aforementioned Contract for Legal Services with Roberts & Roberts as well as Roberts & Roberts' representation of me and related responsibilities shall be considered terminated at that time as well.

This Consent to Refer is entered into on ___09-16- 2014___ and approved below by:

_____
Roberts & Roberts

James Richard Burgen
                          Client
By: Kaye Burgen
under power of attorney

ROBERTS_000028

<u>CONSENT TO REFER</u>

I have executed a Contract for Legal Services retaining Roberts & Roberts in my loss of consortium claim.  Roberts & Roberts has recommended that I be referred to Sheridan & Murray for possible prosecution of this claim.  I consent to this referral. It is further agreed and understood that:

(a)     this referral will not increase the total attorney fees owed by me;

(b)     Roberts & Roberts will have joint responsibility for my representation with Sheridan & Murray;

(c)     if a recovery is made on my behalf, of the total attorney's fee provided for under the aforementioned Contract for Legal Services, (40%) will be paid to Roberts & Roberts and (60%) will be paid to Sheridan & Murray; and

(d)     if Sheridan & Murray declines to prosecute my claim, my aforementioned Contract for Legal Services with Roberts & Roberts as well as Roberts & Roberts' representation of me and related responsibilities shall be considered terminated at that time as well.

This Consent to Refer is entered into on ___09-16 - 2014___ and approved below by:


_____              _____
Roberts & Roberts                                              Client

# EXHIBIT H

**From:** Randell Roberts
**Sent:** Wednesday, February 7, 2018 8:40 PM
**To:** 'Sheridan, Thomas W.' <tsheridan@sheridanandmurray.com>
**Subject:** RE: 1497-001 Burgess, James R.: Referral Fee Agreement


Confirmed, and good luck Tom.


**Randell C. Roberts**
Attorney at Law
Roberts & Roberts
www.robertslawfirm.com
118 W. Fourth St. Tyler, TX 75701
Ph: (903) 597-6655 | Fax: (903) 597-1600
Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization
randy@robertslawfirm.com
www.robertslawfirm.com

**From:** Sheridan, Thomas W. [mailto:tsheridan@sheridanandmurray.com]
**Sent:** Wednesday, February 7, 2018 6:27 PM
**To:** Randell Roberts <randy@robertslawfirm.com>
**Cc:** tsheridan@sheridanandmurray.com
**Subject:** FW: 1497-001 Burgess, James R.: Referral Fee Agreement


Randy,

Thanks for taking the time to speak to me earlier today about the Burgess case and our fee sharing agreement.

I am writing to confirm our discussion and to specifically clarify and document our referral agreement on this matter.

Mr. Burgess and Mrs. Burgess have each entered into a fee agreement with my firm to represent them for any and all claims arising from Mr. Burgess's December 14, 2012 accident that rendered him a quadriplegic.

Prior to referring this matter to my firm, you had engaged in discussions with representatives from Defendant Clark Electric regarding the potential settlement of this matter.

In light of this, my firm and I have agreed to pay you a referral fee in the amount of 40% of any fee recovered by my firm against Defendant Clark Electric only, which has policy limits in this matter of $2 million.

We have specifically agreed that neither me nor my firm is obligated to pay you and/or your firm a referral fee from any recovery made against any other defendant named or joined in this case (including but not limited to Dialight, any of the National Oilwell Varco entities, Cabot Oil or any of the Patterson entities).  Any referral fee paid to you from this matter will be expressly limited to 40% of any recovery from Defendant Clark Electric's $2 million insurance policy.

We have agreed that the maximum referral fee payable from my firm to your firm in this case would be $320,000 calculated as follows:

If my firm is able to settle Mr. and Mrs. Burgess' claims against Clark electric for its full $2 million insurance coverage, and we obtain a fee in the amount of 40% of the gross recovery ($800,000), our maximum referral fee payable to you will be $320,000 ($800,000 times .40 = $320,000).  To the extent any settlement with Clark Electric is in an amount less than $2 million, you will be entitled to a referral fee of 40% of the gross fee recovered by my firm from Clark Electric's insurance coverage.

Please confirm that this email accurately reflects our full and final agreement and supersedes any prior agreement (including my letter to you dated September 11, 2014).

Sincerely,

Tom



**Thomas W. Sheridan**
*Trial Attorney*

**Sheridan & Murray, LLC**

**Mailing Address:** 424 South Bethlehem Pike, Third Floor
Fort Washington, PA 19034

**Philadelphia Office:** 1845 Walnut Street, 21st Floor

Philadelphia, PA 19103

tsheridan@sheridanandmurray.com
http://www.sheridanandmurray.com

tel: (215) 977-9500
fax: (215) 977-9800

**From:** Murray, Neil T.
**Sent:** Wednesday, February 07, 2018 7:09 PM
**To:** Sheridan, Thomas W.
**Cc:** Sheridan, Thomas W.
**Subject:** RE: 1497-001 Burgess, James R.: Referral Fee Agreement

Looks good – see highlighted changes.

ROBERTS_000031

Randy,

Thanks for taking the time to speak to me earlier today about the Burgess case and our fee sharing agreement.

I am writing to confirm our discussion and to specifically clarify and document our referral agreement on this matter.

Mr. Burgess and Mrs. Burgess have each entered into a fee agreement with my firm to represent them for any and all claims arising from Mr. Burgess's (insert date of accident) accident that rendered him a quadriplegic.

Prior to referring this matter to my firm, you had engaged in discussions with representatives from Defendant Clark Electric regarding the potential settlement of this matter.

In light of this, my firm and I have agreed to pay you a referral fee in the amount of 40% of any fee recovered by my firm against Defendant Clark Electric only, which has policy limits in this matter of $2 million.

We have specifically agreed that neither me nor my firm is obligated to pay you and/or your firm a referral fee from any recovery made against any other defendant named or joined in this case (including but not limited to Dialight, any of the National Oilwell Varco entities, Cabot Oil or any of the Patterson entities).  Any referral fee paid to you from this matter will be expressly limited to 40% of any recovery from Defendant Clark Electric's $2 million insurance policy.

We have agreed that the maximum referral fee payable from my firm to your firm in this case is $320,000 calculated as follows:

If my firm is able to settle Mr. and Mrs. Burgess' claims against Clark electric for its full $2 million insurance coverage, and we obtain a fee in the amount of 40% of the gross recovery ($800,000), our maximum referral fee payable to you will be $320,000 ($800,000 times .40 = $320,000).  To the extent any settlement with Clark Electric is in an amount less than $2 million, you will be entitled to a referral fee of 40% of the gross fee recovered by my firm from Clark Electric's insurance coverage.

Please confirm that this email accurately reflects our agreement and supersedes any prior agreement.

Sincerely,

Tom

---

Neil T. Murray, Esquire
Sheridan & Murray, LLC
424 S. Bethlehem Pike
Third Floor
Fort Washington, PA 19034
(215) 977-9500 phone
(215) 977-9800 fax
nmurray@sheridanandmurray.com

ROBERTS_000032

**From:** Sheridan, Thomas W.
**Sent:** Wednesday, February 07, 2018 7:03 PM
**To:** Murray, Neil T.
**Cc:** Thomas W. Sheridan Esquire (tsheridan@sheridanandmurray.com)
**Subject:** 1497-001 Burgess, James R.: Referral Fee Agreement

Neil,

please review the email below and give me any comments or edits that you have. I want to nail this down ASAP. I have gone to substantial lengths in this email to document my agreement with Randy. Please let me know if you think it is too much or too little or there's a more effective way to say what I wrote.

Thanks, Tom

Randy,

Thanks for taking the time to speak to me earlier today about the Burgess case and our fee sharing agreement.

I am writing to confirm our discussion and to specifically clarify and document our referral agreement on this matter.

Mr. Burgess and Mrs. Burgess have each entered into a fee agreement with my firm to represent them for any and all claims arising from Mr. Burgess's accident that rendered him a quadriplegic.

Prior to referring this matter to my firm, you had engaged in discussions with representatives from Clark electric regarding the potential settlement of this matter.

In light of this, my firm and I have agreed to pay you a referral fee in the amount of 40% of any fee recovered by my firm against defendant Clark Electric only, which has policy limits in this matter of $2 million.

We have specifically agreed that neither me nor my firm is obligated to pay you and/or your firm a referral fee from any recovery made against any other defendant named or joined in this case (including but not limited to Dialight, any of the National Oilwell Varco entities, Cabot oil or any of the Patterson entities). Any referral fee paid to you from this matter will be expressly limited to 40% of any recovery from Defendant Clark Electric's $2 million insurance policy.

We have agreed that the maximum referral fee payable from my firm to your firm in this case is $320,000 calculated as follows:

if my firm is able to settle Mr. and Mrs. Burgess' claims against Clark electric for its full $2 million insurance coverage, and we obtain a fee in the amount of 40% of the gross recovery ($800,000), our maximum referral fee payable to you will be $320,000 ($800,000 times .40 = $320,000). To the extent any settlement with Clark electric is in an amount less than $2 million, you will be entitled to a referral fee of 40% of the gross fee recovered by my firm from Clark electric's insurance coverage.

ROBERTS_000033

Please confirm that this email accurately reflects our agreement and supersedes any prior agreement.

Sincerely,

Tom



| **Thomas W. Sheridan**<br>*Trial Attorney* | **Sheridan & Murray, LLC** |
|---|---|
| | **Mailing Address:**  424 South Bethlehem Pike, Third Floor<br>Fort Washington, PA 19034 |
| | **Philadelphia Office:**  1845 Walnut Street, 21st Floor<br>Philadelphia, PA 19103 |
| tsheridan@sheridanandmurray.com<br>http://www.sheridanandmurray.com | tel: (215) 977-9500<br>fax: (215) 977-9800 |

# EXHIBIT I



ROBERTS_000035

# EXHIBIT J

**From:** Thomas W. Sheridan <tsheridan@sheridanandmurray.com>
**Sent:** Wednesday, November 14, 2018 1:19 PM
**To:** Randell Roberts <randy@robertslawfirm.com>
**Subject:** Re: Burgess

Not yet
Working on it and comp carrier needs all costs.

Get Outlook for iOS

---

**From:** Randell Roberts <randy@robertslawfirm.com>
**Sent:** Wednesday, November 14, 2018 2:15 PM
**To:** Thomas Sheridan
**Cc:** Rhonda McLouth; Molly Brady; Blane Carrifee
**Subject:** RE: Burgess

OK; I will have Rhonda send it to you....Have you settled?

Randell (Randy) C. Roberts
Attorney at Law
118 W. Fourth St. Tyler, TX 75701
Ph: (903) 597-6655 | Fax: (903) 597-1600
Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization

-----Original Message-----
**From:** Thomas Sheridan <tomsheridan@comcast.net>
**Sent:** Wednesday, November 14, 2018 1:12 PM
**To:** Randell Roberts <randy@robertslawfirm.com>
**Subject:** Burgess

Randy
Can you please email me your costs in the Burgess case so I can protect them.
Thanks
Tom

CONFIDENTIALITY NOTICE: The contents of this email, including any attachments, are intended solely for the recipient(s), are confidential, and may be privileged. If you are not an intended recipient of this email, any disclosure, reproduction, distribution, or other use of this email or any attachments is strictly prohibited. If you received this email in error, please contact the sender immediately and delete it and any accompanying attachments from all computers and devices.

# EXHIBIT K

**The Legal Intelligencer** (/thelegalintelligencer/)

POWERED BY **LAW.COM** (/)

(https://store.law.com/Registration/Lo
promoCode=PA&source=https%
2Fwww.law.com%2Fthelegalintell
2F2018%2F11%2F27%2Fcompani
with-paralyzed-oilfield-worker-for-4
S
PROMOCODE=PA&SOURCE=HTTPS:/.

Publications (/publications/)  Law Topics (/topics/)  Surveys & Rankings (/rankings/)  Cases & Verdicts  People & Community



cyberSecure                The Premier
July 11-12, 2019 | Marriott Marquis | New York City   Cybersecurity Forum for
                           Small to Mid-Sized Law Firms   [Register Today]

News (/thelegalintelligencer/news/)

# Companies Settle With Paralyzed Oilfield Worker for $44M

An oilfield worker who was rendered quadriplegic after a light fixture improperly attached to an oil derrick fell more 100 feet onto his head has settled his claims against five companies for a total of $44 million.

By **Max Mitchell** (/author/profile/Max-Mitchell/)  |  November 27, 2018 at 04:42 PM

f

in

𝕏

🖶

📄 (htt



*(Photo: TebNad – Fotolia)*

An oilfield worker who was rendered quadriplegic after a light fixture improperly attached to an oil derrick fell more than 100 feet onto his head has settled his claims against five companies for a total of $44 million.

The multimillion-dollar award is meant to compensate the injured plaintiff, James Burgess, and his wife, Kay Sharon Burgess, who live in rural Texas. The case, which was filed in the Philadelphia Court of Common Pleas, came to a settlement after two days of mediation before retired federal magistrate Judge Diane Welsh.

### Trending Stories

1  **Forget Prom. This 16-Year-Ol Is Headed to Law School (https://www.law.com/texasl prom-this-16-year-old-is-headed-to-law-school/)**

   TEXAS LAWYER (/TEXASLAWYER/)

2  **Profits Per Partner Hit $5 Million at Paul Weiss, Redefining Richest Tier (https://www.law.com/ameri per-partner-hit-5-million-at-paul-weiss-redefining-riches tier/)**

   THE AMERICAN LAWYER (/AMERICANLAWYER/)

3  **Willkie's Caplan Looks to Big Law to Represent Him in College Admissions Case (https://www.law.com/ameri loughlin-and-felicity-huffman hire-big-law-defenders-in-college-fraud-case-405-33610/)**

   THE AMERICAN LAWYER (/AMERICANLAWYER/)

4  **Lori Loughlin and Felicity Huffman Hire Big Law Defenders in College Fraud Case (https://www.law.com/natior loughlin-and-felicity-huffman hire-big-law-defenders-in-college-fraud-case/)**

**ROBERTS_000037**

"Mrs. Burgess's loss of consortium claim was probably the most significant consortium claim anyone in the case had ever encountered," Sheridan & Murray attorney Thomas Sheridan, who represented the Burgesses, said. "Her husband is in a hospital over 90 miles away from her house. She drove to the hospital every day for the last six years to see her husband."

According to court papers, James Burgess was working on a drill rig owned and operated by Patterson Drilling Services in December 2012. A four-foot LED light designed by Dialight fell 103 feet onto Burgess' head, causing a neck fracture that compressed his spinal cord and rendered him permanently quadriplegic.

The Burgesses sued Dialight, which designed and marketed the light; National Oilwell Varco, which designed and manufactured the rig's component parts; Clark Electrical Contractors, the company that installed the light; Cabot Petroleum North Sea Ltd., which owned the mineral rights of the oil; and Patterson.

According to Burgess' pretrial memo, Dialight did not manufacture the light for use on drill rigs, but the company still marketed the lights to the oil and gas industry for use on rigs. Specifically, the memo said the fixtures lacked anchors that would allow it to be properly attached to safety cables.

Burgess also contended that Clark Electrical Contractors knew the lights were not designed for use on oil drills, but installed them anyway, without the proper safety cables. Burgess' memo further contended that National Oilwell Varco, which made the rig, should have included warning signs or instructions saying that all light fixtures needed to be secured to the drill rig with safety cables for secondary retention.

Patterson, Burgess argued in his memo, also failed to perform safety inspections that would have found that the lights were not properly affixed to the rig. He further alleged that two inspection reports falsified information by certifying that safety cables had been installed, even though they had not been.

Burgess' memo also noted that about 90 minutes before the accident, the electrician who installed the lights noticed one had been knocked loose and was hanging from its power cable. A worker from Cabot stopped work on the rig and the light was removed, the memo said. Burgess contended that, since the loose light had not been attached with a safety cable, Cabot should have done a full inspection of the lights.

The Burgesses raised strict liability and negligence claims against the defendants.

According to court papers, all defendants contested liability.

Clark contended that the other defendants were comparatively at fault, and that the company owed no duty of care to Burgess. National Oilwell Varco contended it had no knowledge about the allegedly defective light, and that improperly attaching the light was the superseding cause of the accident.

Dialight, according to court papers, denied that the product was defective, and contended there was comparative negligence on behalf of the other parties. Cabot denied that it owned, or controlled the drilling site, and argued that Burgess' suit was barred under the statutory employer doctrine. Patterson also raised the statutory employer defense, and contended that Burgess had assumed the risk.

NATIONAL LAW JOURNAL
(/NATIONALLAWJOURNAL/)

5    'I Don't Want My Client to Be
     Blindsided': Executives and
     Their Lawyers Brace for Rep.
     Katie Porter's Questions
     (https://www.law.com/nationa
     want-my-client-to-be-
     blindsided-executives-and-
     their-lawyers-brace-for-rep-
     katie-porters-questions/)

NATIONAL LAW JOURNAL
(/NATIONALLAWJOURNAL/)





Sheridan, who handled the case with Neil Murray and Frank Mangiaracina, said that, with multiple theories of liability and considerations stemming from the Fair Share Act, the case was extremely complex.

With the defendants pushing to have the case handled in Susquehanna County, venue was also hotly disputed, Sheridan said, adding that discovery was also so contested the court appointed former Philadelphia Judge Mark Bernstein as a special master to handle discovery disputes.

"The saddest aspect of the case is that this industrial accident was entirely preventable," Sheridan said.

James Doherty of Scanlon, Howley & Doherty, who represented Clark, did not return a call for comment. Dialight was represented by White and Williams attorney Robert Devine, who also did not return a call for comment. Jackson Kelly attorney Michael Leahey represented Cabot. He referred comment to the company's in-house attorney, Cole DeLancey, who also did not return a call for comment.

When reached for comment, Andrew Weinstock of Duplass Zwain Bourgeois Pfister Weinstock & Bogart, who represented National Oilwell Varco, said, "NOV did not sell, design, manufacture or install the allegedly defective product. NOV reached the settlement to avoid continuing litigation expenses."

f  SHARE ON FACEBOOK       🐦 SHARE ON TWITTER

### Max Mitchell

Max Mitchell is a reporter with The Legal Intelligencer, focusing on litigation in Pennsylvania with a specific emphasis on Philadelphia courts. Follow him on Twitter @MMitchellTLI.  ( /author/profile/Max-Mitchell/)

More from this author → (/author/profile/Max-Mitchell/)

### Dig Deeper

Civil Procedure (/topics/civil-procedure/)       Land Use and Planning (/topics/land-use-and-planning/)

Manufacturing (/topics/manufacturing/)       Mining and Resources (/topics/mining-and-resources/)

**Law Firms Mentioned**

**Jackson, Kelly, Holt & OFarrell**
**(/search/?q=Jackson%2C+Kelly%**

ROBERTS_000039

2C+Holt+%26amp%3B+O%
27Farrell&Submit=Search&source

White and Williams (/search/?
q=White+and+Williams&Submit=S

LEAN ADVISER LEGAL (/LEAN-
ADVISER/STATIC/LEAN-ADVISER/?
CMP=LARMLDC)

## Think Lean Daily Message

" If you want to be a lean
lawyer, and practice law the
way clients want, try
bringing these three traits
in to the office every day.
They wil... "

**Learn More (/lean-
adviser/static/lean-adviser/?
cmp=LARMLDC)**



**The Legal Intelligencer**
POWERED BY LAW.COM

**Pennsylvania Legal Insights & Intelligence**
Get the 'what' behind the 'why' on the
latest court and legislative decisions.

SUBSCRIBE NOW

### Recommended Stories

## Special Section: Products Liability, Mass Torts & Class Action (https://www.law.com/thelegalintelligencer/2019/01/28/special-section-products-liability-mass-torts-class-action/)



THE LEGAL INTELLIGENCER | JANUARY 28, 2019

In The Legal's Products Liability, Mass Torts & Class Action, read
about economic loss after Dittman, 5-year-old Tincher and what
to do when automobile safety features just don't work.

CORPORATE COUNSEL (HTTPS://WWW.LAW.COM/CORPCOUNSEL/)

## Instagram, Social Media Platforms Face New Regulatory Challenges With Fintech Expansions (https://www.law.com/thelegalintelligencer/2019/03/20/instagram-social-media-platforms-face-new-regulatory-challenges-with-fintech-expansions/)

CAROLINE SPIEZIO
(HTTPS://WWW.LAW.COM/CORPCOUNSEL/AUTHOR/PROFILE/CAROLINE-
SPIEZIO/) | MARCH 20, 2019

As more social media platforms implement fintech, in-house
counsel's regulatory challenges grow. Lawyers said it's best to
start a compliance plan early.

### Featured Firms

**Tracey & Fox**
440 LOUISIANA STREET SUITE 1901
HOUSTON, TX 77002
713-495-2333
www.traceylawfirm.com
(https://www.traceylawfirm.com/hous

Presented by BigV



**ROBERTS_000040**

### Dilworth Grows Zoning, Land Use Practice With Ballard Partner (https://www.law.com/thelegalintelligencer/2019/02/06/dilworth-grows-zoning-land-use-practice-with-ballard-partner/)



(https://www.law.com/thelegalintelligencer/2019/02/06/dilworth-grows-zoning-land-use-practice-with-ballard-partner/)

LIZZY MCLELLAN (/AUTHOR/PROFILE/LIZZY-MCLELLAN/) | FEBRUARY 06, 2019

Dilworth Paxson continues to add to its land use and zoning practice, bringing on longtime Ballard Spahr lawyer Neil Sklaroff.

# More from ALM

| CLE Center | Legal Compass | Events | Webcasts | Lawjobs | Professional Announcements |

## Premium Subscription

With this subscription you will receive unlimited access to high quality, online, on-demand premium content from well-respected faculty in the legal industry. This is perfect for attorneys licensed in multiple jurisdictions or for attorneys that have fulfilled their CLE requirement but need to access resourcelical information for their practice areas.

View Now (http://clecenter.com/Program/Premium.aspx)

## Team Accounts

Our Team Account subscription service is for legal teams of four or more attorneys. Each attorney is granted unlimited access to high quality, on-demand premium content from well-respected faculty in the legal industry along with administrative access to easily manage CLE for the entire team.

View Now (http://clecenter.com/CleForFirm/Default.aspx)

## Bundle Subscriptions

Gain access to some of the most knowledgeable and experienced attorneys with our 2 bundle options! Our Compliance bundles are curated by CLE Counselors and include current legal topics and challenges within the industry. Our second option allows you to build your bundle and strategically select the content that pertains to your needs. Both options are priced the same.

View Now (http://clecenter.com/Default.aspx)

**CLE Center → (http://clecenter.com)**

**ALM Legal Publication Newsletters**

# Sign Up Today and Never Miss Another Story.

As part of your digital membership, you can sign up for an unlimited number of a wide range of complimentary newsletters. Visit your My Account (https://store.law.com/registration/login.aspx?promoCode=PA) page to make your selections. Get the timely legal news and critical analysis you cannot afford to miss. Tailored just for you. In your inbox. Every day.

**Subscribe Now**

(https://store.law.com/registration/l/promoCode=PA)
Privacy Policy (https://www.alm.com/priv policy-new/)

## The Legal Intelligencer (/thelegalintelligencer/)

Publications (/publications/) / Law Topics (/topics/) / Surveys & Rankings (/thelegalintelligencer/../rankings/) / Cases & Verdicts (/thelegalintellige / People & Community (/thelegalintelligencer//) / Public Notices & Classifieds (/thelegalintelligencer/public-notices/) / Legal Newswire (/legalnew / Lean Adviser (/lean-adviser/static/lean-adviser/?cmp=LANBLDC) / All Sections (/thelegalintelligencer/sitemap/)

About The Legal Intelligencer (/thelegalintelligencer/static/about-us/) / Place a Classified (/thelegalintelligencer/static/place-a-classified/) / Contact Us (/thelegalintelligencer/static/con / Site Map (/thelegalintelligencer/sitemap/) / Advertise With Us (/static/advertise-with-us/) / Customer Care (https://www.alm.com/contact-us/) / Terms of Service (https://www.alm.com/terms-of-use/) / FAQ (https://store.law.com/Registration/myAccount.aspx?promoCode=lc#/Help) / Privacy Policy (https://www.alm.com/privacy-policy-new)

ROBERTS_000041

_(/)_

FOLLOW US

(https://www.facebook.com/LawdotcomALM/)    (https://twitter.com/lawdotcom)    (https://www.linkedin.com/company/law-com/)

(http://feeds.feedblitz.com/law/legal-news/)

| Publications | Law Topics | Rankings | More | Law.com |
|---|---|---|---|---|
| The American Lawyer (/americanlawyer/) | Litigation (/topics/litigation/) | Am Law 100 (/americanlawyer/rankings/the-2018-am-law-100-1/) | Events (/events/) | About Us (/static/about |
| Corporate Counsel (/corpcounsel/) | Deals and Transactions (/topics/deals-and-transactions/) | Am Law 200 (/americanlawyer/rankings/the-2018-am-law-200--the-american-lawyer/) | Legal Compass (https://www.alm.com/intelligence/solutions-we-provide/business-of-law-solutions/legal-compass/) | Contact Us (/static/contac |
| National Law Journal (/nationallawjournal/) | Law Firm Management (/topics/law-firm-management/) | Global 100 (/americanlawyer/rankings/global-100/) | Editorial Calendar (/editorial-calendar/) | Site Map (/sitemap/) |
| New York Law Journal (/newyorklawjournal/) | Legal Practice Management (/topics/legal-practice-management/) | National Law Journal 500 (/nationallawjournal/rankings/the-nlj-500/) | Briefings (/static/briefings/) | Advertise With Us (/static/ac with-us/) |
| New Jersey Law Journal (/njlawjournal/) | Cybersecurity (/topics/cybersecurity/) | Pro Bono Scorecard (/americanlawyer/rankings/pro-bono/) | Legal Dictionary (https://dictionary.law.com/) | Customer Support (https://www.alm.com/cont |
| The Recorder (/therecorder/) | Intellectual Property (/topics/intellectual-property/) | The A-List (/americanlawyer/rankings/a-list/) | Lawjobs.com (http://lawjobs.com/) | Terms of Service (https://www.alm.com/terms |
| More Publications › (/publications/) | More Law Topics › (/topics/) | More Rankings › (/rankings/) | Law Firms (/law-firms/) | FAQ (/sites/almstaff/2017/10/20/fr asked-questions/) |
|  |  |  | Law Schools (/topics/legal-education/) | Privacy Policy (https://www.alm.com/priva new/) |

Copyright © 2019 ALM Media Properties, LLC. All Rights Reserved.

ROBERTS_000042

# EXHIBIT L



RANDELL C. ROBERTS
*Board Certified - Personal Injury Trial Law
American Board of Trial Advocates
**MICHAEL ACE**
*Board Certified - Personal Injury & Civil Trial Law
American Board of Trial Advocates
**DON R. REEVES**
**JUSTIN C. ROBERTS**
*Texas Board of Legal Specialization

118 W. Fourth Street
Tyler, Texas 75701-4000

# ROBERTS & ROBERTS



*A Professional Corporation*
## ATTORNEYS AT LAW

BRUCE L. ROBERTS
*Board Certified - Personal Injury Trial Law
**KAREN R. ROBERTS**
*Board Certified - Personal Injury Trial Law
American Board of Trial Advocates
**FRANK WEEDON**
*Board Certified - Workers' Compensation Law
**NICANOR PESINA, JR.**

Tel: (903) 597-6655
Fax: (903) 597-1600
www.robertslawfirm.com

January 4, 2019

VIA EMAIL
AND
FEDERAL EXPRESS

Mr. Thomas W. Sheridan
Sheridan & Murray, LLC
424 Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Re:   James and Kay Burgess

Dear Tom:

Let me begin this letter by commending you for what appears to be an excellent settlement for James and Kay Burgess. It was approximately six years ago when they retained my law firm's services and I began working on their case. My decision to refer their personal injury claims to you four years ago for further prosecution in Pennsylvania was obviously a wise one.

As I stated in our telephone conference on December 19, 2018, I am concerned that my law firm is not being fairly compensated in your contemplated division of the attorney fees earned in this case. Specifically, I have concerns about the circumstances prompting your telephone call on February 7, 2018. As you know, this was the telephone conference in which you gave me a status report on James and Kay Burgess's case. It was during this call that you requested that my law firm forego most of its attorney fees to help James and Kay continue to have an economically viable lawsuit for you to pursue.

Since our telephone conference on December 19, 2018, I have reviewed the attached email thread exchanged between you and your partner on February 7, 2018. This email thread raises further concerns about the circumstances prompting your telephone call to me on February 7, 2018.

**ROBERTS_000043**

Mr. Thomas W. Sheridan
Page 2
January 4, 2019

At this point, I have two questions:

     1.     What did you know when you called on February 7, 2018, and requested that my firm forego most of its attorney fees so that you would still have an economically viable lawsuit to pursue for James and Kay Burgess? More specifically, did you fully and fairly disclose all important information about their case to me before requesting that I change our original agreement that my firm would be paid 40% of the gross attorney fees?

     2.     If we were dealing at arm's length in changing or superseding our original agreement for the division of attorney fees, what financial consideration did my firm receive for the change? My law firm and I continue to this day to share joint responsibility with your law firm for the representation of James and Kay Burgess.

     Until my concerns are resolved, I respectfully request that you:

     1.     Please provide me with the information documenting that on February 7, 2018, it was actually necessary to change our division of the attorney fees in order for it to be economically viable for your firm to continue to pursue James and Kay Burgess's case. It is difficult for me to understand how the settlement value of this case could have increased to approximately $44,000,000.00 between last February and last fall when it settled.

     2.     Please provide me with the complete terms of the settlement. This should include the identity and contact information for every defendant or insurance company contributing to the settlement, the amount each is contributing, and the resolution of the workers' compensation lien and benefits.

     3.     Please provide me with your proposed disbursement of the entire settlement, including attorney fees, legal expenses, liens, and James and Kay Burgess's respective net recoveries.

     4.     Please preserve all records, documents, tangible things, and electronically stored information relating to James and Kay Burgess's case. These items would include all emails, texts, correspondence, memos, and messages exchanged between you and anyone about this case, including communications with your partners, experts, litigation strategists, defense attorneys, and insurance adjusters.

     5.     Please comply with Rule 1.15 of your Rules of Professional Conduct by placing 40% of the gross attorney fees in escrow until the appropriate division of the attorney fees between our law firms is resolved to our mutual satisfaction. Another copy of James and Kay Burgess's contracts with my law firm as well as their written consent for me to refer their personal injury claims to your law firm (with my law firm remaining jointly responsible for them and receiving 40% of the gross attorney fees) are attached to document my firm's interest in the settlement funds.

**ROBERTS_000044**

Mr. Thomas W. Sheridan
Page 3
January 4, 2019

Tom, I regret that I have to ask these questions and make these requests. I have always thought of you as a good person as well as a good attorney. I believe, however, that you would have the same concerns if you were in my situation. My law firm has performed more than the customary amount of work necessary to earn its 40% of the attorney fees in this settlement.

I also believe that you recognize that I have always placed James and Kay Burgess's interests first. I even offered to refund a portion of my firm's attorney fees to them, if the workers' compensation lien consumed their recovery and kept them from having an economically worthwhile case. I therefore do not want my requests to in any way delay James and Kay Burgess receiving their portion of the settlement. If any aspect of my requests could delay or adversely affect their settlement, please let me know immediately.

It is my sincere desire to resolve my concerns in a prompt, professional, and amicable manner. If we cannot resolve my concerns between ourselves, it is my understanding that your Rules of Professional Conduct admonish you to conscientiously consider submitting this matter to the arbitration or mediation procedures established by our bar associations and I am amenable to that process.

To begin resolving my concerns, please confirm for me in writing by January 12, 2019 that: (1) you will comply with Rule 1.15 by placing 40% of the gross attorney fees in escrow until the appropriate division of the attorney fees between our firms is resolved to our mutual satisfaction, and (2) you will preserve all records, documents, tangible things, and electronically stored information relating to James and Kay Burgess's case. Please also provide me with the other information that I have requested by January 19, 2019. If I do not receive satisfactory responses, my firm will need to consider taking further steps to protect its interests.

Sincerely,

Randell C. Roberts
For the Firm

RCR/mb

Enclosures

ROBERTS_000045

**Subject:**                    1497-001 Burgess, James R.: Referral Fee Agreement

**From:** Randell Roberts
**Sent:** Wednesday, February 7, 2018 8:40 PM
**To:** 'Sheridan, Thomas W.' <tsheridan@sheridanandmurray.com>
**Subject:** RE: 1497-001 Burgess, James R.: Referral Fee Agreement

Confirmed, and good luck Tom.

**Randell C. Roberts**
Attorney at Law
Roberts & Roberts
www.robertslawfirm.com
118 W. Fourth St. Tyler, TX 75701
Ph: (903) 597-6655 | Fax: (903) 597-1600
Board Certified - Personal Injury Trial Law
Texas Board of Legal Specialization
randy@robertslawfirm.com
www.robertslawfirm.com

**From:** Sheridan, Thomas W. [mailto:tsheridan@sheridanandmurray.com]
**Sent:** Wednesday, February 7, 2018 6:27 PM
**To:** Randell Roberts <randy@robertslawfirm.com>
**Cc:** tsheridan@sheridanandmurray.com
**Subject:** FW: 1497-001 Burgess, James R.: Referral Fee Agreement

Randy,
Thanks for taking the time to speak to me earlier today about the Burgess case and our fee sharing agreement.
I am writing to confirm our discussion and to specifically clarify and document our referral agreement on this matter.

Mr. Burgess and Mrs. Burgess have each entered into a fee agreement with my firm to represent them for any and all claims arising from Mr. Burgess's December 14, 2012 accident that rendered him a quadriplegic.

Prior to referring this matter to my firm, you had engaged in discussions with representatives from Defendant Clark Electric regarding the potential settlement of this matter.

In light of this, my firm and I have agreed to pay you a referral fee in the amount of 40% of any fee recovered by my firm against Defendant Clark Electric only, which has policy limits in this matter of $2 million.

We have specifically agreed that neither me nor my firm is obligated to pay you and/or your firm a referral fee from any recovery made against any other defendant named or joined in this case (including but not limited to Dialight, any of the National Oilwell Varco entities, Cabot Oil or any of the Patterson entities). Any referral fee paid to you from this matter will be expressly limited to 40% of any recovery from Defendant Clark Electric's $2 million insurance policy.

We have agreed that the maximum referral fee payable from my firm to your firm in this case would be $320,000 calculated as follows:

1

**ROBERTS_000046**

If my firm is able to settle Mr. and Mrs. Burgess' claims against Clark electric for its full $2 million insurance coverage, and we obtain a fee in the amount of 40% of the gross recovery ($800,000), our maximum referral fee payable to you will be $320,000 ($800,000 times .40 = $320,000).  To the extent any settlement with Clark Electric is in an amount less than $2 million, you will be entitled to a referral fee of 40% of the gross fee recovered by my firm from Clark Electric's insurance coverage.

Please confirm that this email accurately reflects our full and final agreement and supersedes any prior agreement (including my letter to you dated September 11, 2014).

Sincerely,
Tom

## Sheridan & Murray LLC

**Thomas W. Sheridan**
*Trial Attorney*

**Sheridan & Murray, LLC**
Mailing Address: 424 South Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia Office: 1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

tsheridan@sheridanandmurray.com
http://www.sheridanandmurray.com

tel: (215) 977-9500
fax: (215) 977-9800

**From:** Murray, Neil T.
**Sent:** Wednesday, February 07, 2018 7:09 PM
**To:** Sheridan, Thomas W.
**Cc:** Sheridan, Thomas W.
**Subject:** RE: 1497-001 Burgess, James R.: Referral Fee Agreement

Looks good – see highlighted changes.

Randy,
Thanks for taking the time to speak to me earlier today about the Burgess case and our fee sharing agreement.
I am writing to confirm our discussion and to specifically clarify and document our referral agreement on this matter.

Mr. Burgess and Mrs. Burgess have each entered into a fee agreement with my firm to represent them for any and all claims arising from Mr. Burgess's (insert date of accident) accident that rendered him a quadriplegic.

Prior to referring this matter to my firm, you had engaged in discussions with representatives from Defendant Clark Electric regarding the potential settlement of this matter.

In light of this, my firm and I have agreed to pay you a referral fee in the amount of 40% of any fee recovered by my firm against Defendant Clark Electric only, which has policy limits in this matter of $2 million.

We have specifically agreed that neither me nor my firm is obligated to pay you and/or your firm a referral fee from any recovery made against any other defendant named or joined in this case (including but not limited to Dialight, any of the National Oilwell Varco entities, Cabot Oil or any of the Patterson entities).  Any referral fee paid to you from this matter will be expressly limited to 40% of any recovery from Defendant Clark Electric's $2 million insurance policy.

2

ROBERTS_000047

We have agreed that the maximum referral fee payable from my firm to your firm in this case is $320,000 calculated as follows:

If my firm is able to settle Mr. and Mrs. Burgess' claims against Clark electric for its full $2 million insurance coverage, and we obtain a fee in the amount of 40% of the gross recovery ($800,000), our maximum referral fee payable to you will be $320,000 ($800,000 times .40 = $320,000). To the extent any settlement with Clark Electric is in an amount less than $2 million, you will be entitled to a referral fee of 40% of the gross fee recovered by my firm from Clark Electric's insurance coverage.

Please confirm that this email accurately reflects our agreement and supersedes any prior agreement.

Sincerely,
Tom

_____

Neil T. Murray, Esquire
Sheridan & Murray, LLC
424 S. Bethlehem Pike
Third Floor
Fort Washington, PA 19034
(215) 977-9500 phone
(215) 977-9800 fax
nmurray@sheridanandmurray.com

**From:** Sheridan, Thomas W.
**Sent:** Wednesday, February 07, 2018 7:03 PM
**To:** Murray, Neil T.
**Cc:** Thomas W. Sheridan Esquire (tsheridan@sheridanandmurray.com)
**Subject:** 1497-001 Burgess, James R.: Referral Fee Agreement

Neil,
please review the email below and give me any comments or edits that you have. I want to nail this down ASAP. I have gone to substantial lengths in this email to document my agreement with Randy. Please let me know if you think it is too much or too little or there's a more effective way to say what I wrote.
Thanks, Tom

Randy,
Thanks for taking the time to speak to me earlier today about the Burgess case and our fee sharing agreement.
I am writing to confirm our discussion and to specifically clarify and document our referral agreement on this matter.

Mr. Burgess and Mrs. Burgess have each entered into a fee agreement with my firm to represent them for any and all claims arising from Mr. Burgess's accident that rendered him a quadriplegic.

Prior to referring this matter to my firm, you had engaged in discussions with representatives from Clark electric regarding the potential settlement of this matter.

In light of this, my firm and I have agreed to pay you a referral fee in the amount of 40% of any fee recovered by my firm against defendant Clark Electric only, which has policy limits in this matter of $2 million.

ROBERTS_000048

We have specifically agreed that neither me nor my firm is obligated to pay you and/or your firm a referral fee from any recovery made against any other defendant named or joined in this case (including but not limited to Dialight, any of the National Oilwell Varco entities, Cabot oil or any of the Patterson entities).  Any referral fee paid to you from this matter will be expressly limited to 40% of any recovery from Defendant Clark Electric's $2 million insurance policy.

We have agreed that the maximum referral fee payable from my firm to your firm in this case is $320,000 calculated as follows:

if my firm is able to settle Mr. and Mrs. Burgess' claims against Clark electric for its full $2 million insurance coverage, and we obtain a fee in the amount of 40% of the gross recovery ($800,000), our maximum referral fee payable to you will be $320,000 ($800,000 times .40 = $320,000).  To the extent any settlement with Clark electric is in an amount less than $2 million, you will be entitled to a referral fee of 40% of the gross fee recovered by my firm from Clark electric's insurance coverage.

Please confirm that this email accurately reflects our agreement and supersedes any prior agreement.

Sincerely,
Tom

**Sheridan & Murray** LLC

| **Thomas W. Sheridan** | | **Sheridan & Murray, LLC** |
| *Trial Attorney* | **Mailing Address:** | 424 South Bethlehem Pike, Third Floor |
| | | Fort Washington, PA 19034 |
| | **Philadelphia Office:** | 1845 Walnut Street, 21st Floor |
| | | Philadelphia, PA 19103 |
| tsheridan@sheridanandmurray.com | | tel: (215) 977-9500 |
| http://www.sheridanandmurray.com | | fax: (215) 977-9800 |

4

ROBERTS_000049

## CONTRACT FOR LEGAL SERVICES

*James Richard Burgess*

I hereby employ **ROBERTS & ROBERTS** ("the law firm") to represent me in a claim for damages arising out of an occurrence on or about ___*12- 14- 2012*___ as provided in this contract.

1. **Attorney's Fee:** I hereby assign, convey, and transfer to the law firm a percentage of the total recovery on this claim (or its present value), before any offset, to pay for the law firm's time devoted to prosecuting this claim. This percentage shall be 33.33% if the recovery is obtained before a lawsuit is filed, 40% if the recovery is obtained after a lawsuit is filed, and 45% if the recovery is obtained after a notice of appeal is filed. *If there is no recovery, however, it is agreed that I will not be obligated to pay the law firm for its time devoted to prosecuting this claim.*

2. **Legal Expenses:** I authorize the law firm to incur all reasonable expenses necessary for the prosecution of this claim and to pay these expenses out of my portion of the recovery on this claim, after payment of the attorney's fee. It is understood that these expenses include the cost of court filing fees, subpoenas, depositions, computer research, demonstrative evidence, exhibits, records, reports, transportation, lodging, and the service of other professionals including expert witnesses, consultants, engineers, investigators, property adjusters, medical record reviewers, researchers, court reporters, videographers, photographers, mediators, record retrieval and lien resolution services as well as office expenses directly related to the prosecution of the claim including the cost of long distance telephone calls, document reproduction and delivery. To the extent that other persons have claims as a result of this occurrence, I also authorize the law firm to pay out of my portion of the recovery my proportionate share of the common expenses. Moreover, I authorize the law firm to borrow the funds to pay all authorized legal expenses and advances as they are incurred and to treat the interest on such loans as a legal expense. *If there is no recovery, however, it is agreed that I will not be obligated to pay these expenses.*

3. **Property Adjusting Service:** With respect to any property damage claim which is resolved without filing a lawsuit, it is agreed that the law firm will only charge a property adjusting fee of $250.00 instead of a percentage of the total recovery on this claim. This property adjusting fee will be treated as a legal expense and paid out of my portion of the recovery on the bodily injury claim. If a lawsuit is filed, however, it is agreed that the law firm will be paid a percentage of the total recovery on the property damage claim (instead of the property adjusting fee) and reimbursed for its legal expenses as provided for in this contract.

4. **Health Care Expenses:** I understand that all related health care expenses, if any, will be paid out of my portion of the recovery after payment of the legal expenses and attorney's fee. In this regard, I authorize the law firm to assure the health care providers that their related charges will be paid out of my recovery and I authorize such payments to be made out of my recovery.

5. **Subrogation:** I understand that if I am obligated to reimburse out of the recovery on this claim any health insurance plan, disability insurance plan, or government program (including Medicaid and Medicare) for benefits paid as a result of this occurrence, it will be reimbursed out of my portion of the recovery after payment of the legal expenses and the attorney's fee.

**ROBERTS_000050**

6. **Association of Counsel and Division of Attorney Fees:**

      (a) I was referred to the law firm by _____ ("the associating attorney") to prosecute my claim. I understand that the law firm and the associating attorney will be assuming joint responsibility for the prosecution of my claim. If a recovery is made on my behalf, the total attorney's fees will be divided between them, based on their assumption of joint responsibility, as follows: 66.66% will be paid to the law firm and 33.33% will be paid to the associating attorney. My signature at the bottom of this contract indicates my understanding and consent to this association and division of the attorney fees. *It is agreed, however, that this will not increase the total attorney fees to be paid out of any recovery on this claim.*

      (b) I agree that the law firm may associate additional attorneys to assist in prosecuting this claim. *It is agreed, however, that the association of additional attorneys will not increase the total attorney fees to be paid out of any recovery on this claim.*

7. **Multiple Representation:** I request that the law firm represent all clients signing this or a similar contract with the law firm as a result of this occurrence. I understand the possible problems involved in the law firm representing multiple clients who may have differing interests (such as how any settlement money should be allocated among the clients). I realize that the law firm must act impartially as to all of us and that it cannot serve as an advocate for one of us against any of the others. I am willing to make independent decisions without the law firm's advice to resolve issues that arise among us. This includes deciding how money is to be allocated among us without any advice from the law firm. Knowing the possible conflict of interest, I consent to this multiple representation and I request that the law firm represent all of us.

8. **Special Power of Attorney:** It is agreed that my claim will not be settled without my consent. I do, however, authorize the law firm to endorse my name to all settlement as well as benefit checks and to deposit them in a trust account to expedite disbursement of these funds in a timely manner. Moreover, I authorize the law firm to endorse my name to all authorizations required for the release of information related to my claim.

9. **Termination:** It is agreed that this contract terminates upon the effectuation of a complete settlement of this claim, the entry of a final judgment by a trial court denying any recovery on this claim, or by mutual agreement. This contract may also be unilaterally terminated by me for good cause. Similarly, it may also be unilaterally terminated by the law firm if it becomes uneconomical for the law firm to prosecute this claim, if I fail to always provide the law firm with my current contact information, or for other good cause.

10. **Date:** This contract for legal services is entered into on ___*01 - 31 - 2013*___.

NAME: *James Richard Burgen*
By *Kay Burgen*

NAME: _____

ACCEPTED:
**ROBERTS & ROBERTS**

BY: _____

## CONTRACT FOR LEGAL SERVICES

I hereby employ **ROBERTS & ROBERTS** ("the law firm") to represent me in a claim for damages arising out of an occurrence on or about ___12-14-2012___ as provided in this contract.

1. **Attorney's Fee:**  I hereby assign, convey, and transfer to the law firm a percentage of the total recovery on this claim (or its present value), before any offset, to pay for the law firm's time devoted to prosecuting this claim.  This percentage shall be 33.33% if the recovery is obtained before a lawsuit is filed, 40% if the recovery is obtained after a lawsuit is filed, and 45% if the recovery is obtained after a notice of appeal is filed.  *If there is no recovery, however, it is agreed that I will not be obligated to pay the law firm for its time devoted to prosecuting this claim.*

2. **Legal Expenses:**  I authorize the law firm to incur all reasonable expenses necessary for the prosecution of this claim and to pay these expenses out of my portion of the recovery on this claim, after payment of the attorney's fee.  It is understood that these expenses include the cost of court filing fees, subpoenas, depositions, computer research, demonstrative evidence, exhibits, records, reports, transportation, lodging, and the service of other professionals including expert witnesses, consultants, engineers, investigators, property adjusters, medical record reviewers, researchers, court reporters, videographers, photographers, mediators, record retrieval and lien resolution services as well as office expenses directly related to the prosecution of the claim including the cost of long distance telephone calls, document reproduction and delivery.  To the extent that other persons have claims as a result of this occurrence, I also authorize the law firm to pay out of my portion of the recovery my proportionate share of the common expenses.  Moreover, I authorize the law firm to borrow the funds to pay all authorized legal expenses and advances as they are incurred and to treat the interest on such loans as a legal expense.  *If there is no recovery, however, it is agreed that I will not be obligated to pay these expenses.*

3. **Property Adjusting Service:**  With respect to any property damage claim which is resolved without filing a lawsuit, it is agreed that the law firm will only charge a property adjusting fee of $250.00 instead of a percentage of the total recovery on this claim.  This property adjusting fee will be treated as a legal expense and paid out of my portion of the recovery on the bodily injury claim.  If a lawsuit is filed, however, it is agreed that the law firm will be paid a percentage of the total recovery on the property damage claim (instead of the property adjusting fee) and reimbursed for its legal expenses as provided for in this contract.

4. **Health Care Expenses:**  I understand that all related health care expenses, if any, will be paid out of my portion of the recovery after payment of the legal expenses and attorney's fee.  In this regard, I authorize the law firm to assure the health care providers that their related charges will be paid out of my recovery and I authorize such payments to be made out of my recovery.

5. **Subrogation:**  I understand that if I am obligated to reimburse out of the recovery on this claim any health insurance plan, disability insurance plan, or government program (including Medicaid and Medicare) for benefits paid as a result of this occurrence, it will be reimbursed out of my portion of the recovery after payment of the legal expenses and the attorney's fee.

6. **Association of Counsel and Division of Attorney Fees:**

      (a) I was referred to the law firm by _____ ("the associating attorney") to prosecute my claim. I understand that the law firm and the associating attorney will be assuming joint responsibility for the prosecution of my claim. If a recovery is made on my behalf, the total attorney's fees will be divided between them, based on their assumption of joint responsibility, as follows: 66.66% will be paid to the law firm and 33.33% will be paid to the associating attorney. My signature at the bottom of this contract indicates my understanding and consent to this association and division of the attorney fees. *It is agreed, however, that this will not increase the total attorney fees to be paid out of any recovery on this claim.*

      (b) I agree that the law firm may associate additional attorneys to assist in prosecuting this claim. *It is agreed, however, that the association of additional attorneys will not increase the total attorney fees to be paid out of any recovery on this claim.*

7. **Multiple Representation:** I request that the law firm represent all clients signing this or a similar contract with the law firm as a result of this occurrence. I understand the possible problems involved in the law firm representing multiple clients who may have differing interests (such as how any settlement money should be allocated among the clients). I realize that the law firm must act impartially as to all of us and that it cannot serve as an advocate for one of us against any of the others. I am willing to make independent decisions without the law firm's advice to resolve issues that arise among us. This includes deciding how money is to be allocated among us without any advice from the law firm. Knowing the possible conflict of interest, I consent to this multiple representation and I request that the law firm represent all of us.

8. **Special Power of Attorney:** It is agreed that my claim will not be settled without my consent. I do, however, authorize the law firm to endorse my name to all settlement as well as benefit checks and to deposit them in a trust account to expedite disbursement of these funds in a timely manner. Moreover, I authorize the law firm to endorse my name to all authorizations required for the release of information related to my claim.

9. **Termination:** It is agreed that this contract terminates upon the effectuation of a complete settlement of this claim, the entry of a final judgment by a trial court denying any recovery on this claim, or by mutual agreement. This contract may also be unilaterally terminated by me for good cause. Similarly, it may also be unilaterally terminated by the law firm if it becomes uneconomical for the law firm to prosecute this claim, if I fail to always provide the law firm with my current contact information, or for other good cause.

10. **Date:** This contract for legal services is entered into on   _03 - 19 - 13_____.

NAME: _D Kay Burgin_____

NAME: _____

**ACCEPTED:**
**ROBERTS & ROBERTS**

BY: _____

ROBERTS_000053

## CONSENT TO REFER

I have executed a Contract for Legal Services retaining Roberts & Roberts in my personal injury claim. Roberts & Roberts has recommended that I be referred to Sheridan & Murray for possible prosecution of this claim. I consent to this referral. It is further agreed and understood that:

(a)     this referral will not increase the total attorney fees owed by me;

(b)     Roberts & Roberts will have joint responsibility for my representation with Sheridan & Murray;

(c)     if a recovery is made on my behalf, of the total attorney's fee provided for under the aforementioned Contract for Legal Services, (40%) will be paid to Roberts & Roberts and (60%) will be paid to Sheridan & Murray; and

(d)     if Sheridan & Murray declines to prosecute my claim, my aforementioned Contract for Legal Services with Roberts & Roberts as well as Roberts & Roberts' representation of me and related responsibilities shall be considered terminated at that time as well.

This Consent to Refer is entered into on ___09-16-2014___ and approved below by:

Roberts & Roberts

James Richard Burgen
                    Client
By: Kaye Burgen
under power of attorney

ROBERTS_000054

## CONSENT TO REFER

I have executed a Contract for Legal Services retaining Roberts & Roberts in my loss of consortium claim. Roberts & Roberts has recommended that I be referred to Sheridan & Murray for possible prosecution of this claim. I consent to this referral. It is further agreed and understood that:

(a)     this referral will not increase the total attorney fees owed by me;

(b)     Roberts & Roberts will have joint responsibility for my representation with Sheridan & Murray;

(c)     if a recovery is made on my behalf, of the total attorney's fee provided for under the aforementioned Contract for Legal Services, (40%) will be paid to Roberts & Roberts and (60%) will be paid to Sheridan & Murray; and

(d)     if Sheridan & Murray declines to prosecute my claim, my aforementioned Contract for Legal Services with Roberts & Roberts as well as Roberts & Roberts' representation of me and related responsibilities shall be considered terminated at that time as well.

This Consent to Refer is entered into on ___09-16 - 2014___ and approved below by:

_____
Roberts & Roberts

_____
Client

# EXHIBIT M



Sheridan
&Murray LLC
Protecting People

Thomas W. Sheridan
Direct Email:  tsheridan@sheridanandmurray.com

Admitted to PA & NJ Bars

January 9, 2019

*Via Email (randy@robertslawfirm.com)*

Randell C. Roberts, Esquire
Roberts & Roberts
118 W. Fourth Street
Tyler, TX  75701-4000

Re:   **James and Kay Burgess**

Dear Randy:

This is to follow up on our call last Friday, January 4, 2019, as well as your letter from that day.

As I expressed to you, I was very disappointed in your letter of January 4, 2019. While I respect the initial tone of the letter, it was clear to me that it was a "lawyer's letter" in which you were positioning yourself to advance a claim beyond what you were contractually entitled to receive from our unequivocal agreement.

**FIRST**, I can assure you that my dealings with you were totally above board and in no way an attempt to mislead you. Indeed, it is insulting to suggest otherwise. You mentioned that my exchange with my colleague, Neil Murray, gave you some concern, which is something I cannot understand. I shared that with you because there was nothing to hide. I wanted to make sure that our understanding was clear and could not be misunderstood so I ran it by Neil for that purpose. I was about to embark upon an undertaking which required the commitment of all the financial and human resources of my firm.

**SECOND**, I can also assure you that nothing relevant to our communications will be destroyed. I am sure that anything that I have will be extremely helpful and supportive of my position should it become necessary to use it.

PH: 215.977.9500
FX: 215.977.9800

Mailing address   424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia office   1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

SheridanAndMurray.com

**ROBERTS_000056**



Randell C. Roberts, Esquire
January 9, 2019
Page 2

**THIRD**, you sent me two forms of "Consent to Refer," one signed by James Richard Burgess and the second signed by Kay Sharace Burgess. Your letter suggests that you were sending them to me "again". I have no record of receiving these documents before your letter of January 4, 2019.

**FOURTH**, your letter suggests and the "Consent to Refer" forms state that your firm "will have joint responsibility," which was news to me and clearly an attempt to cover yourself based on the requirements of the Texas Rules of Professional Conduct. The assertion that you had "joint responsibility" is laughable; you demonstrated NO responsibility for the representation. Indeed, my firm engaged in significant time and expense to achieve what no one could have anticipated in February of 2018 when our email exchange and agreement was codified.

**FIFTH**, you question what you received for our agreement on February 7, 2018. On February 7, 2018, when our email exchange occurred and we unequivocally agreed to a referral fee limited to $320,000 on the claim against Clark Electric, I was faced with the following;

(a)   A hostile trial judge who was reluctant to provide the additional time for discovery necessary to develop our claims: *see my letter to Judge Younge on that same day (attached)*;

(b)   The clear prospect of having to spend hundreds of thousands of dollars and thousands of hours to do what was necessary to develop the claims;

(c)   The extensive expenditure of time and money might prove fruitless; and

(d)   The prospect that the Clark Electric claim might not get resolved (in fact, it was not resolved until months later).

In light of all of these factors and others, had we not clarified our referral arrangement to our mutual satisfaction and had there been an expectation of your receiving 40% of any additional fees, I would have clearly revisited the scope of my representation.

PH: 215.977.9500
FX: 215.977.9800

SheridanAndMurray.com

Mailing address   424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia office   1845 Walnut Street, 21st Floor
Philadelphia, PA 19103



Randell C. Roberts, Esquire
January 9, 2019
Page 3

**SIXTH**, we both know that in February 2018 you were delighted to agree to a $320,000 referral fee on this matter. Indeed, as your letter reflects, you were prepared to give up any fee if the workers compensation lien exhausted any recovery for the clients.

**SEVENTH**, when I agreed to take the case in 2014, there were only several months remaining on the statute of limitations. It was clear that you had sat on the clients' rights for close to two years and you were facing the prospect of losing the clients' rights to those claims. Moreover, your pursuit of the workers compensation claim and the deposition taken in that proceeding compromised the claims against the third-parties.

**FINALLY**, I consider my reputation of utmost importance, but I will not be bullied and insulted at your threats to "take further steps to protect your interests". I am not concerned about any legitimate steps you could pursue because, in the end, they will prove unproductive and of no benefit to you.

We have a valid and enforceable agreement limiting the referral fee to $320,000.

Please let me know how you wish to proceed.

Very truly yours,

Thomas W. Sheridan

PH: 215.977.9500
FX: 215.977.9800

SheridanAndMurray.com

Mailing address   424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia office   1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

**ROBERTS_000058**

Thomas W. Sheridan
Direct Email: tsheridan@sheridanandmurray.com

Admitted to PA & NJ Bars



Sheridan
Murray LLC

Protecting People

February 7, 2018

*Via Regular Mail and Facsimile (215) 686-9509*

The Honorable John Milton Younge
Philadelphia Court of Common Pleas
Trial Division - Civil
City Hall, Room 485
Philadelphia, PA 19107

      **Re:** *Burgess v. Clark Electrical Contractors, Inc., et. al.*
         **No. 1412-01813**
         *Burgess v. Patterson UTI, et. al.*
         **No. 1412-01798**

Dear Judge Younge:

    As you are aware, this firm represents Plaintiffs James and Kay Burgess ("Plaintiffs") in the above-captioned consolidated products liability actions involving twenty-eight (28) Defendants. This case arises from a December 14, 2012, incident where James Burgess was working on a drill rig when he was rendered a quadriplegic after he was struck by a defective light fixture that fell from the drill rig.

    Please accept this letter as Plaintiffs' request for this Court to schedule an in-person conference regarding the status and court management of the case. A conference with this Court is appropriate in order to: review the procedural history; inform the Court of the status of the case and the parties' efforts to conduct and complete written discovery in light of the number of parties involved; the complexity of the case; the number of depositions that will need to be taken; and the appropriate extensions of certain pending case deadlines. Moreover, the parties may be guided by this Court's insight regarding the benefits of the appointment of a discovery master. This requested conference will assist this Court and the parties with expeditiously and efficiently preparing this case for trial.

PH: 215.977.9500
FX: 215.977.9800

SheridanAndMurray.com

Mailing address   424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia office  1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

**ROBERTS_000059**

The Honorable John Milton Younge
*Burgess v. Clark Electrical, et. al.,* No. 1412-01813
*Burgess v. Patterson UTI, et. al.,* No. 1412-01798
February 7, 2018
Page 2



Sheridan
& Murray LLC
Protecting People

It is believed that other parties will join Plaintiffs in this request for a conference with Your Honor.

## The Procedural History of this Case

This case has been appealed to the Superior Court twice since Plaintiffs filed their complaint on December 12, 2014. On August 27, 2015 the Philadelphia Court of Common Pleas entered an order transferring this matter to the Susquehanna County Court of Common Pleas. On September 24, 2015, Plaintiffs appealed the order transferring venue to the Superior Court.

On February 3, 2017, the Superior Court reversed and held that venue was appropriate in Philadelphia. Defendants' also litigated in the trial court Motions seeking to transfer this matter on Forum Non Conveniens grounds. These motions were denied on March 3, 2017. The Defendants immediately appealed that order to the Superior Court, staying this case for a second time. On June 28, 2017, the Superior Court denied the Patterson Defendants' Petition for Review of the Opinion which found venue in Philadelphia to be proper. Subsequent to the June 28, 2017 resolution in the Superior Court, it took a considerable period for time for the case to be transferred back to Philadelphia from Susquehanna County. In short, this case was stayed by appeals before the Superior Court for twenty-one (21) months. Accordingly, it was effectively not until July 2017 that the parties were able to pursue discovery.[1]

## Discovery History

Extensive discovery has been conducted in this case and this will need to continue in keeping with the complexity of the various negligence and product liability claims, as well as the significant number of Defendants involved in this case. Significant written discovery and document productions have already taken place in this matter. Defendants Patterson, Cabot, and NOV have collectively produced over 28,000 documents and have substantively responded to both document requests and interrogatories. Defendant Dialight has produced 3,500 documents. The Plaintiffs have produced well over 1,000 documents and have responded to several hundred interrogatories.

PH: 215.977.9500
FX: 215.977.9800

SheridanAndMurray.com

Mailing address   424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia office   1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

ROBERTS_000060

The Honorable John Milton Younge
*Burgess v. Clark Electrical, et. al.,* No. 1412-01813
*Burgess v. Patterson UTI, et. al.,* No. 1412-01798
February 7, 2018
Page 3



Sheridan & Murray LLC
Protecting People

It is anticipated at this time that the parties will need to conduct the depositions of approximately 40 witnesses in this case, including critical liability depositions. Many of the witnesses are located in distant jurisdictions, including Dallas, TX, Houston, TX, Colorado, Pittsburgh, PA, and Erie, PA, to name a few. The parties also anticipate the need to conduct depositions of numerous representatives from Defendant Dialight Corporation, which is headquartered in the United Kingdom. It has been and will continue to be necessary to have letters rogatory issued to pursue depositions, subpoenas and other third-party discovery in these distant jurisdictions.     Two depositions of independent witnesses are scheduled this week in Houston, TX.

It has been difficult, to date, to schedule depositions of party witnesses because written discovery is outstanding, and the parties do not wish to risk the need to conduct multiple depositions of witnesses that would be necessitated by the delayed production of documents. Due to the delay in receiving responsive and complete discovery, the parties will not be able to complete the depositions of witnesses by April 2, 2018, the current discovery deadline [2]

## Conclusion

In summary, this is a complex, catastrophic injury case with complex theories of liability, including negligence and recklessness, strict product liability claims, including design and manufacturing defects and failure to warn, involving twenty-eight (28) Defendants who are located throughout the United States and one Defendant headquartered in the United Kingdom.

The procedural history of this case involves two appeals to the Superior Court, which stayed this matter in the trial Court for almost two (2) years (and which has allowed approximately six (6) months for discovery thus far). While written discovery is nearing completion, there is a pending discovery motion before this Court relating to the Defendant Dialight who manufactured the light which fell and catastrophically injured the Plaintiff, James Burgess.

The parties are seeking a conference with Your Honor to review the status of this matter, consider the appointment of a discovery master, and to collaborate with the Court and all counsel regarding a revised scheduling order which will afford the parties the

PH: 215.977.9500
FX: 215.977.9800

SheridanAndMurray.com

Mailing address   424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia office   1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

**ROBERTS_000061**

The Honorable John Milton Younge
*Burgess v. Clark Electrical, et. al.,* No. 1412-01813
*Burgess v. Patterson UTI, et. al.,* No. 1412-01798
February 7, 2018
Page 4



Sheridan & Murray LLC
Protecting People

opportunity to complete discovery in an expeditious and cost-efficient fashion. Plaintiffs'
counsel respectfully seek Your Honor's consideration and indulgence in this request.

Respectfully Submitted,


THOMAS W. SHERIDAN
NEIL T. MURRAY

TWS/as
cc (via email and fax):
    Josh Greenbaum, Esquire
    Robert Devine, Esquire
    Rodger Puz, Esquire
    James Doherty, Esquire

---

[1] Currently, the deadline for fact discovery is April 2, 2018 and was extended once by
the Honorable Lisa Rau without a motion during a prior discovery Court hearing.

[2] By way of example, the parties have encountered difficulty in obtaining timely and
complete written discovery responses and documents from Defendant Dialight Corporation.
Defendant Dialight is a critical party because it designed, manufactured, and distributed the
defective light that paralyzed Mr. Burgess. The parties have been unable to proceed with key
liability depositions because critical discovery from Defendant Dialight remains incomplete.

Plaintiffs have been diligent with discovery. Initially, the Plaintiffs served Interrogatories
and Requests for Production of Documents upon Defendant Dialight on May 31, 2017 (which
was even before matters were fully resolved in the Superior Court). Defendant Dialight's
responses were due on or before June 30, 2017. After follow-up with Dialight's counsel, no
response was provided which required Plaintiffs to file a motion to compel Dialight's answers to
Plaintiffs' discovery. On August 22, 2017 an Order was entered by agreement whereby Dialight
was to provide "full and complete answers" to Plaintiffs' discovery on or before October 13,
2017. Dialight provided inadequate and incomplete discovery responses and an incomplete
document production on October 19, 2017. Plaintiff filed another motion to compel on
December 8, 2017. An order was subsequently entered on December 27, 2017, requiring
Dialight to address the deficiencies by January 15, 2018. This deadline passed and Dialight
failed to comply with the Court Order. On January 31, 2018, the parties were before Your Honor

PH: 215.977.9500
FX: 215.977.9800

SheridanAndMurray.com

Mailing address   424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia office   1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

ROBERTS_000062

The Honorable John Milton Younge
*Burgess v. Clark Electrical, et. al.,* No. 1412-01813
*Burgess v. Patterson UTI, et. al.,* No. 1412-01798
February 7, 2018
Page 5



on another motion to compel because Dialight did not provide substantive answers to interrogatories and document requests, and has continued to improperly redact key documents. Following argument on January 31, 2018, Dialight agreed to provide substantive supplemental answers to discovery, and Your Honor carried the Motion to February 14, 2018. To date, the parties are still not in possession of Dialight's full and complete discovery responses. This information is necessary prior to the parties conducting critical depositions in this case.

PH: 215.977.9500
FX: 215.977.9800

SheridanAndMurray.com

Mailing address   424 S. Bethlehem Pike, Third Floor
Fort Washington, PA 19034

Philadelphia office   1845 Walnut Street, 21st Floor
Philadelphia, PA 19103

**ROBERTS_000063**