UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

SHERIDAN AND MURRAY, LLC and
THOMAS W. SHERIDAN

                   Plaintiffs,

v.

ROBERTS AND ROBERTS, and
RANDELL C. ROBERTS,

                   Defendants.

Civil Action No. 19-467 (RBS)



## PLAINTIFFS' SURREPLY IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Plaintiffs, Sheridan and Murray, LLC, and Thomas W. Sheridan (collectively, "Plaintiffs"), by and through their undersigned counsel hereby file this surreply in further opposition to Defendants Roberts and Roberts, and Randell C. Roberts' (collectively "Defendants") motion to dismiss for lack of personal jurisdiction or, in the alternative, motion to transfer venue to the Eastern District of Texas.

### I.    INTRODUCTION

In accordance with this Court's policies and procedures regarding reply and surreply briefs,[1] Plaintiffs are filing this surreply brief to draw the Court's attention to controlling authority not previously cited. Additionally, given the factual complexities underlying Defendants' Motion to Dismiss, Plaintiffs are also requesting oral argument.

---

[1] This Court's policies and procedures state that "[r]eply and surreply briefs should be filed only when absolutely necessary and only in circumstances where the parties wish to draw Judge Surrick's attention to controlling authority not previously cited by the parties."

96230817 v1-6/7/19

In sum, the Plaintiffs seek to draw this Court's attention to two issues: (1) the Third Circuit's requirement that, when addressing motions to dismiss for lack of jurisdiction, this Court must accept the Plaintiffs' allegations as true and construe disputed facts in the Plaintiffs' favor;[2] and (2) the Defendants' improper reliance on 28 U.S.C. §1404(a) to request a transfer before the potential key witnesses have been established.

With respect to the first issue, highlighting this standard is necessary because the Defendants' reply brief spends thirteen pages contesting the factual evidence addressed in Plaintiffs' response brief. See ECF 12, Defendants' Reply Brief at 1-13. More importantly, this standard bolsters the significance of the June 24, 2013, email through which the Defendants explicitly solicited the Plaintiffs to accept the referral of the underlying lawsuit. See ECF 11-2 at 20, Exhibit N to Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss. While the Defendants' reply brief extensively contests the Plaintiffs' factual assertions—assertions that must be construed in Plaintiffs' favor—nowhere do the Defendants address the glaring fact that it was the Defendants, and not the Plaintiffs, that unambiguously solicited the referral of the underlying lawsuit.

With respect to the second issue, transfer under 28 U.S.C. § 1404(a) is inappropriate because the potential key witnesses are unknown until the Defendants answer the complaint. Evidenced by its text, §1404(a) transfer requests are heavily governed by witness convenience. Id. (stating that transfer is proper "for the convenience of parties and witnesses"). However, as

---

[2] This surreply is necessitated by the Defendants' twenty-four-page reply brief which, contrary to this Court's policies and procedures, was neither "absolutely necessary" nor did it highlight any "controlling authority not previously cited." Instead of citing controlling authority, the Defendants spent thirteen pages contesting the Plaintiffs' factual recitation which Plaintiffs supported by documents that speak for themselves and eleven pages reiterating the arguments the Defendants already made in their initial brief without citing any new binding authority. See Defendants' Reply Brief at ECF 12.

2

explained fully below, witness convenience cannot be weighed until all potential witnesses are identified, and potential witnesses cannot be identified until the Defendants answer the amended complaint. When they do answer, the Defendants will almost certainly plead counterclaims or affirmative defenses accusing Plaintiff Sheridan of misrepresenting the status of the underlying lawsuit. If the status of the underlying lawsuit is placed at-issue, then the Pennsylvania residents involved in the underlying lawsuit will become key witnesses. Addressing this issue is necessary because, through their reply brief, the Defendants again argue that transfer to Texas is warranted under §1404(a) for the convenience of purportedly key witnesses. However, the Defendants ignore controlling Third Circuit authority stating that Courts may consider "all relevant factors" before granting transfer under §1404(a). Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

## II. DISCUSSION

Below, this brief first addresses the controlling law requiring this Court to construe all factual disputes in the Plaintiffs' favor. Then, this brief explains why the Defendants' transfer request under 28 U.S.C. § 1404(a) should be denied because the Court cannot consider all the relevant factors until the Defendants answer the amended complaint.

### A. When Viewed In The Light Most Favorable To Plaintiffs, The Defendants' Pennsylvania Contacts Are Sufficient For An Exercise of Personal Jurisdiction

The Defendants' efforts to confuse the facts through their reply brief are misplaced. In the Third Circuit, "[i]t is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's allegations as true, and is to construe disputed facts in favor of the plaintiff." Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009); see also Estate of Thompson v. Phillips, 741 F. App'x 94, 95 n.1 (3d Cir. 2018) (unpublished and nonbinding) (stating that courts' review of "12(b)(2) motion[s] to dismiss 'must accept' all of their

3

[plaintiff's] allegations as true and construe factual conflicts in their favor.").[3] While the 2018 Phillips case is unpublished and not precedential, it highlights the continued applicability of this standard despite the Defendants' repeated contentions that the 12(b)(2) standard has somehow been narrowed. See e.g., ECF 12, Defendants' Reply Brief at 17-18 (citing law review articles for the proposition that the Third Circuit authority on which Plaintiffs rely have somehow been implicitly overturned).[4]

Accordingly, the Defendants' efforts to create factual issues based on the evidence Plaintiffs attached to their response brief—and which the Defendants tellingly omitted from their initial brief -are irrelevant. The facts at-issue all speak for themselves because they are taken directly from the documents the parties provided as evidence. Based on the law cited above, and to the extent the Court must interpret any factual issues not apparent on their face, the Court must interpret those issues in the Plaintiffs favor. Because the factual argument in the Defendants' Reply brief contradicts the Plaintiffs' factual interpretations, it should be disregarded. Accepting the Plaintiffs' factual allegations as true leads to findings that:

- The Defendants repeatedly contacted Pennsylvania residents and entities while investigating the underlying lawsuit. See ECF 11, Plaintiffs' Response Brief at 3-5;

---

[3] See also Downs v. Andrews, 2014 U.S. Dist. LEXIS 175311, at *2 n.1 (E.D. Pa. 2014) (stating that, when evaluating motions to dismiss for lack of jurisdiction, factual "disputes created by the affidavits, documents, or other record evidence submitted for the court's consideration are resolved in favor of the non-moving party."); Live Face on Web, LLC v. Highview Travel, LLC, 2012 U.S. Dist. LEXIS 8697, at *12 (E.D. Pa. 2012) (same); Cintron Bev. Grp., LLC v. Aoun, 2011 U.S. Dist. LEXIS 82141, at *6 (E.D. Pa. 2011) (same); Ryan v. Union Mut. Fire Ins. Co., 2011 U.S. Dist. LEXIS 93713, at *4 (E.D. Pa. 2011) (same); Friedman v. Isr. Labour Party, 957 F. Supp. 701, 706 (E.D. Pa. 1997) (same).

[4] At page 16 of their response brief, the Plaintiffs cited Carteret Sav. Bank, FA v. Shushan, to demonstrate that factual disputes must be construed in Plaintiffs' favor. 954 F.2d 141, 142 n.1 (3d Cir. 1992) (stating that, when reviewing 12(b)(2) motions to dismiss for lack of personal jurisdiction courts "must . . . construe disputed facts in favor of the plaintiff."). However, Carteret is a 1992 opinion. The Defendants' Reply brief claims that, since 2011, "the U.S. Supreme Court significantly altered the personal jurisdictional landscape." ECF 12 at 17. Thus, Plaintiffs wanted to highlight that, even since 2011, the Third Circuit has made no indication of changing the deference courts must give to plaintiff's factual contentions.

4

96230817.v1-6/7/19

- The Defendants attempted to reach a settlement in the underlying lawsuit with Pennsylvania's Christopher Clark and Mr. Clark's Pennsylvania company. Id. at 6–7;

- Defendant Roberts solicited Plaintiff Sheridan's advice regarding the underlying lawsuit. Id. at 7–8;

- After soliciting Plaintiff Sheridan's advice, Defendant Roberts requested that Plaintiff Sheridan act as co-counsel in the underlying lawsuit. Id. at 9–12;

- Defendant Roberts specifically requested that Plaintiff Sheridan accept the referral of the underlying lawsuit. Id. at 13; and

- After Plaintiff Sheridan agreed to accept the referral, the Defendants represented to third parties that the Defendants retained joint responsibility for the underlying lawsuit. Id. at 14–15.

More importantly, nowhere in the Defendants' approximately 100-total-pages of briefing and declarations do they address the single most probative piece of evidence: Defendant Roberts' June 24, 2014, email in which he explicitly solicited Plaintiff Sheridan to accept the referral of the underlying lawsuit:

**From:** Randell (Randy) C. Roberts <randy@robertslawfirm.com>
**Sent:** Tuesday, June 24, 2014 3:23 PM
**To:** Sheridan, Thomas W. <tsheridan@sheridanandmurray.com>
**Subject:** RE: James Burgess

Hi Tom,
I assume that since we never got back together that you didn't see a way that we could work together to help this poor fellow. If I waived my financial interest in the case, I still see a way that you or an attorney in Pennsylvania could make a good fee while helping the client in this case. If you are interested in handling this case by yourself or have any recommendations on an attorney I might contact in Pennsylvania for this purpose, please let me know. Thanks, and I hope all has been going well for you. --- Randy

ECF 11–2 at 20, Exhibit N to Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss. This email is the **first** time either of the parties ever raised the issue of the referral of the underlying lawsuit. Construing this email in Plaintiffs' favor, the Court must find that the Defendants solicited the Plaintiffs to accept the referral of the underlying lawsuit. Applying this fact to the law outlined

5

in Plaintiffs' Response brief mandates a finding of personal jurisdiction over the Defendants. Even if the Defendants had a viable contrary explanation contending this email somehow fails to demonstrate that the Defendants solicited the Plaintiffs to accept the referral, the Court would have to disregard it in favor of Plaintiffs' interpretation. Such a step is unnecessary, however, as the Defendants failed to provide any such explanation of this email in either their initial brief or their twenty-four-page reply brief.

### B. The Court Cannot Adequately Evaluate Whether, Under 28 U.S.C. § 1404 (a), Transfer to The Eastern District of Texas is Appropriate Because The Key Witnesses Remain Unknown

At this juncture, the Court should deny the Defendants' motion to transfer under 28 U.S.C. §1404(a) because the Defendants have not answered the amended complaint. Transfer under §1404(a) is largely governed by witness convenience, and the Defendants' answer will dictate whether key factual witnesses reside in Pennsylvania.

Although the Defendants conflate their arguments for their request to transfer this case to Texas, it is important to note the Defendants request a transfer on two separate and distinct grounds with two separate and distinct standards. Specifically, the Defendants request transfer under 28 U.S.C. § 1631 and 28 U.S.C. § 1404(a). Transfer under §1631 may be granted only if the Court finds "that there is a want of jurisdiction" over the Defendants. Thus, if the Court determines it has personal jurisdiction over the Defendants after construing all the factual disputes in the Plaintiffs' favor, then the Court is not permitted to transfer this case under 28 U.S.C. § 1631.

Conversely, transfer is permitted under 28 U.S.C. § 1404(a) even if this Court determines it has personal jurisdiction over the Defendants. However, because transfer decisions under §1404(a) disrupt plaintiffs' chosen forums despite the existence of jurisdiction, they should be carefully evaluated to ensure they advance the interests of justice. The Third Circuit highlighted the careful consideration courts must afford §1404(a) transfer requests by suggesting that courts

consider "**all relevant factors** to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by a transfer to a different forum." Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (emphasis added); see also Ozark Motor Lines, Inc. v. Boren, 2019 U.S. Dist. LEXIS 52603, at *9 (W.D. Pa. 2019) ("When ruling on a motion under §1404(a), the court is free to consider all relevant factors, and the Third Circuit directs district courts to a list of certain private and public interest factors.") (internal quotations omitted). As evidenced by its text, a key factor for evaluating §1404(a) transfer requests is the convenience of the witnesses. 28 U.S.C. §1404(a) (stating that transfer is appropriate "for the convenience of parties and witnesses"). Therefore, §1404(a) transfer requests cannot be adequately evaluated until the parties' claims and defenses are established because the parties' claims and defenses dictate who may be key witnesses.

In this case, the Defendants repeatedly assert that transfer to Texas is appropriate because there are key factual witnesses in Texas.[5] This argument, based on witness convenience, clearly relates to the Defendants' transfer request under §1404(a). However, this Court cannot adequately weigh witness convenience until the categories of potential key witnesses are established. Simply put: the Court cannot weigh witness convenience until it knows who may be witnesses; the Court cannot know who may be witnesses until the Defendants answer the complaint; and, as explained below, the Court has reason to believe the Defendants will, in fact, plead counter-claims or affirmative defenses causing numerous Pennsylvania residents to become key witnesses. Here, based on Defendant Roberts' Declaration, the Plaintiffs believe the Defendants will plead

---

[5] In their reply brief, the Defendants reiterated their argument that the Burgesses, who are located in Texas, are somehow key witnesses in this contract case. See ECF 12, Defendants' Reply Brief at 13 14. However, the Burgesses had absolutely nothing to do with the referral fee agreement in this case. The Burgesses were not parties to the referral fee agreement; were not involved in its negotiation or creation; and have no knowledge of its terms Thus, contrary to the Defendants' assertions, the Burgesses are not "key witnesses."

7

counterclaims or affirmative defense that cause numerous Pennsylvania residents to become key witnesses.

Plaintiffs anticipate the Defendants will plead counterclaims or affirmative defenses alleging that Plaintiff Sheridan misrepresented the economic viability of the underlying lawsuit on February 7, 2018. A central issue in this case is the Defendants' explicit agreement, made in writing on February 7, 2018, to accept a maximum referral fee of $320,000. See ECF 11-4, Declaration of Thomas W. Sheridan at ¶¶ 44–46 (explaining that, on February 7, 2018, Defendant Roberts reaffirmed his 2014 agreement to accept a maximum referral fee of $320,000); see also ECF 11-3 at Exhibits AA & BB (containing the February 7, 2018, emails through which Defendant Roberts reiterated his agreement to accept a maximum referral fee of $320,000).

Through his Declaration, Defendant Roberts states his February 7, 2018, agreement to a $320,000 maximum referral fee was based on Plaintiff Sheridan's misrepresentations about the status of the underlying lawsuit. See ECF 12-1, Randell C. Roberts Second Amended Declaration at ¶¶ 59–61 (explaining that he agreed to the February 7, 2018, email based on Plaintiff Sheridan's "pessimistic status report" and Defendant Roberts "only agreed to change our referral agreement because Mr. Sheridan represented to me that a change was necessary for James and Kay Burgess to continue to have an economically viable lawsuit."). Essentially, Defendant Roberts claims Plaintiff Sheridan misled Defendant Roberts into accepting a reduced fee by misrepresenting that the underlying lawsuit was no longer economically viable.[6] Based on these assertions, it is apparent that, when the Defendants answer the amended complaint, they will include a counterclaim or affirmative defense alleging fraud or misrepresentation.

---

[6] Plaintiffs contest Defendant Roberts contentions and maintain that the February 7, 2018, conversation and email exchange reiterated the original oral referral fee agreement, and was not a new agreement.

8

96230817 v1-6/7/19

If the Defendants claim Plaintiff Sheridan misrepresented the status of the underlying lawsuit on February 7, 2018, then the underlying lawsuit's status and economic viability will be placed at-issue. The factual discovery necessary to establish the underlying lawsuit's status on February 7, 2018, will almost exclusively involve Pennsylvania witnesses. Most obviously, each of the defense attorneys in the underlying lawsuit will be key witnesses because they can testify regarding the underlying lawsuit's settlement posture and status as of February 7, 2018. Specifically, there are at least five defense attorneys that would be key witnesses:

- The Dialight Defendants were represented by Robert G. Devine, who is based in White & Williams LLP's Philadelphia office;

- The Patterson Defendants were represented by Rodger Puz and Jeff Quinn, who are respectively based in Dickie, McCamey & Chilcote P.C.'s Pittsburgh and Philadelphia office;

- The National Oilwell Varco Defendants were represented by Josh M. Greenbaum, who is based in Cozen O'Connor P.C.'s Philadelphia office; and

- The Clark Defendants were represented by James A. Doherty, Jr., who is based in Scanlon, Howley & Doherty P.C.'s Scranton office.

Moreover, the attorneys listed above are only the primary defense attorneys for their respective clients. Aside from these primary attorneys, each set of defendants had a team of Pennsylvania attorneys working on their defense. More significantly, none of these critical third-party witnesses could be compelled to appear in Texas for trial. Each of them, however, can be subpoenaed in this forum. Thus, if the status of the underlying lawsuit as of February 7, 2018, is placed at issue (which it almost certainly will be), then the key witnesses with respect to that issue will be the Pennsylvania defense attorneys from the underlying lawsuit.

Conversely, the "key witnesses" the Defendants here urge the Court to consider are not key witnesses whatsoever. Other than Plaintiff Sheridan and Defendant Roberts, there are no other witnesses with information bearing on the terms of the referral fee agreement that Plaintiff

9

96230817.v1-6/7/19

Sheridan and Defendant Roberts reached in 2014. The Burgesses, who the Defendants claim are "key witnesses," are not parties to the at-issue referral fee agreement nor did they play any role in negotiating that agreement. It is hard to imagine what information the Burgesses possess that would cause them to be "key witnesses" in this action. However, assuming the Defendants allege fraud or misrepresentation as expected, numerous Pennsylvania residents will have information key to that issue.

Therefore, because witness convenience is central to transfer requests under 28 U.S.C. §1404(a), and Courts should consider "all relevant factors" when evaluating §1404(a) transfer requests, this Court should deny the Defendants transfer request under §1404(a). Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995). The Court cannot weigh witness convenience until the categories of potential key witnesses are established, and those categories will not be established until after the Defendants answer the amended complaint.

## III. CONCLUSION

The Defendants filed a lengthy and unnecessary reply brief that failed to contain any new binding authority as required by this Court's procedure. With thirteen-pages of factual argument, which is largely irrelevant given the controlling standard, the Defendants' Reply brief necessitated the filing of this surreply to highlight the binding authority mandating that all factual disputes shall be construed in the Plaintiffs' favor for purposes of this pending Motion.

Moreover, while seemingly taking issue with nearly all of Plaintiffs' factual contentions, the Defendants failed to address the single most important fact: that it was the Defendants who, on June 24, 2014, unambiguously solicited the Plaintiffs to accept the referral of the underlying lawsuit. Accepting all of Plaintiffs' allegations as true, and construing all factual disputes in Plaintiffs' favor, mandates a determination that Pennsylvania has specific personal jurisdiction over the Defendants.

10

96230817 v1-6/7/19

Finally, the Defendants' request to transfer this case to the Eastern District of Texas must be denied. The Defendants' transfer request under 28 U.S.C. § 1632 must be denied because this Court does have personal jurisdiction over the Defendants. Moreover, the Defendants' transfer request under 28 U.S.C. § 1404(a) should be denied because the Court cannot weigh witness convenience until the potential witnesses are established through the filing of the Defendants' answer. For the foregoing reasons, Plaintiffs respectfully request that the Defendants' motion be denied in its entirety. Plaintiffs also request that oral argument be granted because it will assist the Court's ultimate determination by providing an opportunity for the Court to clarify any issues not clear through the parties' briefings.

        Respectfully submitted,

*[signature]*

Abraham C. Reich, Esquire
Beth L. Weisser, Esquire
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103
(215) 299-2000 (telephone)
(215) 299-2150 (fax)
areich@foxrothschild.com
bweisser@foxrothschild.com

    and

Mark W. Tanner, Esquire
Feldman Shepherd Wohlgelernter Tanner Weinstock & Dodig LLP
1845 Walnut Street, 21st Floor
Philadelphia, PA 19103
(215) 567-3000
mtanner@feldmanshepherd.com

*Attorneys for Plaintiffs Sheridan and Murray, LLC and Thomas W. Sheridan*

Date: June 7, 2019