IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS W. SHERIDAN and<br>SHERIDAN AND MURRAY, LLC,<br><br>*Plaintiffs,*<br><br>v.<br><br>RANDELL C. ROBERTS and<br>THE ROBERTS LAW FIRM,<br><br>*Defendants.* | Case No. 2:19-cv-00467-JDW |

## MEMORANDUM

This is a dispute between two law firms, one in Texas and one in Pennsylvania, about a referral fee. In this Motion, the Texas law firm and its principal argue that they are not subject to personal jurisdiction in Pennsylvania. The Court concludes that the law firm is subject to personal jurisdiction but the individual defendant is not. Defendants also ask to transfer this case to Texas, but the Court declines to do so.

### I.  FACTUAL BACKGROUND

Randell Roberts is a partner at The Roberts Law Firm (the "Roberts Firm"), a firm located in Tyler, Texas. (ECF No. 7 ¶¶ 5, 6.) In 2013, James and Kay Burgess (the "Clients") hired the Roberts Firm to represent them in connection with injuries that James Burgess suffered while working on an oil rig in Pennsylvania. (ECF No. 9-2 ¶ 31.) As part of that representation, the Roberts Firm identified potential claims against Clark Electric Contractors, which would have to be brought in Pennsylvania. (*Id.* ¶ 35.)

Mr. Roberts met Thomas Sheridan at a seminar in California in October 2013. (*Id.* ¶ 36.) During that seminar, they discussed the Burgess's case. (*Id.* ¶ 37.) In November 2013, Mr.

Sheridan followed up with Mr. Roberts about the Burgess's case via e-mail. (*Id.* Ex. B.) Mr. Roberts then sent information about the Clients' claims to Mr. Sheridan. (*Id.* ¶ 41.) In September 2014, Mr. Sheridan and Mr. Roberts spoke by phone and discussed a referral fee arrangement. Mr. Sheridan sent a proposed referral fee agreement and engagement letters for the Clients to engage Sheridan & Murray. (*Id.* ¶¶ 42-46.) The Clients ultimately executed Consents to Refer, which authorized the Roberts Firm to refer their case to Sheridan & Murray. (*Id.* ¶ 49 & Ex. G.) However, it does not appear that any of the Parties ever signed the referral fee agreement.

The Parties now have a dispute about the terms of their referral arrangement. Plaintiffs claim that the referral agreement that Mr. Sheridan sent to Mr. Roberts in 2014 was inaccurate. In 2018, Mr. Sheridan and Mr. Roberts spoke about the terms of the referral agreement and allegedly clarified or altered the terms of that arrangement. Mr. Sheridan sent a confirmatory email to Mr. Roberts, which Mr. Roberts acknowledged. (*Id.* ¶¶ 60-61 & Ex. H.) However, Defendants dispute the validity of that modification.

## II. LEGAL STANDARD

To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the court's personal jurisdiction over the defendant. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). The court's review of a motion to dismiss under Rule 12(b)(2) is not limited to the pleadings, and the court may rely on sworn affidavits submitted by the parties or other competent evidence. *O'Connor v. Sandy Land Hotel Co., Ltd.*, 396 F.3d 312, 316 (3d Cir. 2007). In the absence of an evidentiary hearing, the plaintiff need only present a prima facie case of personal jurisdiction, and the court must take all of the plaintiff's factual allegations as true and resolve all factual disputes in the plaintiff's favor. *See Eurofins Pharma U.S. Holdings v. BioAlliance Pharma SA*, 623 F.3d 147,

155 (3d Cir. 2010). The burden then shifts to the defendant to establish that the exercise of jurisdiction would be unreasonable. *Carteret Sav. Bank v. Shushan,* 954 F.2d 141, 150 (3d Cir.1992).

Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction over an out-of-state defendant requires that the defendant have "minimum contacts" with the forum state such that exercising jurisdiction would "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). Personal jurisdiction can arise under two distinct theories: general jurisdiction and specific jurisdiction. *See Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 334 (3d Cir. 2009). Plaintiffs do not contend that this Court has general jurisdiction over Defendants, therefore the Court limits its analysis to specific jurisdiction.

For specific jurisdiction, the Third Circuit uses a three-part test to determine "minimum contacts": (1) a nonresident defendant must "purposefully direct" his activities at a resident of the forum, (2) the injury arises from, or relates to, those activities, and (3) the exercise of jurisdiction otherwise comports with fair play and substantial justice. *D'Jamoos ex rel. Estate of Weinegroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009). Questions of specific jurisdiction also depend on the particular claims asserted. *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 150 (3d Cir. 2001). In contracts cases, a court must consider the "totality of the circumstances" in evaluating minimum contacts, including the agreement terms, the place and character of prior negotiations, contract performance, contemplated future consequences, and the resolution of post-contract difficulties. *See Remick v. Manfredy*, 238 F.3d 248, 256 (3d Cir. 2001); *Gen. Elec. Co.*, 270 F.3d at 150.

## III. ANALYSIS

### A. The Court Has Specific Jurisdiction Over The Roberts Firm

The totality of the circumstances supports this Court's specific jurisdiction over the Roberts Firm. *First*, the Roberts Firm purposefully directed its activities at Sheridan & Murray. It communicated with Sheridan & Murray prior to entering into the referral agreement and after its formation. *See Strick Corp. v. A. J. F. Warehouse Distributors, Inc.*, 532 F. Supp. 951, 959 (E.D. Pa. 1982) (to determine whether a non-resident defendant's contracting with a resident involved "purposeful" activity, "courts should look to whether the non-resident defendant initiated the deal, attempted to alter the terms of the contract, or conducted significant negotiations with the plaintiff."). Indeed, those subsequent communications, and whether the e-mail exchange in 2018 between Mr. Roberts and Mr. Sheridan constitutes an enforceable agreement, is at the crux of this case. Moreover, by referring the Clients to Sheridan & Murray and entering into a referral agreement, the Roberts Firm set in motion litigation in Pennsylvania from which the Roberts Firm hoped to profit. *See Jaffe v. Julien*, 754 F. Supp. 49, 53 (E.D. Pa. 1991) (explaining that the "essence" of a referral agreement is the performance of legal services in the forum in which they are performed).

In Defendants' Motion, they minimize the significance of the litigation in Pennsylvania by describing it as Sheridan & Murray's "unilateral activity." (ECF No. 9-1 at 7.) That argument minimizes the Roberts Firm's own role, however. Sheridan & Murray did not act unilaterally; it acted exactly as the Roberts Firm intended when the Roberts Firm referred the case to Sheridan & Murray. Defendants also argue that the mere fact that Sheridan & Murray discharged its obligations in Pennsylvania is not enough to subject them to personal jurisdiction. (*Id.* at 7-8 and citing *Picot v. Weston*, 780 F.3d 1206, 1213 (9th Cir. 2015)). Again, that argument misses the

point, however. The Roberts Firm was not geographically agnostic about where Sheridan & Murray dispatched its duties. Indeed, the very point of the referral agreement was performance of the contract in Pennsylvania—and nowhere else.

Defendants also argue that the contractual relationship between the Roberts Firm and Sheridan & Murray does not, in and of itself, create personal jurisdiction. (*Id.* at 9-10.) While contracting with a Pennsylvania citizen, alone, will not automatically establish sufficient minimum contacts in Pennsylvania (s*ee Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp.2d 767, 779 (E.D. Pa. 2012)), the circumstances here exceed the mere existence of a contract because there was an intention between the Roberts Firm and Plaintiffs "to establish a common venture extending over a substantial period of time" in Pennsylvania. *Gen. Elec.*, 270 F.3d at 151. That an agent of the Roberts Firm was never physically present in Pennsylvania is inconsequential: The Supreme Court has made clear that electronic communications have "obviated the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 2184 (1985). Moreover, the Parties engaged in post-contractual communications involving the modification of the contract. That modification now lies at the crux of this case.

Finally, Defendants argue that the Roberts Firm chose to stay out of Pennsylvania when it elected to refer the case to Pennsylvania rather than litigate it in Pennsylvania itself. The Court disagrees. That argument ignores the economic reality here. Defendants could have told the Clients that they do not handle litigation in Pennsylvania and referred the case to Sheridan & Murray for no fee. Instead, they elected to enter into an agreement and sought to profit from the litigation in Pennsylvania. Having done so, and having engaged in negotiations with Sheridan & Murray about the terms of the referral agreement in 2014 and again in 2018, the Roberts Firm has purposefully directed activities at Sheridan & Murray, a Pennsylvania resident.

5

*Second*, the dispute at hand—the amount of referral fee that Sheridan & Murray owes to the Roberts Firm—arises directly from the activities that the Roberts Firm directed at Sheridan & Murray. Notably, Defendants do not argue to the contrary.

*Third*, the exercise of personal jurisdiction over the Roberts Firm comports with traditional notions of fair play and substantial justice. Minimum contacts render jurisdiction "presumptively constitutional, and the defendant must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 324 (3d Cir. 2007) (citing *Burger King,* 471 U.S. at 477) (internal quotations omitted); *see also Grand Entm't Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3d Cir.1993) ("The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy."). In conducting this inquiry, the Court can assess what burden, if any, the exercise of jurisdiction would place on the defendant, as well as the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the states' shared interest in furthering fundamental substantive social policies. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980).

Here, Pennsylvania has an interest in adjudicating a dispute about a referral fee agreement to which one of its citizens is a party, that was substantially performed in Pennsylvania, and that prompted litigation in its courts. In addition, Plaintiffs' interest in obtaining convenient and effective relief is best served by litigating this case here, rather than far from home. While litigating the instant action in Pennsylvania might place a greater burden on the Roberts Firm, it does not present "a compelling case of unreasonableness" that would preclude this Court's exercise of jurisdiction. *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 325 (3d Cir. 2007) (when

6

"minimum contacts exist, due process demands no more than a reasonable forum."). Finally, the Court is not persuaded that the interests of the interstate judicial system favor either forum. Defendants point to a number of interests that Texas might have in deciding this dispute. While those interests exist, Pennsylvania has corresponding interests, and there is nothing to suggest that the interstate judicial system will suffer any harm if the case proceeds here. Defendants also speculate that the exercise of personal jurisdiction here would chill interstate referral agreements, but there is no evidence to support that guess, and the Court sees it as unlikely that lawyers will start to turn down referral fees just because they might be subject to litigation in the jurisdiction to which the referral is made, depending on the circumstances. In short, Defendants have not satisfied their heavy burden of demonstrating that the exercise of personal jurisdiction over the Roberts Firm is unfair or offends substantial justice.

### B. The Court Lacks Specific Jurisdiction Over Randell C. Roberts

The Court's analysis of the claims against Mr. Roberts is different. The claims against Mr. Roberts arise out of his actions on behalf of the Roberts Firm. There is no indication that he did anything outside of that capacity. "Generally, an individual whose contacts with the forum state are in his corporate capacity does not thereby become subject to jurisdiction in his individual capacity. This principle is intended to prevent a corporate officer's official contacts with the forum state from serving as a basis for personal jurisdiction over the officer individual." *Staff4Jobs LLC v. List Ligistics LLC*, Civ. A. No. 3:18-cv-13399-BRM-LHG, at * 3 (D.N.J. June 27, 2019); *see also Hufnagel v. Ciamacco*, 281 F.R.D. 238, 246 (W.D. Pa. 2012) ("an individual's transaction of business solely as an officer or agent of a corporation does not create personal jurisdiction over that individual").

Notably, Defendants argue in their opening Memorandum that Mr. Roberts is not subject to personal jurisdiction in Pennsylvania. (ECF No. 9-1 at 15.) Plaintiffs did not respond to that argument in either their Opposition or their Sur-Reply. They therefore have not presented a prima facie case of personal jurisdiction over Mr. Roberts. Accordingly, this Court finds that it lacks personal jurisdiction over Mr. Roberts.

### C. The Court Will Not Transfer The Case To Texas.

Defendants ask that the Court transfer the case to the Eastern District of Texas under 28 U.S.C. § 1404 even if personal jurisdiction is appropriate. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In determining whether transfer is appropriate, "the district court is vested with wide discretion." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973). A defendant has the burden to establish that a balancing of proper interests weighs in favor of transfer. Unless the balance of convenience is strongly in favor of the defendants, the plaintiff's choice of forum should prevail. *See Shuttle v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970); *see also Logopaint A/S v. 3D Sport Signs SI*, 163 F. Supp. 3d 260, 266 (E.D. Pa. 2016) (plaintiff's choice of forum is entitled to "great deference").

Here, Defendants have not satisfied the heavy burden they bear to persuade the Court to overrule Plaintiffs' choice of forum. Defendants argue that the Clients constitute key witnesses who are located in Texas. (ECF. No. 9-1 at 12-13). There is no dispute that the Clients are located in Texas and are unable to travel to Pennsylvania. However, the Court is unpersuaded by the Defendants' characterization of the Clients as "critical" witnesses. In interpreting a contract, "a court's paramount consideration is the intent of the parties." *Mellon Bank, N.A. v. Aetna Bus.*

8

*Credit, Inc.*, 619 F.2d 1001, 1009 (3d Cir. 1980) (internal quotations omitted). The Clients themselves are not parties to the referral agreements. Instead, they are parties to ancillary agreements. Therefore, it is not at all clear that the Clients' knowledge of or understanding of the terms of the referral agreements will prove relevant here. Moreover, consideration of witnesses' convenience depends on the existence and number of "critical" witnesses. *Schmidt v. Leader Dogs for the Blind, Inc.*, 544 F. Supp. 42, 48 (E.D. Pa. 1982). The parties have not specified who other third-party witnesses might be, or where they are located.

Defendants' only other arguments in favor of transfer rehash their arguments for the lack of personal jurisdiction—their contention that the agreements at issue in this case arose in Texas. For the reasons stated above, the Court disagrees. Absent any other arguments in favor of transfer, Defendants have not satisfied their burden of demonstrating that transfer is appropriate under Section 1404.

## IV. **CONCLUSION**

For the forgoing reasons, the Court will deny the Motion to Dismiss or to Transfer as to the Roberts Firm. The Court will, however, grant the Motion to Dismiss Mr. Roberts because the Court lacks personal jurisdiction over him. An appropriate Order will follow.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.