**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| SHERIDAN AND MURRAY, LLC and THOMAS W. SHERIDAN, <br><br> Plaintiffs <br><br> v. <br><br> ROBERTS AND ROBERTS, <br><br> Defendant | Civil Action No. 19-467 (JDW) <br><br> JURY DEMAND |

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant, The Roberts Law Firm, a Professional Corporation d/b/a Roberts & Roberts, A Professional Corporation ("Roberts & Roberts"), by and through its undersigned counsel, Haines & Associates, hereby responds to Plaintiffs' First Amended Complaint for Declaratory Relief as follows:

## GENERAL DENIAL

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendant Roberts & Roberts hereby enters a General Denial and generally denies all of the allegations contained in Plaintiffs' First Amended Complaint for Declaratory Relief, except:

1.     Defendant admits Plaintiffs' allegation Nos. 5, 6, 7, and 59.

2.     Defendant admits Plaintiffs' allegation No. 1 that Plaintiffs are seeking declaratory relief.  Defendant denies that this action is a proper use of the Declaratory Judgment Act.

1

3.      Defendant admits Plaintiffs' allegation No. 45 that Plaintiffs induced Defendant to revise their original 2014 referral fee agreement on February 7, 2018.  Defendant denies that it constituted a novation for the reasons set forth below.

4.      Defendant lacks knowledge or information sufficient to form a belief about the truth of Plaintiffs' allegation Nos. 46, 47, 48, 49, 50, 51, and 52.

## FACTUAL BACKGROUND

In response to the "Factual Background" alleged in Plaintiffs' Complaint, and in support of Defendant's affirmative defenses and counterclaims, Defendant would respectfully show:

5.      In 2013, James and Kay Burgess ("Clients") retained Randell C. Roberts ("Roberts") with Roberts & Roberts in their personal injury claims resulting from James Burgess' catastrophic injury on a drilling rig in Pennsylvania.

6.      In September 2014, Roberts referred the Clients' personal injury claims to Thomas W. Sheridan ("Sheridan") with Sheridan and Murray in Pennsylvania.

7.      At the time of this referral, Roberts, Sheridan, and the Clients all agreed in writing that Roberts & Roberts would be paid forty percent (40%) of the gross attorney's fee and that Sheridan and Murray would be paid sixty percent (60%) of the gross attorney's fee.  *See* Exhibit A. The validity of these written descriptions of the original 2014 referral fee agreement was not questioned by anyone, including Sheridan, until 2019.

8.      During the six years that it represented the Clients, Roberts & Roberts performed legal services and expended thousands of dollars to advance the Clients' personal injury claims.  Roberts & Roberts' legal services included obtaining a court order in Texas compelling the drilling company to produce relevant documents, deposing its corporate representative, hiring and supervising investigators, interviewing witnesses, reviewing documents, and providing legal research requested by Sheridan.

9.     Almost four years after the referral, and after extensive discovery had been conducted in the Clients' case, Sheridan called Roberts on February 7, 2018.  In that call Sheridan gave Roberts a pessimistic status report on the Clients' case.  This status report was more pessimistic than the pessimistic status reports that Sheridan routinely gave Roberts.  Sheridan then requested that Roberts & Roberts reduce its referral fee to a maximum of $320,000.00 for the explicit purpose of allowing the Clients to continue to have an economically viable lawsuit for Sheridan and Murray to pursue.

10.     Roberts agreed to revise the original 2014 referral fee agreement and offered to do anything else he could to help the Clients recover their damages in their case.

11.     Approximately six months later, Sheridan proceeded to settle the Clients' case for $44,000,000.00.

12.     Sheridan initially avoided disclosing the amount of the settlement to Roberts, and Sheridan continues to refuse to disclose the full terms of the settlement to Roberts, his referring attorney.

13.     When Roberts learned of the amount of the settlement, he expressed concern to Sheridan about the representations Sheridan had made to Roberts to induce Roberts into revising the original 2014 referral fee agreement just months before the settlement.  *See* Exhibit B.  Sheridan responded by letter, in which Sheridan contended that he did not "mislead" Roberts and that Sheridan's firm was justified in revising the original 2014 referral fee agreement in 2018 because they were "about to embark upon an undertaking which required the commitment of all the financial and human resources of my firm."  Sheridan went on to describe in his letter the challenges he faced on February 7, 2018, and stated that "no one could have anticipated [the settlement] in February of 2018 when our email exchange and agreement was codified."  *See* Exhibit C.

14.     After Roberts discovered evidence that Sheridan may not have been forthright in persuading Roberts to revise the original 2014 referral fee agreement to help the Clients, Roberts

offered to resolve his concerns with Sheridan through the alternative dispute resolution process for fee disputes as contemplated by the Pennsylvania Rules of Professional Conduct. Sheridan, instead, sued his referring Texas attorneys (Roberts and his firm) in Pennsylvania.

15.     Roberts chose not to advise the settling defendants in the Clients' underlying litigation of Roberts & Roberts' interest in the settlement proceeds. Roberts did this at Sheridan's urging to avoid jeopardizing the complex and delicate settlement process or delaying the Clients' settlement.

16.     When Sheridan filed this lawsuit in 2019, he changed his account of the referral fee agreement. Sheridan no longer contends that Sheridan was justified in revising the original 2014 referral fee agreement between Sheridan and Roberts. Sheridan now contends that he had always agreed to only pay Roberts & Roberts $320,000.00, and that $320,000.00 is all that Sheridan and Murray owes Roberts & Roberts. More specifically, Sheridan now contends that in 2014, he and Roberts somehow each drafted and exchanged separate written descriptions of their referral fee agreement and that both descriptions mistakenly stated that Roberts & Roberts was to receive forty percent (40%) of the gross or total attorney's fee. *See* Exhibit A.

17.     After Sheridan received all of the attorney fees from the settling defendants, Sheridan then refused and continues to refuse to pay the $320,000.00 that Sheridan agrees is owed to Roberts & Roberts—or monies that would, in part, reimburse Roberts & Roberts for the thousands of dollars it expended in pursuing the Clients' case.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

18.     Plaintiffs are equitably estopped from enforcing the revised 2018 referral fee agreement. This is because Sheridan intentionally or negligently misrepresented material facts to Roberts, while knowing or having reason to know that Roberts and his firm would rely on those misrepresentations to their detriment, which they eventually did when they agreed in 2018 to revise

the original 2014 referral fee agreement.

## Second Affirmative Defense

19.     The revised 2018 referral fee agreement cannot supersede the original 2014 referral fee agreement because of a lack of consideration.  More specifically, Sheridan and Murray gave nothing of value to Roberts & Roberts in return for Roberts & Roberts agreeing to revise the original 2014 referral fee agreement on February 7, 2018.

## Third Affirmative Defense

20.     Pleading in the alternative, and in the unlikely event that Sheridan's misrepresentations or omissions in his communications to Roberts were not intentional, the revised 2018 referral fee agreement was the result of a mutual mistake.  More specifically, there was a mutual mistake as to the merits of the Clients' case and the prospects for its settlement, and this mistake had a material effect on the agreed exchange of performances.  Furthermore, the mistake was not one as to which Roberts or his firm bore the risk.

## Fourth Affirmative Defense

21.     Plaintiffs' Amended Complaint fails to state a claim upon which relief may be granted.

## Fifth Affirmative Defense

22.     Plaintiffs' Amended Complaint is barred in whole or in part because Plaintiffs have no damages.

## Sixth Affirmative Defense

23.     Plaintiffs' Amended Complaint is barred in whole or in part because Plaintiffs failed to perform in accordance with the contract between the parties.

5

### Seventh Affirmative Defense

24.     Plaintiffs' Amended Complaint is barred in whole or in part because Plaintiffs' own actions caused whatever harm, if any, is alleged.

### Eighth Affirmative Defense

25.     Plaintiffs' Amended Complaint is barred in whole or in part by the doctrines of waiver and laches.

### Ninth Affirmative Defense

26.     Defendant is not liable to Plaintiffs for any amount of money.

### Tenth Affirmative Defense

27.     Defendant has not breached any contract between the parties.

### Eleventh Affirmative Defense

28.     Defendant has not anticipatorily breached any contract between the parties.

### Twelfth Affirmative Defense

29.     The Amended Complaint fails to state an actual controversy.

### Thirteenth Affirmative Defense

30.     The Amended Complaint is barred in whole or in part because the Plaintiffs have breached the covenant of good faith and fair dealing.

### Fourteenth Affirmative Defense

31.     Personal jurisdiction over the Defendant is lacking.

## COUNTERCLAIMS

### Count 1:  Intentional Misrepresentation (Fraudulent Inducement)

32.     Each of the foregoing paragraphs is incorporated by reference as though recounted below in this Count.

33.     When Sheridan called Roberts on February 7, 2018, to persuade Roberts to reduce his firm's attorney's fee to help the Clients, Sheridan had knowledge or information about the Clients' case that was superior to that possessed by Roberts.  As the referring Texas attorney, who was not licensed to practice law in Pennsylvania and not counsel of record in the Clients' underlying Pennsylvania litigation, Roberts did not have equal access to the information possessed by Sheridan. Sheridan also knew that it was the customary practice in these referral relationships for the referring Texas attorney (Roberts) to rely upon the Pennsylvania lead litigation counsel (Sheridan) for information about the Clients' case.

34.     Sheridan essentially told Roberts that it would be necessary for Roberts & Roberts to cap its share of the attorney's fee at $320,000.00 in order for the Clients to continue to have an economically viable lawsuit for Sheridan and Murray to pursue.

35.     Sheridan made this representation to Roberts after extensive discovery was conducted in the Clients' case over several years—and just months before entering into the $44,000,000.00 settlement.

36.     This was a material misrepresentation that was made falsely, with knowledge of its falsity or recklessness as to whether it was true or false.

37.     This misrepresentation was made by Sheridan on behalf of his firm with the intention that it would induce Roberts to revise their original 2014 referral fee agreement.

38.     Roberts & Roberts agreed to revise the original 2014 referral fee agreement because

Sheridan represented to Roberts that the change was necessary for the Clients to continue to have an economically viable lawsuit. Roberts would not have revised the original 2014 referral fee agreement just because Sheridan apparently now thought that this change was a more appropriate division of the attorney's fee between their respective law firms.

39.    Roberts and his firm relied on this misrepresentation in revising their original 2014 referral fee agreement in February 2018 and thereby suffered damages. Thus, Roberts & Roberts is entitled to the benefit of the original 2014 fee agreement, which entitled it to 40% of the gross attorney's fee collected by Plaintiffs.

WHEREFORE, Counterclaim Plaintiff respectfully requests this Court to enter a judgment in its favor and against Plaintiffs in an amount exceeding the jurisdictional limit for non-arbitration matters of $150,000, and for such other appropriate relief as prayed for below and as the Court may deem just and proper.

## Count 2:  Negligent Misrepresentation

40.    Each of the foregoing paragraphs is incorporated by reference as though recounted below in this Count.

41.    In accepting the referral by Roberts of his firm's Clients and agreeing that their firms would associate in the representation of the Clients, Sheridan entered into a fiduciary, confidential, or special relationship with Roberts. This relationship justified Roberts and his firm placing their trust and confidence in Sheridan and expecting Sheridan's candor and good faith in this relationship.

42.    For several years before inducing Roberts & Roberts to revise the original 2014 referral fee agreement, Sheridan would routinely give Roberts brief and pessimistic status reports when Roberts requested status reports.

43.    In giving status reports to Roberts, Sheridan knew that he had a duty to provide Roberts material facts and information about the Clients' case because:

8

    (a)      Roberts was relying upon Sheridan to provide Roberts with the material facts and information as is customarily done in such referral relationships, and

    (b)      Roberts, who was not licensed to practice law in Pennsylvania or counsel of record in the Clients' underlying Pennsylvania litigation, did not have an equal opportunity to discover the material facts and information.

44.      Sheridan had a duty to provide material facts and information to Roberts & Roberts about the Clients' case because:

    (a)      Sheridan entered into a fiduciary, confidential, or special relationship with Roberts when Sheridan accepted the referral by Roberts of his firm's Clients and agreeing that their firms would associate in the representation of the Clients;

    (b)      based upon information and belief, Sheridan had discovered new information that made his earlier pessimistic status reports untrue or misleading;

    (c)      Sheridan's earlier pessimistic status reports constituted only a partial disclosure of the material facts and information, which created a false impression; or

    (d)      by voluntarily disclosing the pessimistic aspects of the Clients' case to Roberts, Sheridan created a duty to disclose the whole truth to Roberts.

45.      Sheridan made a misrepresentation of a material fact about the Clients' case to Roberts & Roberts.  This representation was made:

    (a)      in the course of the business of Sheridan and Murray, or

    (b)      in the context of the referral arrangement in which Sheridan and his firm had a pecuniary interest.

46.      Sheridan communicated this information under circumstances in which he ought to

have known of its falsity.

47.     In making this representation, Sheridan supplied false information for the guidance of Roberts and his firm.

48.     Sheridan communicated this information to Roberts with an intent to induce Roberts & Roberts to revise the original 2014 referral fee agreement.

49.     Roberts & Roberts justifiably relied on this representation.

50.     Sheridan's negligent misrepresentation proximately caused Roberts & Roberts to unnecessarily revise the original 2014 referral fee agreement and thereby suffer damages, including the attorney's fee due to Roberts & Roberts in the amount of 40% of the gross attorney's fee Plaintiffs obtained for the referred representation.

WHEREFORE, Counterclaim Plaintiff respectfully requests this Court to enter a judgment in its favor and against Plaintiffs in an amount exceeding the jurisdictional limit for non-arbitration matters of $150,000, and for such other appropriate relief as prayed for below and as the Court may deem just and proper.

## Count 3:  Intentional Non-Disclosure (Fraudulent Concealment)

51.     Each of the foregoing paragraphs is incorporated by reference as though recounted below in this Count.

52.     For several years before inducing Roberts & Roberts to revise the original 2014 referral fee agreement, Sheridan would routinely give Roberts brief and pessimistic status reports when Roberts requested status reports.

53.     Based upon information and belief, Sheridan concealed from or failed to disclose to Roberts & Roberts material facts and information about the merits of the Clients' case or its prospects for settlement.

54.     Pleading in the alternative, Sheridan was deliberately silent when he had a duty to

disclose positive material facts and information to Roberts & Roberts about the Clients' case because:

(a)     Sheridan entered into a fiduciary, confidential, or special relationship with Roberts & Roberts when Sheridan accepted the referral by Roberts of his firm's Clients and agreeing that their firms would associate in the representation of the Clients;

(b)     based upon information and belief, Sheridan had discovered new information that made his earlier pessimistic status reports untrue or misleading;

(c)     Sheridan's earlier pessimistic status reports constituted only a partial disclosure of the material facts and information, which created a false impression; or

(d)     by voluntarily disclosing the pessimistic aspects of the Clients' case to Roberts, Sheridan created a duty to disclose the whole truth to Roberts & Roberts.

55.     By concealing or failing to disclose all the material facts and information, Sheridan intended to induce Roberts & Roberts to revise the original 2014 referral fee agreement to the benefit of Sheridan and Murray as opposed to the benefit of the Clients.

56.     Roberts & Roberts justifiably relied on Sheridan's non-disclosure or concealment of material facts and information in revising the original 2014 referral fee agreement between their respective law firms.

57.     As a result of revising the original 2014 referral fee agreement without knowledge of the undisclosed material facts and information, Roberts & Roberts suffered damages, including the attorney's fee due to them in the amount of 40% of the gross attorney's fee earned for the referred Clients' representation.

WHEREFORE, Counterclaim Plaintiff respectfully requests this Court to enter a judgment in its favor and against Plaintiffs in an amount exceeding the jurisdictional limit for non-arbitration matters of $150,000, and for such other appropriate relief as prayed for below and as the Court may deem just and proper.

### Count 4:  Breach of Fiduciary Duty

58.     Each of the foregoing paragraphs is incorporated by reference as though recounted below in this Count.

59.     In accepting the referral by Roberts of his firm's Clients and agreeing that their firms would associate in the representation of the Clients, Sheridan entered into a fiduciary relationship of trust and confidence with Roberts & Roberts.  This fiduciary relationship justified Roberts and his firm placing their trust and confidence in Sheridan and expecting Sheridan's candor and good faith in this relationship.

60.     Sheridan and his firm did not comply with their fiduciary duties to Roberts and his firm and engaged in misconduct.  More specifically:

> (a)     Sheridan took advantage of the confidence that Roberts & Roberts placed in him;
>
> (b)     the revised 2018 referral fee agreement which Sheridan persuaded Roberts & Roberts to enter into—purportedly to help the Clients—was not fair or equitable;
>
> (c)     Sheridan did not act in the utmost good faith or exercise the most scrupulous honesty toward Roberts & Roberts;
>
> (d)     Sheridan used the advantage of his position as lead counsel in the Clients' underlying Pennsylvania litigation to gain a substantial benefit for himself

and his firm at the expense of Roberts & Roberts; and

(e)     based upon information and belief, Sheridan failed to fully and fairly disclose all important information to Roberts concerning the proposed revision in 2018 of the original 2014 referral fee agreement, which Sheridan ultimately induced Roberts & Roberts to accept.

61.     Sheridan and his firm's failure to comply with their fiduciary duties to Roberts and his firm and their misconduct has caused Roberts & Roberts to sustain damages, including the attorney's fee due to Roberts & Roberts in the amount of 40% of the gross attorney's fee for the referred representation, consistent with the original 2014 referral fee agreement.

62.     Because Sheridan and his firm breached their fiduciary duties to Roberts & Roberts and because Sheridan and his firm engaged in misconduct, disgorgement of the attorney's fee recovered by Sheridan and Murray is an appropriate equitable remedy under these circumstances.

WHEREFORE, Counterclaim Plaintiff respectfully requests this Court to enter a judgment in its favor and against Plaintiffs disgorging the gross attorney's fee that Plaintiffs received in the Clients' case, and in accordance with the original 2014 referral fee agreement, awarding forty percent (40%) of the gross attorney's fee to Roberts & Roberts and returning the remainder of the disgorged attorney's fee to the Clients for their use and benefit and to prevent wrongful gain by Sheridan and Murray together with any other relief the Court deems just and proper.

## Count 5:  Constructive Fraud

63.     Each of the foregoing paragraphs is incorporated by reference as though recounted below in this Count.

64.     In accepting the referral of Roberts & Roberts' Clients and agreeing that their firms would associate in the representation of the Clients, Sheridan entered into a fiduciary, confidential, or special relationship with Roberts & Roberts.

13

65.     Sheridan made a material misrepresentation or otherwise concealed from or failed to disclose material facts or information to Roberts with the intention that it would induce Roberts & Roberts to revise their original 2014 referral fee agreement.

66.     Roberts and his firm relied on this misrepresentation in revising their original 2014 referral fee agreement in February 2018 and thereby suffered damages, including the attorney's fee due to them in an amount of 40% of the gross attorney's fee for the referred representation, consistent with the original 2014 referral fee agreement.

WHEREFORE, Counterclaim Plaintiff respectfully requests this Court to enter a judgment in its favor and against Plaintiffs in an amount exceeding the jurisdictional limit for non-arbitration matters of $150,000, and for such other appropriate relief as prayed for below and as the Court may deem just and proper.

### Count 6:  Conversion

67.     Each of the foregoing paragraphs is incorporated by reference as though recounted below in this Count.

68.     Based upon information and belief, the defendants in the Clients' underlying litigation have now fully funded the Clients' settlement.

69.     Without lawful justification, Sheridan and Murray is depriving Roberts & Roberts of the attorney's fee and legal expenses to which it is owed.

70.     Roberts & Roberts has a right to immediate possession of at least the $320,000.00 in attorney fees and thousands of dollars in legal expenses that Sheridan and Murray admit they owe to Roberts & Roberts.

71.     Roberts & Roberts has suffered damage as a result of Sheridan and Murray's wrongful conversion of the attorney's fee and legal expenses it admits it owes to Roberts & Roberts.

14

WHEREFORE, Counterclaim Plaintiff respectfully requests this Court to enter a judgment in its favor and against Plaintiffs in an amount exceeding the jurisdictional limit for non-arbitration matters of $150,000, and for such other appropriate relief as prayed for below and as the Court may deem just and proper.

### Count 7:  Breach of Contract

72.     Each of the foregoing paragraphs is incorporated by reference as though recounted below in this Count.

73.     A valid, enforceable contract exists between Roberts & Roberts and Sheridan and Murray.

74.     Roberts & Roberts is the proper party to bring suit for breach of this contract by Sheridan and Murray.

75.     Roberts & Roberts performed its obligations under this contract.

76.     Sheridan and Murray breached this contract by not paying Roberts & Roberts forty percent (40%) of the gross attorney's fee—or even $320,000.00, which is the amount of attorney's fee that that Sheridan and Murray do not dispute they owe under either contract to Roberts & Roberts.

77.     Sheridan and Murray's breach of this contract has caused Roberts & Roberts to sustain damages, including the attorney's fee due to Roberts & Roberts.

WHEREFORE, Counterclaim Plaintiff respectfully requests this Court to enter a judgment in its favor and against Plaintiffs in an amount exceeding the jurisdictional limit for non-arbitration matters of $150,000, and for such other appropriate relief as prayed for below and as the Court may deem just and proper.

### Count 8:  Promissory Estoppel

78.     Each of the foregoing paragraphs is incorporated by reference as though recounted

15

below in this Count.

79.     Sheridan and Murray promised to pay Roberts & Roberts forty percent (40%) of the gross attorney's fee earned in the representation of the Clients.

80.     Sheridan reasonably expected or should have reasonably expected that this promise would induce Roberts and his firm to refer the Clients' case to Sheridan.

81.     This promise actually induced Roberts & Roberts to refer the Clients' case to Sheridan.

82.     Injustice can be avoided only by enforcing Sheridan and his firm's promise.

83.     Accordingly, Roberts & Roberts is entitled to 40% of the gross attorney's fee, as provided in the original 2014 referral fee agreement.

WHEREFORE, Counterclaim Plaintiff respectfully requests this Court to enter a judgment in its favor and against Plaintiffs in an amount exceeding the jurisdictional limit for non-arbitration matters of $150,000, and for such other appropriate relief as prayed for below and as the Court may deem just and proper.

## Count 9:  Unjust Enrichment (*Quantum Meruit*)

84.     Each of the foregoing paragraphs is incorporated by reference as though recounted below in this Count.

85.     Sheridan and his firm obtained a benefit from Roberts & Roberts by fraud or the taking of an undue advantage.

86.     Sheridan and Murray appreciated, accepted, used, and retained the benefits of the referrals and services conferred upon Sheridan and Murray or otherwise provided by Roberts & Roberts.

87.     Sheridan and Murray has never compensated Roberts & Roberts.

88.     Under the circumstances, Sheridan and Murray had reasonable notice that Roberts

16

& Roberts expected to be compensated for its referrals and services.

89.     Roberts & Roberts is entitled to quantum meruit to prevent unjust enrichment by Sheridan and his firm, and it would be inequitable for Sheridan and his firm to retain the benefits conferred upon them by Roberts & Roberts without payment of at least the customary referral fee.

WHEREFORE, Counterclaim plaintiff respectfully request this Court to enter a judgment in favor of Defendant in an amount exceeding the jurisdictional limit of $150,000 for non-arbitration cases representing a reasonable attorney's fee for the work actually performed in this matter for which Plaintiffs received a benefit and did not pay.

## JURY TRIAL DEMANDED

90.     Defendant Roberts & Roberts hereby demands a trial by jury on all issues so triable.

## PRAYER FOR JUDGMENT

WHEREFORE, PREMISES CONSIDERED, Defendant Roberts & Roberts prays that Plaintiffs' request for declaratory relief be denied, and that Defendant be granted a judgment against Plaintiffs for the following relief where allowed by law:

A.     fair, just, and adequate compensation for all general and special damages sustained by Roberts & Roberts including actual damages;

B.     reformation of the revised 2018 referral fee agreement to provide for Roberts & Roberts to receive forty percent (40%) of the gross attorney's fee as originally agreed in 2014 between Plaintiffs and Defendant;

C.     after payment to Roberts & Roberts of the attorney's fee owed to it, disgorgement of the balance of the attorney's fee retained by Sheridan and Murray and return of the balance of that attorney's fee to the Clients to prevent wrongful gain by Sheridan and Murray;

D.     the attorney's fee and legal expenses due to Roberts & Roberts;

E.      punitive or exemplary damages against Sheridan and Murray and Thomas W. Sheridan;

F.      prejudgment and post-judgment interest;

G.      taxable costs; and

H.      such other and relief, general and special, legal and equitable, to which Defendant may be justly entitled.

Respectfully submitted:

**HAINES & ASSOCIATES**

_____*/s/ Clifford E. Haines*_____
CLIFFORD E. HAINES
DANIELLE M. WEISS
The Widener Building, 5th
Floor 1339 Chestnut Street
Philadelphia, PA 19107
(215) 246-2200 (Telephone)
(215) 246-2211 (Facsimile)

***Attorneys for Defendant***

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| SHERIDAN AND MURRAY, LLC and THOMAS W. SHERIDAN, <br><br> Plaintiffs, <br><br> v. <br><br> ROBERTS AND ROBERTS, <br><br> Defendant. | Civil Action No. 19-467 (JDW) <br><br> JURY DEMAND |

## <u>CERTIFICATE OF SERVICE</u>

I, Clifford E. Haines, Esquire hereby certify that I have caused this document to be filed electronically on this 28th day of August, 2019. It is available for reviewing and downloading from the ECF System.


     */s/ Clifford E. Haines*
CLIFFORD E. HAINES

The Widener Building, 5th
Floor 1339 Chestnut Street
Philadelphia, PA 19107
(215) 246-2200 (Telephone)
(215) 246-2211 (Facsimile)