# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS W. SHERIDAN and SHERIDAN AND MURRAY, LLC, *Plaintiffs,* v. THE ROBERTS LAW FIRM, *Defendant.* | Case No. 2:19-cv-00467-JDW |

## **MEMORANDUM**

This is a dispute between two law firms about a referral fee. Plaintiffs Sheridan & Murray, LLC and its named partner Thomas Sheridan (collectively, "S&M") move this Court to dismiss most of the counterclaims against them. For the reasons that follow, the Court will dismiss the claims for breach of fiduciary duty (Counterclaim IV) and conversion (Counterclaim VI). The Court will deny the remainder of the Motion.

## I.  FACTUAL BACKGROUND

In 2013, James and Kay Burgess (the "Clients") hired The Roberts Law Firm, a Professional Corporation doing business as Roberts & Roberts ("R&R"), to represent them in connection with injuries that James Burgess suffered while working on an oil rig in Pennsylvania. (ECF No. 20, ¶ 5.) R&R referred the Clients' personal injury claims to S&M. (*Id.* ¶ 6.)

In September of 2014, R&R, S&M, and the Clients agreed in writing that R&R would receive 40 percent of the gross attorney's fee and that S&M would receive the remaining 60 percent of the fee. (*Id.*, Ex. A.) In February 2018, Mr. Sheridan called Randell Roberts of R&R with a pessimistic status update on the case. (*Id.* ¶ 9.) During that call, Mr. Sheridan asked that R&R

reduce its referral fee to a maximum amount of $320,000, in order to maintain an economically viable lawsuit for S&M to pursue. (*Id.*) Mr. Roberts agreed to this proposed revision. (*Id.* ¶ 10.) Later that year, the case settled for $44 million. (*Id.* ¶ 11.)

The Parties now have a dispute about the terms of their referral arrangement. R&R alleges that Mr. Sheridan did not initially disclose the $44 million settlement amount to Mr. Roberts. (*Id.* ¶ 12.) Once R&R learned of the settlement amount, Mr. Roberts expressed concern to Mr. Sheridan about Mr. Sheridan's representations that led to the revision of the original 2014 referral fee agreement. (*Id.* ¶ 13.) After some correspondence between the two individuals, Mr. Sheridan and his firm filed this lawsuit against R&R. (*Id*, Ex. B.) R&R, in turn, asserts the following counterclaims: intentional misrepresentation (Count I); negligent misrepresentation (Count II); intentional nondisclosure (Count III); breach of fiduciary duty (Count IV); constructive fraud (Count V); conversion (Count VI); breach of contract (Count VII); promissory estoppel (Count VIII); and unjust enrichment (Count IX). S&M seeks to dismiss all of R&R's counterclaims except for the breach of contract claim.

## II. LEGAL STANDARD

Dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) is proper if "the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). In other words, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In evaluating a 12(b)(6) motion to dismiss, a court must accept all factual allegations in the complaint as true and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). While factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Bell Atl.*

*Corp.*, at 555; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). However, under Fed. R. Civ. P. 9(b), when a party alleges fraud or mistake, it "must state with particularity the circumstances constituting fraud or mistake." The Court must disregard legal conclusions, conclusory statements, and rote recitals of the elements of a cause of action. *James v. City of Wilkes-Barre*, 700 F.3d 675, 679 (3d Cir. 2012); *Iqbal*, 556 U.S. at 678.

III. ANALYSIS

    A. **Choice Of Law Issues**

S&M argues that Pennsylvania law applies here. R&R assumes Pennsylvania law applies for purposes of this Motion. For the Court to resolve a choice-of-law issue, it will have to conduct a fact-intensive analysis that the record before it does not permit. Therefore, the Court will apply Pennsylvania law for purposes of this Motion. However, the Court reserves final judgment on any choice-of-law question until it has a more fulsome record before it.

    B. **Conversion**

R&R's conversion claim fails because it has not demonstrated that S&M has taken anything from it. Instead, R&R's claim, properly understood, is that S&M has not paid it a debt. Although money can be the subject of a claim for conversion, the failure to pay a debt is not conversion. *See Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. 1987). The Court will therefore dismiss the conversion claim.

    C. **Pleading Of Misrepresentation And Concealment Claims**

R&R's claims for intentional misrepresentation, negligent misrepresentation, and constructive fraud each include an element of a false representation. *See Bortz v. Noon*, 729 A.2d 555, 560 (Pa. 1999); *Bucci v. Wachovia Bank, N.A.*, 591 F. Supp. 2d 773, 782 (E.D. Pa. 2008). In the Counterclaim, R&R alleges that Mr. Sheridan gave Mr. Roberts an especially pessimistic status

report about the case in February 2018 and told Mr. Roberts "that it would be necessary for R&R to cap its share of attorney's fee at $320,000 in order for the Clients to continue to have an economically viable lawsuit for [S&M] to pursue." (ECF No. 20, ¶¶ 9, 34.) R&R further alleges that this statement was false. (*Id.* at ¶ 36.) In addition, R&R alleges that the settlement of the Clients' case occurred only months after this conversation. At this early stage of the proceedings, that temporal proximity gives rise to an inference that Mr. Sheridan knew that his pessimistic assessment of the case was false. The parties' discovery will shed light on whether it was, in fact, false at the time, or whether subsequent developments led to the settlement. For now, however, R&R alleges a false statement with particularity.

These allegations also suffice to establish R&R's concealment claims. A "party to a transaction who by concealment or other action intentionally prevents the other from acquiring material information is subject to the same liability . . . as though he had stated the nonexistence of the matter that the other was thus prevented from discovering." *Sevin v. Kelshaw*, 611 (A.2d 1232, 1236 (Pa. 1992) (quoting Restatement (Second) of Torts § 550)). R&R alleges that Mr. Sheridan, as the lawyer actively involved in the Clients' case, knew facts that were inconsistent with his pessimistic assessment but kept them from R&R. Again, that allegation is enough, at this stage of the proceedings, to state a viable claim.

Finally, S&M argues that R&R has not pled the existence of a duty in order to establish a negligent misrepresentation claim. The Pennsylvania Supreme Court has adopted Section 552 of the Restatement (Second) of Torts. *See Bilt-Rite Contractors, Inc. v. The Architectural Studio*, 866 A.2d 270, 285 (Pa. 2005). Section 552 provides that one who, "in the course of his business … or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability … if he fails to exercise

4

reasonable care or competence in obtaining or communicating the information." Restatement (Second) of Torts § 552(1). R&R has pled facts to establish a claim for negligent misrepresentation under Section 552. In particular, R&R pleads that Mr. Sheridan gave Mr. Roberts a pessimistic status report about the Clients' case in February 2018 in order to induce R&R to reduce its referral fee. That is, Mr. Sheridan provided Mr. Roberts information in the course of S&M's business, in a transaction in which S&M and R&R had a pecuniary interest, for R&R's guidance. Therefore, R&R has pled facts to establish a plausible claim for negligent misrepresentation.

### D. Gist Of The Action/Economic Loss

The gist of the action doctrine "prevents a party from bringing 'a tort claim for what is, in actuality, a claim for breach of contract.'" *Norfolk S. Ry. Co. v. Pittsburgh & W. Virginia R.R.*, 870 F.3d 244, 256 (3d Cir. 2017) (quoting *Bruno v. Erie Ins. Co.*, 630 Pa. 79, 106 A.3d 48, 60 (2014)). "If the facts of a particular claim establish that the duty breached is one created by the parties **by the terms of their contract**—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract." *Bruno*, 106 A.3d at 68 (emphasis added). On the other hand, if the "facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." *Id.*

While the applicability of the doctrine is a matter of law, *Synthes, Inc. v. Emerge Med., Inc.*, 25 F. Supp. 3d 617, 724 (E.D. Pa. 2014), the Pennsylvania Supreme Court has not articulated a standard by which to determine if a claim implicates a broader social duty owed to all individuals. Indeed, the Third Circuit has recognized that the gist of the action doctrine "cannot be captured by any precisely worded test. Instead, [it calls] for a fact-intensive judgment as to the true nature of

a claim." *Williams v. Hilton Grp. PLC*, 93 F. App'x 384, 386 (3d Cir. 2004); *see also Frank C. Pollara Grp., LLC v. Ocean View Inv. Holding, LLC*, 784 F.3d 177, 186 (3d Cir. 2015). Of note, "the mere existence of a contract between two parties does not" turn a claim "for injury or loss suffered as the result of actions of the other party in performing the contract" into "one for breach of contract." *Bruno*, 106 A.3d at 69. Yet the plaintiff must point to independent events giving rise to the tort. *See Addie v. Kjaer*, 737 F.3d 854, 865-66 (3d Cir. 2013).

Similarly, the economic loss doctrine bars a tort plaintiff from recovering purely economic damages. However, the Pennsylvania Supreme Court has held that "purely economic losses are recoverable in a variety of tort actions" and that "a plaintiff is not barred from recovering economic losses simply because the action sounds in tort rather than contract law." *Dittman v. UPMC*, 196 A.3d 1036, 1053 (Pa. 2018) (quote omitted). Thus, if a "duty arises under a contract between the parties, a tort action will not lie from a breach of that duty. However, if the duty arises independently of any contractual duties between the parties then a breach of that duty may support a tort action." *Id.* This decision renders the gist of the action doctrine and the economic loss doctrine effectively coextensive under Pennsylvania law.

Here, S&M argues that the gist of the action doctrine and the economic loss doctrine bar all of the tort-based counterclaims. It is only partially correct, at least at this stage of the proceedings.

*Breach of fiduciary duty*. A claim for breach of fiduciary duty only survives the gist of the action doctrine "where the fiduciary relationship in question is well-established and clearly defined by Pennsylvania law or policy." *InSyte Medical Technologies v. Lighthouse Imaging*, No. 13-1375, 2014 WL 958886, at *11 (E.D. Pa. Mar. 11, 2014). No such duty exists in this case. The relationship between S&M and R&R is a contractual relationship between two economic equals—

in this case, two law firms. Any fiduciary duty can therefore only arise from the contract itself. Thus, it only implicates "an obligation created by contract, rather than by the larger societal policies embodied in the law of torts." *Downs v. Andrews*, 639 F. App'x 816, 820 (3d Cir. 2016) (internal quotations omitted). The gist of the action doctrine therefore bars the breach of fiduciary duty claim.

*Misrepresentation claims*. The fact that the Pennsylvania Supreme Court has not set forth a test to determine whether a duty arises from a contract or otherwise is "particularly problematic in the context of a claim for fraudulent inducement because such claims inherently involve both a social duty to refrain from fraud as well as duties imposed by contract." *Malone v. Weiss*, No. CV 17-1694, 2018 WL 827433, at *4 (E.D. Pa. Feb. 12, 2018) (internal quotations omitted). However, courts have recognized a duty "of honesty imposed by society." *Mendelsohn, Drucker & Associates v. Titan Atlas Manufacturing*, 885 F. Supp. 2d 767, 790 (E.D. Pa. 2012); *Telwell Inc. v. Grandbridge Real Estate Capital, LLC*, 143 A.3d 421, 429 (Pa. Super. Ct. 2016) (noting existence of "societal duty not to affirmatively mislead or advise without factual basis"). Even where the alleged breach involves a specific term of the agreement, courts have held that if the breach implicates a "broader social duty," the gist of the action lies in tort. *See, e.g.*, *Brenco Oil, Inc. v. Blaney*, No. CV 17-3938, 2017 WL 6367893, at *3 (E.D. Pa. Dec. 13, 2017) (concluding that the gist of a former client's complaint against its law firm was tort, not contract, when the firm "perform[ed] a specific task under the contract" but did so carelessly).

Here, R&R alleges that S&M fraudulently misrepresented the circumstances of the Clients' case, thereby inducing R&R to enter into the modified agreement. (ECF No. 20, ¶¶ 34-35.) These statements were not part of the Parties' contract, and their referral agreement does not contain an express duty to not mislead or misrepresent. Rather, R&R alleges the breach of a broader duty

7

that goes beyond the contract at issue—a "societal duty not to affirmatively mislead[.]" *Bruno* at 58. R&R has pled sufficient facts that, taken as true, plausibly suggest that S&M made misrepresentations. Those misrepresentations were distinct acts that deceived R&R into continuing a contractual relationship with S&M. *See, e.g.*, *Synthes, Inc.*, 25 F. Supp.3d at 725; *Coll*, 2015 WL 5783682, at *4. The gist of the action doctrine therefore does not bar the misrepresentation claims in Counts I, III, and V of the Counterclaim.

*Negligent misrepresentation*. There is no universal duty not to make a negligent misrepresentation. However, as noted above, Restatement Section 552 creates such a duty for anyone who supplies information for the guidance of others in the course of a business transaction. *See* Restatement (Second) of Torts § 552. The duties that Section 552 imposes exist separately from a contractual relationship. Therefore, the gist of the action doctrine does not preclude R&R from pursuing negligent misrepresentation claims under Section 552.

### E. Quasi-Contract Claims

Pennsylvania law prohibits R&R from recovery under both breach of contract and promissory estoppel, or under both breach of contract and unjust enrichment. *See W. Chester Univ. Found. v. Metlife Ins. Co.*, 259 F. Supp.3d 211, 222-23 (E.D. Pa. 2017) ("[u]nder Pennsylvania law, an enforceable contract between two parties precludes relief for a claim of promissory estoppel"). Here, all parties agree that they had a contract. However, R&R also pleads that it performed various legal services in aid of the Clients' case. It is not clear to the Court, at this stage, whether those services fell within the scope of the Parties' referral agreement or were outside of it. If the latter, then it is possible that R&R could maintain a claim for unjust enrichment or quantum meruit in connection with the work it did outside the scope of the referral agreement. Therefore, the Court will not dismiss those claims at this stage.

### F. Claims Against Mr. Sheridan

Under Pennsylvania law, "employees are liable for their own torts, even if they were acting within the scope of their employment when they engaged in the tortious conduct in question." *Reese v. Pook & Pook, LLC.*, 158 F. Supp. 3d 271, 300 (E.D. Pa. 2016) (citations omitted). For fraud claims specifically, courts in this Circuit have relied on Section 348 of the Restatement (Second) of Agency, which "holds an agent liable for his fraudulent conduct, even if such fraud occurred in a transaction carried out on behalf of his principal." *E.g.*, *Excedo Inc. v. Columbusnewport, LLC.*, No. 02:03CV1158, 2006 WL 897729, at *7 (W.D. Pa. Mar. 31, 2006).

These cases establish that Mr. Sheridan might face personal liability for the acts that R&R alleges. At this early stage of the proceedings, the Court cannot rule it out as a matter of law. Notably, Mr. Sheridan appears to draw a parallel between his request to be dismissed from the case and the Court's decision to dismiss Mr. Roberts. The difference, however, is that the Court held that Mr. Roberts was not subject to personal jurisdiction here. Mr. Sheridan certainly is, given that he voluntarily joined the case as a plaintiff. Thus, there is no connection between the Court's decision about Mr. Sheridan and the Court's decision about Mr. Roberts.

### IV. CONCLUSION

For the forgoing reasons, the Court will grant the Motion to dismiss R&R's claims for breach of fiduciary duty and conversion. The Court will deny the Motion to Dismiss on the remaining claims. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

Dated: December 11, 2019